**EXHIBIT J**

**SENATE RULES COMMITTEE**                                          AB 5
Office of Senate Floor Analyses
(916) 651-1520    Fax: (916) 327-4478

## THIRD READING

Bill No:   AB 5
Author:    Gonzalez (D), et al.
Amended:   9/6/19 in Senate
Vote:      21

SENATE LABOR, PUB. EMP. & RET. COMMITTEE:  4-1, 7/10/19
AYES:  Hill, Jackson, Mitchell, Pan
NOES:  Morrell

SENATE APPROPRIATIONS COMMITTEE:  5-2, 8/30/19
AYES:  Portantino, Bradford, Durazo, Hill, Wieckowski
NOES:  Bates, Jones

ASSEMBLY FLOOR:  59-15, 5/29/19 - See last page for vote

**SUBJECT:**  Worker status: employees and independent contractors

**SOURCE:**  California Labor Federation
State Building and Construction Trades Council

**DIGEST:**  This bill codifies the recent *Dynamex* decision, requiring that employers prove that their workers can meet a three part (ABC) test in order to be lawfully classified as independent contractors.

*Senate Floor Amendments* of 9/6/19 add additional occupations under the *Borello* test.

**ANALYSIS:**

Existing law:

1) Establishes a comprehensive set of protections for employees, including a time-sure minimum wage, meal and rest periods, workers' compensation coverage in the event of an industrial injury, sick leave, disability insurance in

the event of a non-industrial disability, paid family leave, and unemployment insurance. (Labor Code §§201, 226.7, 246, 512, 1182.12, & 3600 and UI Code §§1251 & 2601)

2) Creates the Industrial Welfare Commission (IWC), which promulgates industry-specific wage orders that set the wages, hours, and working conditions of employees. The IWC wage orders have the force of regulation and are enforced by the Division of Labor Standards Enforcement. (Labor Code §§70, 1173, 1177, 1195 & 1197)

3) Provides that there is a rebuttable presumption that a worker performing services for which a contractor's license is required, or who is performing such services for a person who is required to obtain such a license, is *an employee rather than an independent contractor*. (Labor Code §2750.5)

4) States that in order to rebut the presumption described above, an employer must prove the following:

   a) That the individual has the right to control and discretion as to the manner of performance of the contract for services in that the result of the work and not the means by which it is accomplished is the primary factor.
   b) That the individual is customarily engaged in an independently established business.
   c) That the individual's independent contractor status is bona fide and not a subterfuge to avoid employee status. A bona fide independent contractor status is evidenced by the presence of cumulative factors, which includes substantial investment other than personal services in the business, holding out to be in business for oneself, and bargaining for a contract to complete a specific project for compensation by project rather than by time.

   This test, also known as the ABC test, has been California law since 1979. (Labor Code §2750.5)

5) Requires that an individual holds a valid contractor's license as a condition of having independent contractor status. (Labor Code §2750.5)

6) Requires, for the purposes of IWC wage orders, that the specific work conditions of a worker must conform with the following three circumstances to be considered an independent contractor:

   a) The worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact;

    b) The worker performs work that is outside the usual course of the hiring entity's business; and
    c) The worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity.
(*Dynamex Operations West v. Superior Court* (2018) 4 Cal. 5th 903)

This bill codifies and expands the recent decision in *Dynamex Operations West v. Superior Court* (2018) 4 Cal. 5th 903. Specifically, this bill:

1) Provides that, for the purposes of the Labor Code and Unemployment Insurance Code and the IWC's wage orders, where a definition for employee is not provided a person providing labor or services for remuneration must be considered an employee *unless* the hiring entity demonstrates that all of the following conditions are satisfied:

   a) The person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact.
   b) The person performs work that is outside the usual course of the hiring entity's business.
   c) The person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed.

