# EXHIBIT L



# Bill Text: CA AB2257 | 2019-2020 | Regular Session | Amended
California Assembly Bill 2257 *(Prior Session Legislation)*

**NOTE: There are more recent revisions of this legislation.** Read Latest Draft

**Bill Title:** Worker classification: employees and independent contractors: occupations: professional services.

**Spectrum:** Partisan Bill (Democrat 3-0)

**Status:** *(Passed)* 2020-09-04 - Chaptered by Secretary of State - Chapter 38, Statutes of 2020. [AB2257 Detail]

**Download:** California-2019-AB2257-Amended.html

AMENDED IN SENATE AUGUST 07, 2020
AMENDED IN ASSEMBLY JUNE 04, 2020
AMENDED IN ASSEMBLY MAY 06, 2020
AMENDED IN ASSEMBLY MAY 04, 2020

CALIFORNIA LEGISLATURE— 2019–2020 REGULAR SESSION

**ASSEMBLY BILL**   **NO. 2257**

**Introduced by Assembly Member Gonzalez**
**(Principal coauthor: Assembly Member Calderon)**
**(Coauthor: Assembly Member Smith)**

February 13, 2020

An act to amend Section 2750.3 of the Labor Code, relating to employment, and declaring the urgency thereof, to take effect immediately.

## LEGISLATIVE COUNSEL'S DIGEST

AB 2257, as amended, Gonzalez. Worker classification: employees and independent contractors: occupations: professional services.

Existing law requires a 3-part test, commonly known as the "ABC" test, to determine if workers are employees or independent contractors for purposes of the Labor Code, the Unemployment Insurance Code, and the wage orders of the Industrial Welfare Commission. Under the ABC test, a person providing labor or services for remuneration is considered an employee rather than an independent contractor unless the hiring entity demonstrates that the person is free from the control and direction of the hiring entity in connection with the performance of the work, the person performs work that is outside the usual course of the hiring entity's business, and the person is customarily engaged in an independently established trade, occupation, or business. Existing law charges the Labor Commissioner with the enforcement of labor laws, including worker classification.

Existing law exempts specified occupations and business relationships from the application of the ABC test described above. Existing law, instead, provides that these exempt relationships are governed by the multifactor test previously adopted in the case of S. G. Borello & Sons, Inc. v. Department of Industrial Relations (1989) 48 Cal.3d 341. Existing exemptions include persons providing professional services under specified circumstances, including services provided by still photographers, photojournalists, freelance writers, editors, and newspaper cartoonists who do not license or provide, as applicable, content submissions more than 35 times annually to a putative employer.

This bill would additionally exempt certain occupations in connection with creating, marketing, promoting, or distributing sound recordings or musical compositions. *This bill would also exempt a musician or musical group for the purpose of a single-engagement*

*live performance event, unless certain conditions apply, and would define related terms.*

~~This bill would also additionally exempt a musician or musical group for the purpose of a single engagement live performance event, unless one of certain conditions applies. The bill would define terms for the purpose of this exemption.~~

This bill would delete the existing professional services exemptions for services provided by still photographers, photojournalists, freelance writers, editors, and newspaper cartoonists. The bill would, instead, establish an exemption for services provided by a still photographer, photojournalist, videographer, or photo editor, as defined, who works under a contract that specifies certain ~~terms in advance,~~ *terms,* as long as the individual providing the services is not replacing an employee performing the same work at the same volume, the individual does not primarily perform the work at the hiring entity's business location, and the individual is not restricted from working for more than one hiring entity. The bill would establish an exemption for services provided to a digital content aggregator, as defined, by a still photographer, photojournalist, videographer, or photo editor. The bill would establish an exemption for services provided by a freelance writer, editor, *copy editor,* illustrator, or newspaper cartoonist who works under a contract that specifies certain terms in advance, as long as the individual providing the services is not replacing an employee performing the same work at the same volume, the individual does not primarily perform the work at the hiring entity's business location, and the individual is not restricted from working for more than one hiring entity.

*This bill would create additional exemptions for various professions and occupations. In this regard, the bill would exempt from the ABC test people who provide underwriting inspections and other services for the insurance industry, a manufactured housing salesperson, subject to certain obligations, people engaged by an international exchange visitor program, as specified, and competition judges with specialized skills, as specified. The bill would also create exceptions for specialized performers teaching master classes and real estate appraisers. The bill would revise the conditions pursuant to which business service providers providing services pursuant to contract to another business are exempt and would revise the criteria pursuant to which referral agencies and service providers providing services to clients through referral agencies are exempt.*

*Existing law authorizes an action for injunctive relief to prevent misclassification of employees, to be prosecuted against a putative employer by the Attorney General or a city attorney.*

*This bill would also authorize a district attorney to prosecute an action for injunctive relief.*

This bill would declare that it is to take effect immediately as an urgency statute.