2) Provides that, if a court of law rules that the three-part test above cannot be applied to a particular context based on grounds other than an express exception to employment status as provided in this bill, then the determination of employee or independent contractor status in that context shall instead be governed by the California Supreme Court's decision in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 (Borello).

3) Provides that, for the following occupations, the applicable test for determining if an individual is an employee or an independent contractor is the predecessor test to *Dynamex* developed by the California Supreme Court in *Borello* or relevant statute:

   a) Licensed insurance brokers.
   b) Licensed physicians and surgeons, dentists, podiatrists, psychologists, lawyers, architects, engineers, private investigators, veterinarians, and accountants, provided that the medical fields listed above are not covered by a collective bargaining agreement.

    c) Registered securities broker-dealers, investment advisors, or their agents and advisors.
    d) A direct salesperson, provided that the salesperson's compensation is based on actual sales, rather than wholesale purchases or referrals.
    e) Commercial fisherman, except as per the provision of unemployment insurance benefits. This provision will become inoperative on January 1, 2023.
    f) Real estate licensees and repossession agents, as provided under existing licensure provisions in the Business and Professions Code.

4) Provides that the *Borello* employment test governs professional contracts if the contracting entity can demonstrate all of the following:

    a) The individual maintains a business location, which may include the individual's residence, that is separate from the hiring entity. Nothing prevents an individual from choosing to perform services at the location of the hiring entity.
    b) If work is performed more than six months after the effective date of this section, the individual has a business license, in addition to any required professional licenses or permits for the individual to practice in their profession.
    c) The individual has the ability to set or negotiate their own rates for services performed.
    d) Outside of project completion dates and reasonable business hours, the individual has the ability to set their own hours.
    e) The individual is customarily engaged in the same type of work performed under contract with another hiring entity or holds themselves out to other potential customers for the same work.
    f) The individual customarily and regularly exercises discretion and independent judgment in the performance of the services.

5) Provides that an individual contracting for professional services can do so as a sole proprietor or other business entity.

6) Defines "professional services" as the following services:

    a) Marketing, provided that the contracted work is original and creative in character and the result of which depends primarily on the invention, imagination, or talent of the employee or work that is an essential part of or necessarily incident to any of the contracted work.
    b) Administrator of human resources, provided that the contracted work is predominantly intellectual and varied in character and is of such character

      that the output produced or the result accomplished cannot be standardized in relation to a given period of time.

   c) Travel agents.
   d) Graphic design.
   e) Grant writer.
   f) Fine artist.
   g) Enrolled agent.
   h) Payment processing agent through an independent sales organization.
   i) Services provided by a still photographer, provided the individual does not license content to the putative employer more than 35 times in a year, as specified.
   j) Services provided by a freelance writer, provided the individual does not license content to the putative employer more than 35 times in a year, as specified.

7) Defines services provided by a licensed barber or cosmetologist as professional services, provided that:

   a) The worker sets their own rates and is paid directly by the clients.
   b) The worker has their own book of business and schedules their own appointments.
   c) The worker maintains their own business license for the services offered to clients.
   d) If the worker performing services at the location of the hiring entity, then the individual issues a Form 1099 to the salon or business owner from which they rent their business space.
   e) Provides that the above shall become inoperative, with respect to licensed manicurists, on January 1, 2022.

8) Provides that relationships between a contracting business and a business service provider is under the *Borello* test if all of the following criteria are satisfied:

   a) The business service provider is free from the control and direction of the contracting business entity in connection with the performance of the work, both under the contract for the performance of the work and in fact.
   b) The business service provider is providing services to the contracting business rather than to customers of the contracting business.
   c) The contract with the business service provider is in writing.
   d) If the work is performed in a jurisdiction that requires the business service provider to have a business license or business tax registration, the business

service provider has the required business license or business tax registration.
e) The business service provider maintains a business location that is separate from the business or work location of the contracting business.
f) The business service provider is customarily engaged in an independently established business of the same nature as that involved in the work performed.
g) The business service provider actually contracts with other businesses to provide the same or similar services and maintains a clientele without restrictions from the hiring entity.
h) The business service provider advertises and holds itself out to the public as available to provide the same or similar services.
i) The business service provider provides its own tools, vehicles, and equipment to perform the services.
j) The business service provider can negotiate its own rates.
k) Concistent with the nature of the work, the business service provider can set its own hours and location of work.
l) The business service provider is not performing the type of work for which a license from the Contractors State License Board (CSLB) is required, pursuant to Section 7000 and following of the Business and Professions Code.