## Digest Key

Vote: 2/3   Appropriation: no   Fiscal Committee: yes   Local Program: no

## Bill Text

## THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** Section 2750.3 of the Labor Code is amended to read:

**2750.3.** (a) (1) For purposes of this code and the Unemployment Insurance Code, and for the purposes of wage orders of the Industrial Welfare Commission, a person providing labor or services for remuneration shall be considered an employee rather than an independent contractor unless the hiring entity demonstrates that all of the following conditions are satisfied:

(A) The person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact.

(B) The person performs work that is outside the usual course of the hiring entity's business.

(C) The person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed.

(2) Notwithstanding paragraph (1), any exceptions to the terms "employee," "employer," "employ," or "independent contractor," and any extensions of employer status or liability, that are expressly made by a provision of this code, the Unemployment Insurance Code, or in an applicable order of the Industrial Welfare Commission, including, but not limited to, the definition of "employee" in subdivision 2(E) of Wage Order No. 2, shall remain in effect for the purposes set forth therein.

(3) If a court of law rules that the three-part test in paragraph (1) cannot be applied to a particular context based on grounds other than an express exception to employment status as provided under paragraph (2), then the determination of employee or independent contractor status in that context shall instead be governed by the California Supreme Court's decision in S. G. Borello & Sons, Inc. v. Department of Industrial Relations (1989) 48 Cal.3d 341 (Borello).

(b) (1) Subdivision (a) and the holding in Dynamex do not apply to the following occupations in connection with creating, marketing, promoting, or distributing sound recordings or musical compositions, and instead the holding in Borello shall apply to all of the following:

(A) Recording artists, subject to the below.

(B) Songwriters, lyricists, and composers.

(C) Managers of recording artists.

(D) Record producers.

(E) Musical engineers and mixers engaged in the creation of sound recordings.

(F) Musicians engaged in the creation of sound recordings, subject to the below.

(G) Vocalists, subject to the below.

(H) Photographers working on recording photo shoots, album covers, and other press and publicity purposes.

(I) Independent radio promoters.

(J) Any other individual engaged to render any creative, production, marketing, or independent music publicist services related primarily to the creation, marketing, promotion, or distribution of sound recordings or musical compositions, unless otherwise stated in the terms and conditions of any current or future collective bargaining agreement or agreement between the applicable and respective parties, in which case those terms and conditions shall govern.

(2) This subdivision shall not apply to any of the following:

(A) Film and television unit production ~~crews~~ *crews, as such term is commonly used in the film and television industries,* working on live or recorded performances for audiovisual works, including still photographers and cinematographers.

(B) Publicists who are not independent music publicists.

(C) People subject to collective bargaining agreements and those hired by employers signed to collective bargaining agreements.

(D) Solely for the purposes of determining a right to organize, those who are deemed to be eligible in an appropriate collective bargaining unit.

(3) Notwithstanding subdivision (a), the holding in Dynamex, or paragraphs (1) and (2), the terms and conditions of any current or future collective bargaining agreements or agreements between the applicable unions and respective employers shall govern in all events.

(4) The following shall apply to recording artists, musicians, and vocalists:

(A) Recording artists, musicians, and vocalists shall not be precluded from organizing under applicable provisions of labor law, or otherwise exercising rights granted to employees under the National Labor Relations Act (29 U.S.C. Sec. 151 et seq.).

(B) Musicians and vocalists who are not royalty-based participants in the work created during any specific engagement shall be governed by state and local administrative and judicial bodies with respect to minimum wage and overtime requirements related to that engagement, and therefore treated as employees for such purposes under the applicable provisions of this code.

(C) In all events, the terms and conditions of any current or future collective bargaining agreements or agreements between the applicable unions and respective employers shall govern.

(c) (1) Subdivision (a) and the holding in Dynamex do not apply to a musician or musical group for the purpose of a single-engagement live performance event, and instead the determination of employee or independent contractor status shall be governed by Borello, unless one of the following conditions is met:

(A) The musical group is performing as a symphony orchestra, the musical group is performing at a theme park or amusement park, or a musician is performing in a musical theater production.