9) Provides that the *Borello* test governs the relationship between a contractor and an individual performing work pursuant to a subcontract in the construction industry if all of the following criteria are satisfied:

a) The individual is free from the control and direction of the contractor in connection with the performance of the work, both under the contract for the performance of the work and in fact.
b) The subcontract is in writing.
c) The subcontractor is licensed by CSLB and the work is within the scope of that license.
d) If the is domiciled in a jurisdiction that requires the subcontractor to have a business license or business tax registration, the subcontractor has the required business license or business tax registration.
e) The subcontractor maintains a business location that is separate from the business or work location of the contractor.
f) The subcontractor has the authority to hire and to fire other persons to provide or to assist in providing the services.
g) The subcontractor assumes financial responsibility for errors or omissions in labor or services as evidenced by insurance, legally authorized indemnity

Case 3:19-cv-03053-WHO   Document 67-10   Filed 02/24/21   Page 8 of 20

AB 5
Page 7

      obligations, performance bonds, or warranties relating to the labor or services being provided.

   h) The subcontractor is customarily engaged in an independently established business of the same nature as that involved in the work performed.

10) Exempts, until January 1, 2022, a subcontractor providing *construction trucking services* from the requirement of having a CSLB license if all of the following is satisfied:

   a) The subcontractor is a business entity formed as a sole proprietorship, partnership, limited liability company, limited liability partnership, or corporation.

   b) For work performed after January 1, 2020, the subcontractor is registered with the Department of Industrial Relations as a public works contractor, regardless of whether the subcontract involves public work.

   c) The subcontractor utilizes its own employees to perform the construction trucking services, unless the subcontractor is a sole proprietor who operates their own truck to perform the entire subcontract and holds a valid motor carrier permit issued by the Department of Motor Vehicles.

   d) The subcontractor negotiates and contracts with, and is compensated directly by, the licensed contractor.

   e) The licensed driver is licensed to operate a truck in excess of 26,000 pounds.

11) Requires, for work performed after January 1, 2020, that any business entity that provides construction trucking services to a licensed contractor utilizing more than one truck is the employer for all drivers of those trucks.

12) Clarifies that nothing above prohibits an individual who owns their truck from working as an employee of a trucking company and utilizing that truck in the scope of that employment. An individual employee providing their own truck for use by an employer trucking company must receive reimbursement from the trucking company for the reasonable expense incurred for the use of the employee owned truck.

13) Provides that a relationship between a service provider and a referral agency is exempt from the ABC test and under the *Borello* test if the following is applicable:

   a) The service provider has formed a business entity as a sole proprietor, partnership, limited liability company, limited liability partnership, or corporation.

 b) The service provider is free from the control and direction of the referral agency as a matter of contract and fact.
 c) If the work for the client is performed in a jurisdiction that requires the service provider to have a business license or business tax registration, the service provider has the required business license or business tax registration.
 d) If the work for the client requires the service provider to hold a state contractor's license, the service provider has the required contractor's license.
 e) The service provider delivers services to the client under service provider's name, rather than under the name of the referral agency.
 f) The service provider provides its own tools and supplies to perform the services.
 g) The service provider is customarily engaged in an independently established business of the same nature as that involved in the work performed for the client.
 h) The service provider maintains a clientele without any restrictions from the referral agency and the service provider is free to seek work elsewhere, including through a competing agency.
 i) The service provider sets its own hours and terms of work and is free to accept or reject clients and contracts.
 j) The service provider sets its own rates for services performed, without deduction by the referral agency.
 k) The service provider is not penalized in any form for rejecting clients or contracts. This subparagraph does not apply if the service provider accepts a client or contract and then fails to fulfill any of its contractual obligations.