(B) The musical group is an event headliner for a performance taking place in a venue location with more than 1,500 attendees.

(C) The musical group is performing at a festival that sells more than 18,000 tickets per day.

(2) This subdivision is inclusive of rehearsals related to the single-engagement live performance event.

(3) As used in this subdivision:

(A) "Event headliner" means the musical group that appears most prominently in an event program, advertisement, or on a marquee.

(B) "Festival" means a single day or multiday event in a single venue location that occurs once a year, featuring performances by various musical groups.

(C) "Musical group" means a solo artist, band, or a group of musicians who perform under a distinct name.

(D) "Musical theater production" means a form of theatrical performance that combines songs, spoken dialogue, acting, and dance.

(E) "Musician" means an individual performing instrumental, electronic, or vocal music in a live setting.

(F) "Single-engagement live performance event" means a stand-alone musical performance in a single venue location, or a series of performances in the same venue location no more than once a week. The performance is not considered a part of a tour or series of live performances at various locations.

(G) "Venue location" means an indoor or outdoor location used primarily as a space to hold a concert or musical performance. "Venue location" includes, but is not limited to, a restaurant, bar, or brewery that regularly offers live musical entertainment.

(d) Subdivision (a) and the holding in Dynamex do not apply to the following occupations as defined in the paragraphs below, and instead, the determination of employee or independent contractor status for individuals in those occupations shall be governed by ~~Borello.~~ *Borello:*

(1) A person or organization who is licensed by the Department of Insurance pursuant to Chapter 5 (commencing with Section 1621), Chapter 6 (commencing with Section 1760), or Chapter 8 (commencing with Section 1831) of Part 2 of Division 1 of the Insurance ~~Code.~~ *Code or a person who provides underwriting inspections, premium audits, risk management, or loss control work for the insurance industry.*

(2) A physician and surgeon, dentist, podiatrist, psychologist, or veterinarian licensed by the State of California pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, performing professional or medical services provided to or by a health care entity, including an entity organized as a sole proprietorship, partnership, or professional corporation as defined in Section 13401 of the Corporations Code. Nothing in this subdivision shall ~~apply to the employment settings currently or potentially governed by collective bargaining agreements for the licensees identified in this paragraph.~~ *circumvent, undermine, or restrict the rights under federal law to organize and collectively bargain.*

(3) An individual who holds an active license from the State of California and is practicing one of the following recognized professions: lawyer, architect, engineer, private investigator, or accountant.

(4) A securities broker-dealer or investment adviser or their agents and representatives that are either of the following:

(A) Registered with the Securities and Exchange Commission or the Financial Industry Regulatory Authority.

(B) Licensed by the State of California under Chapter 2 (commencing with Section 25210) or Chapter 3 (commencing with Section 25230) of Division 1 of Part 3 of Title 4 of the Corporations Code.

(5) A direct sales salesperson as described in Section 650 of the Unemployment Insurance Code, so long as the conditions for exclusion from employment under that section are met.

*(6) A manufactured housing salesperson, subject to all obligations under Part 2 (commencing with Section 18000) of Division 13 of the Health and Safety Code, including all regulations promulgated by the Department of Housing and Community Development relating to manufactured home salespersons and all other obligations of manufactured housing salespersons to members of the public.*

~~(6)~~

*(7)* A commercial ~~fisherman~~ *fisher* working on an American vessel as defined in subparagraph (A) below.

(A) For the purposes of this paragraph:

(i) "American vessel" has the same meaning as defined in Section 125.5 of the Unemployment Insurance Code.

(ii) "Commercial ~~fisherman"~~ *fisher"* means a person who has a valid, unrevoked commercial fishing license issued pursuant to Article 3 (commencing with Section 7850) of Chapter 1 of Part 3 of Division 6 of the Fish and Game Code.

(iii) "Working on an American vessel" means the taking or the attempt to take fish, shellfish, or other fishery resources of the state by any means, and includes each individual aboard an American vessel operated for fishing purposes who participates directly or indirectly in the taking of these raw fishery products, including maintaining the vessel or equipment used aboard the vessel. However, "working on an American vessel" does not apply to anyone aboard a licensed commercial fishing vessel as a visitor or guest who does not directly or indirectly participate in the taking.