14) Defines a referral agency as a business that connects service providers with clients and provides the following services: graphic design, photography, tutoring, event planning, minor home repair, moving, home cleaning, errands, furniture assembly, animal services, dog walking, dog grooming, web design, picture hanging, pool cleaning, or yard cleanup.

15) Provides that *Dynamex* and the ABC test does not apply to the relationship between a motor club holding a certificate of authority and an individual performing services pursuant to a contract between the motor club and a third party to provide motor club services utilizing the employees and vehicles of the third party and, instead, the determination whether such an individual is an employee of the motor club shall be governed by *Borello*, if the motor club demonstrates that the third party is a separate and independent business from the motor club.

16) Provides that the codification of the ABC test is not a change in law, but rather declaratory of existing law. Also provides that provisions above are declaratory of existing law and should apply retroactively to existing claims to the extent permitted by law.

17) Provides that the provisions above, except for the ABC test itself, apply to work on or after January 1, 2020.

18) Provides that, beginning on July 1, 2020, any individual who is an employee as described above must be covered by workers' compensation insurance, but that this requirement is not retroactive to an earlier date.

19) Provides that, in addition to any other remedies available, an action for injunctive relief to prevent the continued misclassification of employees as independent contractors may be prosecuted against the putative employer in a court of competent jurisdiction by the Attorney General or by a city attorney of a city having a population in excess of 750,000, or by a city attorney in a city and county or, with the consent of the district attorney, by a city prosecutor in a city having a full-time city prosecutor in the name of the people of the State of California upon their own complaint or upon the complaint of a board, officer, person, corporation, or association.

20) Prohibits any employer from reclassifying an individual who was an employee on January 1, 2019, to an independent contractor due to this bill's enactment.

21) Makes findings and declarations on *Dynamex*, the negative consequences of misclassification, and states that this bill is not a change in the law with regard to violations of the Labor Code relating to wage orders of the IWC.

22) Makes conforming and technical changes to existing provisions.

**Comments**

*Brief Comments on Referral Agencies*

As discussed above, AB 5 addresses the concept of referral agencies and service providers. Since the introduction of this language, several stakeholders have asked what referral agencies are and where this concept came from. As such, the staff comments below will briefly attempt to address this question.

As was noted in the Senate Labor Committee analysis, the core question when analyzing intermediaries in the *Dynamex*/AB 5 context is what purpose do they serve and is their fee proportionate to the service the intermediary provides. The

referral agency language creates a concrete path for both existing and new referral agencies to follow and explicitly says what is a legitimate referral agency: an entity or website which connected rate-setting independent businesses to clients; assisted in rate setting by sending the independent business his or her set rate, without deduction, and billed the client for the service costs associated with running a referral agency; provided services that may be out of reach for a small independent business, like credit card payments, bill collection, and dispute resolution; and assisted the development of independent small businesses through exposure and other services.

The complication with referral agencies comes with their inclusion in the retroactivity provisions. In including referral agencies in the retroactive language, the Legislature is stating that they exist and should not face retroactive liability. Yet, this is an undefined concept until AB 5 becomes law. As such, the Legislature is extending retroactive protection to some existing companies and not others knowing that the companies that receiving this protection could not be in full compliance with AB 5 prior to January 1, 2020.

Where does that place enforcement entities and regulators? First, it is worth noting that the businesses covered by both the prospective and retrospective provisions of this bill are unique. Specifically, they require the contractor to engage in rate setting, and they require the contractor to market themselves as an individual. In short, someone using a referral agency is hiring a specific person for a specific task at a specific negotiated rate. They would not, for example, request a service from an agency and find out who would provide the service at a later date. Without direct communication and rate setting prior to the provision of the service, the entity is an employer, not a referral agency.