(B) For the purposes of this paragraph, a commercial ~~fisherman~~ *fisher* working on an American vessel is eligible for unemployment insurance benefits if they meet the definition of "employment" in Section 609 of the Unemployment Insurance Code and are otherwise eligible for those benefits pursuant to the provisions of the Unemployment Insurance Code.

(C) ~~(i)~~ On or before March 1, 2021, and each March 1 thereafter, the Employment Development Department shall issue an annual report to the Legislature on the use of unemployment insurance in the commercial fishing industry. This report shall include, but not be limited to, ~~all of the following:~~ *the number of commercial fishers who apply for unemployment insurance benefits, the number of commercial fishers who have their claims disputed, the number of commercial fishers who have their claims denied, and the number of commercial fishers who receive unemployment insurance benefits. The report required by this subparagraph shall be submitted in compliance with Section 9795 of the Government Code.*

~~(I) Reporting the number of commercial fishermen who apply for unemployment insurance benefits.~~

~~(II) The number of commercial fishermen who have their claims disputed.~~

~~(III) The number of commercial fishermen who have their claims denied.~~

~~(IV) The number of commercial fishermen who receive unemployment insurance benefits.~~

~~(ii) The report required by this subparagraph shall be submitted in compliance with Section 9795 of the Government Code.~~

(D) This paragraph shall become inoperative on January 1, 2023, unless extended by the Legislature.

~~(7)~~

*(8) A newspaper distributor working under contract with a newspaper publisher, as defined in subparagraph (A), and a newspaper carrier working under contract either with a newspaper publisher or newspaper distributor.*

(A) For purposes of this paragraph:

(i) "Newspaper" means a newspaper of general circulation, as defined in Section 6000 of the Government Code, and any other publication circulated to the community in general as an extension of or substitute for that newspaper's own publication, whether that publication be designated a "shoppers' guide," as a zoned edition, or otherwise.

(ii) "Publisher" means the natural or corporate person that manages the newspaper's business operations, including circulation.

(iii) "Newspaper distributor" means a person or entity that contracts with a publisher to distribute newspapers to the community.

(iv) "Carrier" means a person who effects physical delivery of the newspaper to the customer or reader.

(B) This paragraph shall become inoperative on January 1, 2021, unless extended by the Legislature.

*(9) An individual who is engaged by an international exchange visitor program that has obtained and maintains full official designation by the United States Department of State under Part 62 (commencing with Section 62.1) of Title 22 of the Code of Federal Regulations for the purpose of conducting international and cultural exchange visitor programs and is in full compliance with Part 62 (commencing with Section 62.1) of Title 22 of the Code of Federal Regulations.*

*(10) A competition judge with a specialized skill set or expertise providing services that require the exercise of discretion and independent judgment to an organization for the purposes of determining the outcome or enforcing the rules of a competition. This includes, but is not limited to, an amateur umpire or referee.*

(e) (1) Subdivision (a) and the holding in Dynamex do not apply to a contract for "professional services" as defined below, and instead the determination of whether the individual is an employee or independent contractor shall be governed by Borello if the hiring entity demonstrates that all of the following factors are satisfied:

(A) The individual maintains a business location, which may include the individual's residence, that is separate from the hiring entity. Nothing in this subdivision prohibits an individual from choosing to perform services at the location of the hiring entity.

(B) If work is performed more than six months after the effective date of this ~~section, the individual has a business license,~~ *section and the work is performed in a jurisdiction that requires the individual to have a business license or business tax registration, the individual has the required business license or business tax registration in order to provide the services under the contract,* in addition to any required professional licenses or permits for the individual to practice in their profession.

(C) The individual has the ability to set or negotiate their own rates for the services performed.

(D) Outside of project completion dates and reasonable business hours, the individual has the ability to set the individual's own hours.

(E) The individual is customarily engaged in the same type of work performed under contract with another hiring entity or holds themselves out to other potential customers as available to perform the same type of work.

(F) The individual customarily and regularly exercises discretion and independent judgment in the performance of the services.

(2) For purposes of this subdivision:

(A) An "individual" includes an individual providing services through a sole proprietorship or other business entity.

(B) "Professional services" means services that meet any of the following:

(i) Marketing, provided that the contracted work is original and creative in character and the result of which depends primarily on the invention, imagination, or talent of the employee or work that is an essential part of or necessarily incident to any of the contracted work.

(ii) Administrator of human resources, provided that the contracted work is predominantly intellectual and varied in character and is of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time.