Second, an existing referral agency is going to remit the negotiated rate, including any potential gratuity, *without deduction on the part of the contractor*. If, for example, a contractor billed her services at $25/hour, it would be permissible for a referral agency to charge the client $35/hour and keep the $10 difference. It would not be permissible, however, to place the costs of the operation of the referral agency on the shoulders of the contractor.

Finally, the referral agency should not exert significant control over how a contractor does their contracted services. For example, a contractor should be able to select who they will provide services for prior to any work being performed. If work was simply directed to a contractor, then the entity directing the work is an employer, not a referral agency.

*Errors and Omissions*

As with any complex legislation, it is the norm that future clean-up legislation is necessary to sand down the rough edges and diminish the unseemly gap between the written word of legislation and the hazy hieroglyphics of everyday California. AB 5 is no exception.

For example, AB 5 provides a clean, unmistakable exemption for medical professionals (physicians and surgeons, dentists, and veterinarians) from *Dynamex*, instead placing these professions under the employment rules of *Borello*. However, this bill also states that if these same professions are covered by a collective bargaining agreement, then the *Dynamex* employment rules apply. For the sake of clarity, the Legislature may wish to clarify that, for medical professions not covered by a collective bargaining agreement, *Borello* applies in all situations, unless the medical professionals are covered by a collective bargaining agreement.

Similarly, recent amendments to the cosmetology licensee language, which creates a specific path for some cosmetology licensees to come under the *Borello* employment test, requires that the cosmetologist "processes their own payments". Fundamentally, it is unclear what that means – no one is going to argue that AB 5 now requires all cosmetologists to create an interbank system for credit card payments. This language was designed to differentiate cosmetologists and referral agencies: while referral agencies process the payments from clients and then send the negotiated rate to the contractor (again, without deduction and with any potential gratuity), cosmetologists will handle their own payments. They may use a particular payment processor or booking software, and they may ask someone to run the actual processing of the payment for them, but the calculation and selection of the payment process belongs to the cosmetologist.

Both of these issues could benefit from clearer language in a 2020 clean-up bill.

NOTE: Additional Staff Comments are available in the Senate Labor, Public Employment and Retirement Committee analysis.

**Related/Prior Legislation**

AB 2496 (Gonzalez Fletcher, 2018) would have created a rebuttable presumption that a worker in the janitorial field is an employee, and therefore is due the same protections and privileges as other employees. Governor Brown vetoed the bill, stating the following in his veto letter:

> I share the Author's concern about protecting the most vulnerable workers as well as the general concern about providing clarity regarding worker

classification. The California Supreme Court recently issued a significant decision establishing a new test to determine whether a worker is properly classified as an employee or an independent contractor, Dynamex Operations West, Inc. v. Superior Court (2018) 4 Cal.5th 903. The Administration and the Legislature are still reviewing this decision and any statutory changes to such tests would be premature.

**FISCAL EFFECT:**   Appropriation:   Yes   Fiscal Com.:   Yes    Local:  Yes

According to the Senate Appropriations Committee:

- The Department of Industrial Relations indicates that it would incur first-year costs of $2.2 million, and $2.1 million annually thereafter, to implement the provisions of this bill (Labor Enforcement and Compliance Fund).

- Total annual administration costs to the Employment Development Department would range between $2.5 million and $2.9 million.

- Additionally, this bill could result in unknown, potentially significant costs to the Medi-Cal program. Staff notes skilled nursing facilities and intermediate care facilities employ contractors to provide physical therapy, occupational therapy, mental health services, and dietary services. To the extent this bill makes it more challenging for specified facilities to continue employing these contractors, Medi-Cal beneficiaries who reside in skilled nursing facilities and/or intermediate care facilities would have longer stays in institutional settings instead of returning to the community. In addition, if these independent contractors, or new employees qualify as an independent contractor, types of claims could shift significantly, either to reflect higher-cost of care or, potentially, lower preventative utilization in the short-term but costly services in the out-years.