(iii) Travel agent services provided by either of the following:

(I) A person regulated by the Attorney General under Article 2.6 (commencing with Section 17550) of Chapter 1 of Part 3 of Division 7 of the Business and Professions Code.

(II) An individual who is a seller of travel within the meaning of subdivision (a) of Section 17550.1 of the Business and Professions Code and who is exempt from the registration under subdivision (g) of Section 17550.20 of the Business and Professions Code.

(iv) Graphic design.

(v) Grant writer.

(vi) Fine artist.

(vii) Services provided by an enrolled agent who is licensed by the United States Department of the Treasury to practice before the Internal Revenue Service pursuant to Part 10 of Subtitle A of Title 31 of the Code of Federal Regulations.

(viii) Payment processing agent through an independent sales organization.

(ix) (I) Services provided:

(ia) By a still photographer, photojournalist, videographer, or photo editor who works under a contract that specifies ~~in advance~~ the rate of ~~pay, intellectual property rights,~~ *pay* and obligation to pay by a defined time, as long as the individual providing the services is not replacing an employee performing the same work at the same volume, the individual does not primarily perform the work at the hiring entity's business location, and the individual is not restricted from working for more than one hiring entity. This subclause is not applicable to a still photographer, photojournalist, videographer, or photo editor who works on motion pictures, which includes, but is not limited to, projects produced for theatrical, television, internet streaming for any device, commercial, productions, broadcast news, music videos, and live shows, whether distributed live or recorded for later broadcast, regardless of distribution platform. Nothing in this section shall impose limitations on a photographer or artist from displaying their work product for sale.

(ib) To a digital content aggregator by a still photographer, photojournalist, videographer, or photo editor.

(II) For the purposes of this clause:

(ic) "Photo editor" means an individual who performs services ancillary to the creation of digital content, such as retouching, editing, and keywording.

(id) "Digital content aggregator" means a licensing intermediary that obtains a license or assignment of copyright from a still photographer, photojournalist, videographer, or photo editor for the purposes of distributing that copyright by way of sublicense or assignment, to the intermediary's third party end users.

(x) By a freelance writer, editor, *copy editor,* illustrator, or newspaper cartoonist who works under a contract that specifies in advance the rate of pay, intellectual property rights, and obligation to pay by a defined time, as long as the individual providing the services is not replacing an employee performing the same work at the same volume, the individual does not primarily perform the work at the hiring entity's business location, and the individual is not restricted from working for more than one hiring entity.

(xi) Services provided by a licensed esthetician, licensed electrologist, licensed manicurist, licensed barber, or licensed cosmetologist provided that the individual:

(I) Sets their own rates, processes their own payments, and is paid directly by clients.

(II) Sets their own hours of work and has sole discretion to decide the number of clients and which clients for whom they will provide services.

(III) Has their own book of business and schedules their own appointments.

(IV) Maintains their own business license for the services offered to clients.

(V) If the individual is performing services at the location of the hiring entity, then the individual issues a Form 1099 to the salon or business owner from which they rent their business space.

(VI) This subdivision shall become inoperative, with respect to licensed manicurists, on January 1, 2022.

*(xii) A specialized performer hired by a performing arts company or organization to teach a master class for no more than one week. "Master class" means a specialized course for limited duration that is not regularly offered by the hiring entity and is taught by an expert in a recognized field of artistic endeavor who does not work for the hiring entity to teach on a regular basis.*

*(xiii) Services provided by an appraiser, as defined in Part 3 (commencing with Section 11300) of Division 4 of the Business and Professions Code.*

(f) Subdivision (a) and the holding in Dynamex do not apply to the following, which are subject to the Business and Professions Code:

(1) A real estate licensee licensed by the State of California pursuant to Division 4 (commencing with Section 10000) of the Business and Professions Code, for whom the determination of employee or independent contractor status shall be governed by subdivision (b) of Section 10032 of the Business and Professions Code. If that section is not applicable, then this determination shall be governed as follows:

(A) For purposes of unemployment insurance by Section 650 of the Unemployment Insurance Code.

(B) For purposes of workers' compensation by Section 3200 et seq.

(C) For all other purposes in the Labor Code by Borello. The statutorily imposed duties of a responsible broker under Section 10015.1 of the Business and Professions Code are not factors to be considered under the Borello test.

(2) A repossession agency licensed pursuant to Section 7500.2 of the Business and Professions Code, for whom the determination of employee or independent contractor status shall be governed by Section 7500.2 of the Business and Professions Code, if the repossession agency is free from the control and direction of the hiring person or entity in connection with the performance of the work, both under the contract for the performance of the work and in fact.