- The Franchise Tax Board (FTB) indicates that this bill would likely result in some workers who are currently treated as independent contractors being reclassified as employees. This reclassification would shift responsibility for a number of business related expenses from workers to the businesses. A reduction of qualified business expenses will likely increase the tax liability of workers, while the increase in expenses will decrease the tax liability of many businesses. The net effect of these changes would depend on the marginal tax rates of the businesses and workers involved, and any adjustment that may take place in compensation levels or related business expenses, and is unknown, In addition, reclassified workers would receive W-2s reporting their wages to

FTB. This would likely increase the level of compliance for these workers, thereby increasing tax revenues.

**SUPPORT:** (Verified 8/30/19)

California Labor Federation (co-source)
State Building and Construction Trades Council (co-source)
9 to 5
Amalgamated Transit Union
American Federation of State, County and Municipal Employees
Berkeley City Council
BlueGreen Alliance
California Alliance for Retired Americans
California Association of Health Underwriters
California Conference of Machinists
California Federation of Teachers
California Immigrant Policy Center
California Nevada Conference of Operating Engineers
California Nurses Association
California Partnership for Working Families
California Professional Firefighters
California Rural Legal Assistance Foundation
California School Employees Association
Center on Policy Initiatives, San Diego
Central Coast Alliance United for a Sustainable Economy
Communication Workers of America, District 9
Direct Selling Association
East Bay Alliance for a Sustainable Economy
Employees Rights Center
Engineers and Scientists of California, IFPTE, Local 20
Greater California Livery Association
Independent Insurance Agents and Brokers of California
Labor and Employment Committee of National Lawyers Guild
Legal Aid at Work
Los Angeles Alliance for a New Economy
National Association of Insurance and Financial Advisors of California
National Domestic Workers Alliance
National Employment Law Project
National Union of Healthcare Workers
Orange County Communities Organized for Responsible Development
Professional and Technical Engineers, IFPTE, Local 21

Professional Beauty Federation of California
SEIU CA
SEIU Local 1000
Shaklee Corporation
Sierra Club California
Southern California Coalition for Occupational Safety and Health
Teamsters Public Affairs Council
The Greenlining Institute
Union of Concerned Scientists
UNITE HERE
United Auto Workers, Local 2865
United Auto Workers, Local 5810
United Domestic Workers, AFSCME Local 3930
United Farm Workers
United Food and Commercial Workers Western States Council
University Professional and Technical Employees, CWA Local 9119
Warehouse Worker Resource Center, Inland Empire
Western Center on Law and Poverty
Western States Council of Sheet Metal, Air, Rail and Transportation
Worksafe

**OPPOSITION:** (Verified 8/30/19)

American Electrology Association
American Society of Travel Advisors
Anthony Hopkins Investigations
Associated Bodywork and Massage Professionals
California Aesthetic Alliance
California Association of Licensed Investigators
California Association of Winegrape Growers
California League of Food Processors
California Physical Therapy Association
California Society for Respiratory Care
California Trucking Association
City of Glendora
Coalition of DMV Motor Carrier Permit Holders
El Dorado County Joint Chambers Commission
Electrologists' Association of California
Electronic Transactions Association
Elk Grove Chamber of Commerce
Folsom Chamber of Commerce

Forest Landowners of California
Hayward Chamber of Commerce
Insights Association
J & B Water Trucking
Lavell Water Truck Service LLC
National Federation of Independent Business
Pacific Seafood
Rancho Cordova Chamber of Commerce
Roseville Area Chamber of Commerce
Santoro Transportation Inc.
Southern California Contractors Association
TechNet
147 individuals

**ARGUMENTS IN SUPPORT:** State Building and Construction Trades Council, writing in support, argues the following:

> Last April, the California Supreme Court by a unanimous ruling in Dynamex Operations v. Supreme Court established a stronger protection for workers by making it more difficult to misclassify them as independent contractors. Workers classified as employees have access to the Labor Code's economic security protections such as minimum wage, unemployment insurance benefits, workers' compensation, and a jobsite free from discrimination and harassment.