(g) Subdivision (a) and the holding in Dynamex do not apply to a bona fide business-to-business contracting relationship, as defined below, under the following conditions:

(1) If a business entity formed as a sole proprietorship, partnership, limited liability company, limited liability partnership, or corporation ("business service provider") contracts to provide services to another such business ("contracting business"), the determination of employee or independent contractor status of the business services provider shall be governed by Borello, if the contracting business demonstrates that all of the following criteria are satisfied:

(A) The business service provider is free from the control and direction of the contracting business entity in connection with the performance of the work, both under the contract for the performance of the work and in fact.

(B) The business service provider is providing services directly to the contracting business rather than to customers of the contracting business. *This subparagraph does not apply if the business service provider's employees are solely performing the services under the contract under the name of the business service provider and the business service provider regularly contracts with other businesses.*

(C) The contract with the business service provider is in writing.

(D) If the work is performed in a jurisdiction that requires the business service provider to have a business license or business tax registration, the business service provider has the required business license or business tax registration.

(E) The business service provider maintains a business location that is separate from the business or work location of the contracting business.

(F) The business service provider is customarily engaged in an independently established business of the same nature as that involved in the work performed.

(G) The business service provider ~~actually contracts~~ *can contract* with other businesses to provide the same or similar services and ~~maintains~~ *maintain* a clientele without restrictions from the hiring entity.

(H) The business service provider advertises and holds itself out to the public as available to provide the same or similar services.

(I) The business service provider provides its own tools, vehicles, and equipment to perform the ~~services.~~ *services, not including any proprietary materials that may be necessary to perform the services under the contract.*

(J) The business service provider can negotiate its own rates.

(K) Consistent with the nature of the work, the business service provider can set its own hours and location of work.

(L) The business service provider is not performing the type of work for which a license from the Contractors' State License Board is required, pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code.

(2) This subdivision does not apply to an individual worker, as opposed to a business entity, who performs labor or services for a contracting business.

~~(3)The determination of whether an individual working for a business service provider is an employee or independent contractor of the business service provider is governed by paragraph (1) of subdivision (a).~~

*(3) When two bona fide businesses are contracting with one another under the conditions set forth in paragraph (1), the determination of whether an individual working for a business service provider is an employee or independent contractor of the business service provider is governed by paragraph (1) of subdivision (a).*

(4) This subdivision does not alter or supersede any existing rights under Section 2810.3.

(h) Subdivision (a) and the holding in Dynamex do not apply to the relationship between a contractor and an individual performing work pursuant to a subcontract in the construction industry, and instead the determination of whether the individual is an employee of the contractor shall be governed by Section 2750.5 and by Borello, if the contractor demonstrates that all the following criteria are satisfied:

(1) The subcontract is in writing.

(2) The subcontractor is licensed by the Contractors' State License Board and the work is within the scope of that license.

(3) If the subcontractor is domiciled in a jurisdiction that requires the subcontractor to have a business license or business tax registration, the subcontractor has the required business license or business tax registration.

(4) The subcontractor maintains a business location that is separate from the business or work location of the contractor.

(5) The subcontractor has the authority to hire and to fire other persons to provide or to assist in providing the services.

(6) The subcontractor assumes financial responsibility for errors or omissions in labor or services as evidenced by insurance, legally authorized indemnity obligations, performance bonds, or warranties relating to the labor or services being provided.

(7) The subcontractor is customarily engaged in an independently established business of the same nature as that involved in the work performed.

(8) (A) Paragraph (2) shall not apply to a subcontractor providing construction trucking services for which a contractor's license is not required by Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, provided that all of the following criteria are satisfied:

(i) The subcontractor is a business entity formed as a sole proprietorship, partnership, limited liability company, limited liability partnership, or corporation.

(ii) For work performed after January 1, 2020, the subcontractor is registered with the Department of Industrial Relations as a public works contractor pursuant to Section 1725.5, regardless of whether the subcontract involves public work.

(iii) The subcontractor utilizes its own employees to perform the construction trucking services, unless the subcontractor is a sole proprietor who operates their own truck to perform the entire subcontract and holds a valid motor carrier permit issued by the Department of Motor Vehicles.

(iv) The subcontractor negotiates and contracts with, and is compensated directly by, the licensed contractor.