> The Supreme Court's Dynamex decision specifically mentions that wage and hour laws are "clearly intended for the benefit of those law-abiding businesses that comply with the obligations imposed by the wage orders, ensuring that responsible companies are not hurt by unfair competition from competitor businesses that utilize substandard employment practices." There is no doubt that all employers (old, new, large, mid-size or small) that follow the state's labor laws are severely disadvantaged when their competitors misclassify employees as independent contractors.

> Construction has two sides, one that promotes rewarding careers with fair wages and benefits and another that is heavily burdened by the underground economy which depresses wages, denies basic benefits, undercuts good employers, neglects training, and incentivizes unsafe working conditions. Regrettably, construction employers routinely misclassify workers as independent contractors to save money, increase profits and to benefit from an unfair competitive advantage over contractors with employees.

Most recently, the State of California brought forward the largest wage-theft case against any employer citing a framing and drywall subcontractor for cheating over 1,000 workers of the minimum wage, overtime and rest breaks on construction projects throughout the Los Angeles region. The state ordered that over $11.94 million in back wages and penalties for violations between 2014-2017 was owed by RDV Construction to its employees.

In another case brought by the state's labor commissioner, Calcrete Construction was sued separately for $6.3 million for cheating 249 construction workers out of their properly owed wages on one of the same projects involving RDV Construction. The Division of Labor Standards and Enforcement (DLSE) also found Calcrete Construction guilty of misclassifying 175 construction workers as independent contractors. In fact, these workers were threatened with termination of employment if they resisted signing contracts that falsely stated their independent contractor status.

According to a recent study by the Economic Roundtable titled, "Sinking Underground-The Growing Informal Economy in CA Construction," misclassified construction workers earn $.64 cents of every dollar a formal employee earns. In addition, the Employment Development Department's misclassification audits from 2005-2007 recovered $111,956,556 in pay roll taxes, $18,537,894 in labor citations and $40,348,667 in employment tax fraud. Lastly, DLSE estimates that misclassification costs the state over $7 billion annually.

We strongly support AB 5 because it:

• Reinforces Labor Code protections for misclassified workers by codifying the Dynamex case (or ABC test) into the Labor Code.

• Assists the Labor Agency/DLSE's efforts to fight the underground economy and hold law breaking contractors accountable.

• Restores tax revenue for unemployment insurance, disability insurance, and employer contributions to the workers compensation system by preventing misclassification.

• Protects law-abiding contractors, including signatory contractors, from being at a competitive disadvantage.

There has not been a moment in recent history granting the Legislature with the ability to protect the most disadvantaged workers and address income inequality which continues to cause extreme poverty and suffering while businesses,

corporations and Wall Street score record breaking profits. We believe AB 5 provides this opportunity as it will significantly improve the working conditions for those that are currently misclassified and suffering from wage-theft and the other negative consequences of being denied the protections under the state's labor code.