(B) For work performed after January 1, 2020, any business entity that provides construction trucking services to a licensed contractor utilizing more than one truck shall be deemed the employer for all drivers of those trucks.

(C) For purposes of this paragraph, "construction trucking services" mean hauling and trucking services provided in the construction industry pursuant to a contract with a licensed contractor utilizing vehicles that require a commercial driver's license to operate or have a gross vehicle weight rating of 26,001 or more pounds.

(D) This paragraph shall only apply to work performed before January 1, 2022.

(E) Nothing in this paragraph prohibits an individual who owns their truck from working as an employee of a trucking company and utilizing that truck in the scope of that employment. An individual employee providing their own truck for use by an employer trucking company shall be reimbursed by the trucking company for the reasonable expense incurred for the use of the employee-owned truck.

(i) Subdivision (a) and the holding in Dynamex do not apply to the relationship between a referral agency and a service provider, as defined below, under the following conditions:

(1) If a business entity formed as a sole proprietor, partnership, limited liability company, limited liability partnership, or corporation ("service provider") provides services to clients through a referral agency, the determination of whether the service provider is an employee of the referral agency shall be governed by Borello, if the referral agency demonstrates that all of the following criteria are satisfied:

(A) The service provider is free from the control and direction of the referral agency in connection with the performance of the work for the client, both as a matter of contract and in fact.

(B) If the work for the client is performed in a jurisdiction that requires the service provider to have a business license or business tax ~~registration,~~ *registration in order to provide the services under the contract,* the service provider has the required business license or business tax registration. *The referral agency may verify the validity of at least one license in a location where the service provider performs work a minimum of one time per calendar year. As used in this subparagraph:*

*(i) "Business license" includes a license, tax certificate, fee, or equivalent payment that is required or collected by a local jurisdiction annually, or on some other fixed cycle, as a condition of providing services in the local jurisdiction.*

*(ii) "Local jurisdiction" means a city, county, or city and county, including charter cities.*

(C) If the work for the client requires the service provider to hold a state contractor's license pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, the service provider has the required contractor's license.

*(D) If there is an applicable professional licensure, permit, certification, or registration available for the type of work being performed for the client, the service provider has the appropriate licensure, permit, certification, or registration.*

~~(D)~~

*(E)* The service provider delivers services to the client under the service provider's name, rather than under the name of the referral agency.

~~(E)~~

*(F)* The service provider provides its own tools and supplies to perform the services.

~~(F)~~

*(G)* The service provider is customarily engaged in an independently established business *or trade* of the same nature as that involved in the work performed for the client.

~~(G)~~

*(H)* The *referral agency does not restrict the* service provider ~~maintains~~ *from maintaining* a clientele ~~without any restrictions from the referral agency~~ and the service provider is free to seek work elsewhere, including through a competing agency.

~~(H)~~

(I) The service provider sets ~~its~~ their own ~~hours~~ hours, rates, and terms of ~~work and is free to accept or reject clients and contracts.~~ work, or the service provider negotiates their own hours, rates, and terms of work directly with the client, without deduction by the referral agency.

~~(I)The service provider sets its own rates for services performed, without deduction by the referral agency.~~

(J) The service provider is ~~not~~ free to accept or reject clients, rates set by the client, and contracts, without being penalized in any form for rejecting ~~clients~~ clients, rates set by the client, or contracts. This subparagraph does not apply if the service provider accepts a client or contract and then fails to fulfill any of its contractual obligations.

(2) For purposes of this subdivision, the following definitions apply:

(A) "Animal services" means services related to daytime and nighttime pet care including pet boarding under Section 122380 of the Health and Safety Code.

(B) "Client" means a person or business that ~~engages a service contractor through a referral agency.~~ utilizes a referral agency to contract for services that are not otherwise provided on a regular basis by employees at their business location.

(C) (i) "Referral agency" is a business that ~~connects~~ provides clients with ~~service providers~~ referrals for businesses that provide ~~graphic design, photography, tutoring, event planning, minor home repair, moving, home cleaning, errands, furniture assembly, animal services, dog walking, dog grooming, web design, picture hanging, pool cleaning, or yard cleanup.~~ services under a contract.