**ARGUMENTS IN OPPOSITION:** The National Federation of Independent Business (NFIB), writing in opposition to AB 5, argues the following:

> As you know, prior to *Dynamex* California courts and state agencies had long applied what is known as the *Borello* test for determining whether a worker was an independent contractor for labor and employment purposes. The *Borello* test was a multi-factor approach which looked primarily at whether the hiring entity had a "right to control" the manner in which the worker performed the contracted service, along with eight other "secondary" factors. In *Dynamex*, the California Supreme Court decided to abruptly replace the *Borello* test in April of 2018.
>
> *Dynamex* established a new "ABC" test, which provides that a worker must be treated as an employee unless the hiring entity can prove that the worker is: (A) free from control; (B) providing services *unrelated* to the hiring entity's business; and (C) holding him or herself out as an independent business. This rigid formula prevents entrepreneurs from working as an independent contractor if they are providing services integral to another company's business, regardless of what steps they have taken to establish themselves as a separate, independent business.
>
> Fortunately, many policy leaders including yourself have acknowledged this new "ABC" test under *Dynamex* is unworkable for every single business in a state and economy as diverse as California's. Unfortunately, the amendment process that has followed the introduction of AB 5 has left too many small businesses behind by narrowly carving out specific industries, rather than seeking to craft an exemption based on the nature of the contractual relationship between two entities. In a recent direct balloting of our California small business membership, 78% told us clearly that they wish to see a different approach, one that exempts two established, independent businesses from the "ABC" test, rather than picking and choosing industries.
>
> **Broad exemption from "ABC" test between two verifiably independent businesses:**

NFIB small business members feel strongly that if, for example, a service provider has gone through the process of incorporating as an LLC or S-Corp, that business operator should be presumed exempt from the "ABC" test so that he or she may freely provide their services to other companies. Fundamentally, if two contracting entities can verify they operate freely and independently of one another, they should be held to the longstanding multi-factor test under *Borello*. Also known as a "business-to-business" exemption, this broad amendment would address the fundamental encumbrance of the "ABC" test, without picking winners and losers by carving out specific industries.

**Eliminate unfair retroactive application of "ABC" test prior to April of 2018:**

The sweeping action taken by the California State Supreme Court with *Dynamex* undoubtedly rewrote decades of California law by supplanting what was known as the *Borello* test with an unprecedented "ABC" test, never seen before in statue or regulation. In May of 2019, the U.S. Court of Appeals for the Ninth Circuit ruled that this unprecedented test could be applied retroactively, even when employers had no possible way of knowing about the "ABC" test. While *Borello* was certainly imperfect, NFIB small business members feel strongly it is unfair to punish employers for following the law of the land at the time, which was *Borello* for nearly three decades.

Independent contractor relationships provide millions of small business owners and entrepreneurs the opportunity to pursue their dreams, yet the rigid "ABC" test established by *Dynamex* and the threat of litigation presented by retroactive application jeopardize these opportunities. NFIB small business members respectfully urge the adoption of the two amendments described above to AB 5 to significantly alleviate these concerns.

ASSEMBLY FLOOR:  59-15, 5/29/19
AYES:  Aguiar-Curry, Arambula, Bauer-Kahan, Berman, Bloom, Boerner Horvath, Bonta, Burke, Calderon, Carrillo, Cervantes, Chau, Chiu, Chu, Cooper, Daly, Diep, Eggman, Frazier, Friedman, Gabriel, Cristina Garcia, Gipson, Gloria, Gonzalez, Grayson, Holden, Irwin, Jones-Sawyer, Kalra, Kamlager-Dove, Levine, Limón, Low, Maienschein, McCarty, Medina, Mullin, Muratsuchi, Nazarian, O'Donnell, Petrie-Norris, Quirk, Quirk-Silva, Ramos, Reyes, Luz Rivas, Robert Rivas, Rodriguez, Blanca Rubio, Salas, Santiago, Smith, Mark Stone, Ting, Weber, Wicks, Wood, Rendon
NOES:  Bigelow, Brough, Chen, Choi, Dahle, Fong, Gallagher, Gray, Kiley, Lackey, Melendez, Obernolte, Patterson, Voepel, Waldron

NO VOTE RECORDED:  Cooley, Cunningham, Flora, Eduardo Garcia, Mathis, Mayes

Prepared by:  Gideon L. Baum / L., P.E. & R. / (916) 651-1556
9/9/19 18:33:21

****  END  ****