(ii) Under this subparagraph, referrals for services may include, but are not limited to, graphic design, photography, tutoring, youth sports coaching, event planning, minor home repair, moving, home cleaning, errands, furniture assembly, animal services, dog walking, dog grooming, web design, picture hanging, pool cleaning, yard cleanup, or interpreting and translating services by a service provider certified in a language with an available certification through the Registry of Interpreters for the Deaf, National Association of the Deaf, Certification Commission for Healthcare Interpreters, National Board of Certification for Medical Interpreters, International Association of Conference Interpreters, American Translators Association, Judicial Council of California, State Personnel Board or any other agency or department in the State of California, United States Department of State, or a federal court.

(iii) Under this subparagraph, referrals for services do not include services provided in an industry designated by the Division of Occupational Safety and Health or the Department of Industrial Relations as a high hazard industry pursuant to subparagraph (A) of paragraph (3) of subdivision (e) of Section 6401.7 of the Labor Code or referrals for businesses that provide janitorial, delivery, courier, transportation, trucking, agricultural labor, retail, logging, home care, or construction services other than minor home repair.

(D) (i) "Referral agency contract" is the agency's contract with clients and service ~~contractors~~ providers governing the use of its intermediary services described in subparagraph (C). The intermediary services provided to the service provider by the agency are limited to client referrals and other administrative services ancillary to the service provider's business operation.

(ii) A referral agency's contract with a client may include a fee or fees to be paid by the client for utilizing the referral agency. This fee shall not be deducted from the rate set or negotiated by the service provider as set forth in subparagraph (I) of paragraph (1).

(E) "Service provider" means a person or business who agrees to the referral agency's contract and uses the referral agency to connect with clients.

(F) "Tutor" means a person who develops and teaches their own ~~curriculum.~~ curriculum, teaches curriculum that is proprietorial and privately developed, or provides private instruction or supplemental academic enrichment services by using their own teaching methodology or techniques. A "tutor" does not include a person who teaches a curriculum created by a ~~public school~~ local education agency or who contracts with a ~~public school~~ local education agency through a referral company for purposes of teaching students of a public school.

(G) "Youth sports coaching" means services provided by a sports coach who develops and implements their own curriculum, which may be subject to requirements of a youth sports league, for an athletic program in which youth who are 18 years of age or younger predominantly participate and that is organized for the purposes of training for and engaging in athletic activity and competition. "Youth sports coaching" does not mean services provided by an individual who teaches a curriculum created by a local education agency or who contracts with a local education agency through a referral company for purposes of teaching students of a public school.

(3) ~~This subdivision does not apply to an individual worker, as opposed to a business entity, who performs services for a client through a referral agency.~~ The determination of whether ~~such~~ an individual worker is an employee of a ~~referral agency~~ service provider or whether an individual worker is an employer of a client is governed by subdivision (a).

(j) Subdivision (a) and the holding in Dynamex do not apply to the relationship between a motor club holding a certificate of authority issued pursuant to Chapter 2 (commencing with Section 12160) of Part 5 of Division 2 of the Insurance Code and an individual performing services pursuant to a contract between the motor club and a third party to provide motor club services utilizing the employees and vehicles of the third party and, instead, the determination of whether such an individual is an employee of the motor club shall be governed by Borello, if the motor club demonstrates that the third party is a separate and independent business from the motor club.

(k) (1) Subdivision (a) does not constitute a change in, but is declaratory of, existing law with regard to wage orders of the Industrial Welfare Commission and violations of this code relating to wage orders.

(2) Insofar as the application of subdivisions (b), (c), (d), (e), (f), (g), (h), (i), and (j) would relieve an employer from liability, those subdivisions shall apply retroactively to existing claims and actions to the maximum extent permitted by law.

(3) Except as provided in paragraphs (1) and (2), this section shall apply to work performed on or after January 1, 2020.

(l) In addition to any other remedies available, an action for injunctive relief to prevent the continued misclassification of employees as independent contractors may be prosecuted against the putative employer in a court of competent jurisdiction by the Attorney ~~General~~ *General, by a district attorney,* or by a city attorney of a city having a population in excess of 750,000, or by a city attorney in a city and county or, with the consent of the district attorney, by a city prosecutor in a city having a full-time city prosecutor in the name of the people of the State of California upon their own complaint or upon the complaint of a board, officer, person, corporation, or association.

**SEC. 2.** This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the California Constitution and shall go into immediate effect. The facts constituting the necessity are:

In order to ensure businesses and workers have immediate clarity on the specific standards used to determine an individual's employment classification working in the professions impacted by this legislation, including musicians, various professionals in the music recording industry, writers, photographers, videographers, photo editors, and illustrators, and others, it is necessary for this act to take effect immediately.