THE TIDRICK LAW FIRM LLP
STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 788-5100
Facsimile: (510) 291-3226
E-mail: sgt@tidricklaw.com
E-mail: jby@tidricklaw.com

Attorneys for Individual and Representative
Plaintiff MELANIE SPORTSMAN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELANIE SPORTSMAN, | Case No. 3:19-cv-03053-WHO |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| A PLACE FOR ROVER, INC. d/b/a Rover *et al.*, | Date: March 31, 2021 |
| Defendants. | Time: 2:00 p.m. |
| | Location: Courtroom 2 – 17th floor |
| | San Francisco Courthouse |
| | 450 Golden Gate Avenue |
| | San Francisco, California |
| | Judge: The Honorable William H. Orrick |

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................. 1

II.     RELEVANT PROCEDURAL HISTORY ........................................... 1

III.    FACTS ............................................................................................. 2

IV.     ARGUMENT .................................................................................... 2

        A. Legal Standard ........................................................................ 2

        B. Rover Is Not Entitled to Summary Judgment That It Is Exempt from the
           *Dynamex* ABC Test Pursuant to the Referral Agency Exemption ............... 3

                1.  Rover Has Not Shown That Sportsman Provided Pet Care
                    Services as a Sole Proprietor or as Part of a Business Entity ......... 3

                2.  No Showing That Sportsman Delivered Services Under Her Own
                    Name Without Being Required to Do So Under Rover's Name .... 4

                3.  No Showing Regarding Engagement in an Independently
                    Established Business or Trade ........................................................ 6

                        a)  Rover Has Not Shown that Sportsman Was Engaged in an
                            Independently Established Pet Care Business ....................... 6

                        b)  Rover's Authorities Support Plaintiff's Position that She
                            Did Not Operate Her Own Pet Care Business ....................... 6

                4.  Rover Cannot Prove a Lack of "Deduction" by Rover ................... 10

                5.  Rover Cannot Prove a Lack of Penalty for Rejecting Clients ........ 12

                6.  Senator Jerry Hill's Comment Does Not Help Rover's
                    Position ......................................................................................... 13

        C. Rover Is Not Entitled to Summary Judgment That It Satisfies the
           *Dynamex* ABC Test ............................................................................... 15

        D. Rover Is Not Entitled to Summary Judgment That Plaintiff Was an
           Independent Contractor Under the *Borello* Test ..................................... 15

V.      ROVER'S EVIDENCE REGARDING FORMER PLAINTIFF ERIKA
        MILLER IS IRRELEVANT ............................................................... 18

VI.     THE COURT SHOULD DISREGARD THE DECISION OF WASHINGTON
        STATE'S BOARD OF INDUSTRIAL INSURANCE APPEALS ................. 19

VII.    CONCLUSION ................................................................................... 19

i

# TABLE OF AUTHORITIES

**CASES**                                                                                        **PAGE(S)**

*Air Couriers Int'l v. Employment Dev. Dep't.*,
150 Cal. App. 4th 923 (2007) ................................................................ 17

*Alexander v. FedEx Ground Package Sys., Inc.*,
765 F.3d 981 (9th Cir.2014) ................................................................ 2

*Ayala v. Antelope Valley Newspapers, Inc.*,
59 Cal. 4th 522 (2014) ................................................................ 16

*Beaumont–Jacques v. Farmers Group, Inc.*,
217 Cal. App. 4th 1138 (2013) ................................................................ 16

*Boise Cascade Corp. v. U.S. E.P.A.*,
942 F.2d 1427 (9th Cir. 1991) ................................................................ 11

*Brinker Rest. Corp. v. Super. Ct.*,
53 Cal. 4th 1004 (2012) ................................................................ 12

*Cheever v. Huawei Device USA, Inc.*,
2019 WL 8883942 (N.D. Cal. Dec. 4, 2019) ................................................................ 19

*Clark Cty. v. McManus*,
185 Wash. 2d 466 (2016) ................................................................ 19

*Connecticut Nat. Bank v. Germain*,
503 U.S. 249 (1992) ................................................................ 13

*Cotter v. Lyft, Inc.*,
60 F. Supp. 3d 1067 (N.D. Cal. 2015) ................................................................ 15

*Dynamex Operations West Inc. v. Superior Court*,
4 Cal. 5th 903 (2018) ................................................................ *passim*

*Estate of Saunders v. Comm'r*,
745 F.3d 953 (9th Cir. 2014) ................................................................ 19

*Flowers v. Los Angeles Cty. Metro. Transp. Auth.*,
243 Cal. App. 4th 66 (2015) ................................................................ 12

*Garcia v. Border Transp. Grp.*, LLC,
28 Cal. App. 5th 558 (2018) ................................................................ *passim*

*Gauntlett v. Illinois Union Ins. Co.*,
2012 WL 4051218 (N.D. Cal. Sept. 13, 2012) ................................................................ 2

*Harris v. Vector Marketing Corp.*,
656 F. Supp. 2d 1128 (N.D. Cal. 2009) ................................................................ 17

*Hennighan v. Insphere Ins. Sols., Inc.*,
38 F. Supp. 3d 1083 (N.D. Cal. 2014) ................................................................ 9, 17

ii

*In re Bargain Busters, Inc.*,
287 A.2d 554 (Vt. 1972) ............................................................................ 7

*In re Hotaling's Est.*,
74 Cal. App. 2d 898 (1946) ........................................................................ 11

*J.A. Jones Constr. Co. v. Superior Ct.*,
27 Cal. App. 4th 1568 (1994) ................................................................ 14, 15

*Johnson v. Dunnahoe*,
2012 WL 1424171 (E.D. Cal. Apr. 24, 2012) ........................................... 18

*JKH Enterprises, Inc. v. Dep. of Indus. Relations*,
142 Cal. App. 4th 1046 (2006) .................................................................. 17

*JSF Promotions, Inc. v. Administrator*,
828 A.2d 609 (2003) .................................................................................... 7

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019) ............................................................................... 15

*Lawson v. Grubhub, Inc.*,
302 F. Supp. 3d 1071 (N.D. Cal. 2018) ............................................... 8, 9, 16

*Lawson v. Grubhub, Inc.*,
2018 WL 6190316 (N.D. Cal. Nov. 28, 2018) ............................................. 9

*Lazaro v. Lomarey Inc.*,
2012 WL 566340 (N.D. Cal. Feb. 21, 2012) ............................................. 12

*LePage v. City of Oakland*,
13 Cal. App. 3d 689 (1970) ........................................................................ 12

*Liday v. Sim*,
40 Cal. App. 5th 359 (2019) ...................................................................... 12

*McGuire v. Dept. of Employment Security*,
768 P.2d 985 (Utah Ct. App. 1989) ............................................................. 7

*Midwest Property Recovery, Inc. v. Job Service of North Dakota*,
475 N.W.2d 918 (N.D. 1991) ....................................................................... 7

*Narayan v. EGL, Inc.*,
616 F.3d 895 (9th Cir. 2010) ....................................................................... 2

*O'Connor v. Uber Technologies, Inc.*,
82 F. Supp. 3d 1133 (N.D. Cal. 2015) ................................................ *passim*

*People v. Hubbard*,
63 Cal. 4th 378 (2016) ............................................................................... 13

*Providence Washington Ins. Co. v. Valley Forge Ins. Co.*,
42 Cal. App. 4th 1194 (1996) ...................................................................... 3

iii

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
*Sportsman v. A Place for Rover, Inc. et al.*, Case No. 3:19-cv-03053-WHO

*People v. Hubbard*,
63 Cal. 4th 378 (2016) .......................................................................................... 13

*Romo v. Dep't of Lab. & Indus.*,
92 Wash. App. 348 (1998) ..................................................................................... 19

*S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*,
48 Cal. 3d 341 (1989) ...................................................................................... *passim*

*Siskiyou Cty. Farm Bureau v. Dep't of Fish & Wildlife*,
237 Cal. App. 4th 411 (2015) ............................................................................... 13

*United States v. Gonzales*,
520 U.S. 1 (1997) ................................................................................................... 13

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
945 F.3d 206 (5th Cir. 2019) ................................................................................ 15

*Walmer v. Dep't of Lab. & Indus.*,
78 Wash. App. 162 (1995) ..................................................................................... 19


STATUTES AND REGULATIONS

A.B. 5, Ch. 296, 2019–2020 Reg. Sess. (Cal. 2019) ........................................... 14

A.B. 2257, 2020 Cal. Legis. Serv. Ch. 38 ........................................................... 14

Cal. Labor Code § 2777 ..................................................................................... *passim*


RULES

Fed. R. Civ. P. 56(d) ............................................................................................. 14


MISCELLANEOUS

Note, *Why Learned Hand Would Never Consult Legislative History Today*,
105 HARV. L. REV. 1005 (1992) ........................................................................... 14

# I.    INTRODUCTION

Plaintiff Melanie Sportsman ("Plaintiff" or "Sportsman") opposes Defendant A Place For Rover, Inc. d/b/a Rover ("Defendant" or "Rover")'s motion for summary judgment (ECF No. 65). For the reasons set forth below, the Court should rule that Rover does not qualify for the "referral agency" exemption of Labor Code § 2777 because Rover cannot prove that all of the statutory criteria for the exemption are satisfied. Moreover, for the reasons set forth below and in Plaintiff's motion for summary judgment (ECF No. 66), the Court should deny Rover's motion for summary judgment in its entirety, and should also rule that under the *Dynamex* ABC Test, Rover misclassified Sportsman because Rover cannot establish prong B ("that the worker performs work that is outside the usual course of the hiring entity's business") and/or prong C ("that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity"). *See Dynamex Operations W. v. Super. Ct.*, 4 Cal. 5th 903, 917 (2018) (the *Dynamex* ABC Test).

# II.    RELEVANT PROCEDURAL HISTORY

On May 12, 2020, the Court ordered, *inter alia*, that: (1) "Melanie Sportsman is added to the complaint in this action as a PAGA representative plaintiff" and that "Erika Miller is removed from this action as a plaintiff" *see* Stipulation and Order Regarding Substitution, ECF No. 58, at ECF page 2:23-25; and (2) "Counsel agree to focus discovery on the dispositive classification issue with a discovery cutoff of December 31, 2020. Any motion for summary judgment/adjudication shall be heard by the end of March, 2021." *See* Civil Minutes of May 12, 2020 (ECF No. 57). The parties agreed that the issue for summary judgment would be limited to whether the named plaintiff, Melanie Sportsman, was misclassified, and understood that this agreement had been so ordered by the Court. Indeed, at the case management conference on May 12, 2020, the Court confirmed that "the discovery cutoff for the end of this year is discovery related to misclassification and not encompassing any kind of class-wide discovery." *See* Supp. Dec. of Steven Tidrick ("Supp. Tidrick Dec."), filed herewith, Ex. 48 (transcript of May 12, 2020 case management conference), at page 5:10-13. Rover's counsel confirmed the parties' agreement and understanding of the Court's order

when Rover's counsel stated on September 21, 2020 that "the Court's order only implicates the named plaintiff's claims . . . ." *See* Joint Letter, ECF No. 59, at ECF page 5.

On February 24, 2021, both sides filed motions for summary judgment and/or for partial summary judgment. Plaintiff hereby incorporates by reference her motion (ECF No. 66) and supporting evidence (ECF Nos. 66-1 and 66-2).

## III.    FACTS

Plaintiff incorporates by reference the discussion of the facts set forth in her motion for summary judgment, ECF No. 66, at ECF pages 7 through 23. That discussion shows that Plaintiff disputes many of Rover's purported "undisputed material facts," including without limitation several that are discussed specifically below.

## IV.    ARGUMENT

### A.    Legal Standard

Summary judgment may be granted in favor of Rover only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *O'Connor v. Uber Techs., Inc.*, 82 F. Supp. 3d 1133, 1138 (N.D. Cal. 2015) (quoting *Alexander v. FedEx Ground Package Sys., Inc.,*765 F.3d 981, 987 (9th Cir.2014)). "A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable [factfinder], viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor." *Gauntlett v. Illinois Union Ins. Co.*, 2012 WL 4051218, *5 (N.D. Cal. Sept. 13, 2012). More specifically, Rover "is entitled to summary judgment only if, viewing the evidence in the light most favorable to the [Plaintiff], this Court necessarily must conclude that [Plaintiff is an] independent contractor[] as a matter of law." *O'Connor*, 82 F. Supp. 3d at 1138 (quoting *Alexander*, 765 F.3d at 988).

"[U]nder California law, once a plaintiff comes forward with evidence that he provided services for an employer, the employee has established a prima facie case that the relationship was one of employer/employee." *Narayan v. EGL, Inc.*, 616 F.3d 895, 900 (9th Cir. 2010). "Once the employee establishes a prima facie case, the burden shifts to the employer, which may prove, if it can, that the presumed employee was an independent contractor." *Id.*; *see also Dynamex*, 4

2

Cal. 5th at 957 (discussing "the burden on the hiring entity to establish that the worker is an independent contractor"); *O'Connor*, 82 F. Supp. 3d at 1143 ("Although the Court's conclusion based on the record facts likely stand on logic and common sense alone, the case law makes abundantly clear that the drivers are Uber's presumptive employees.").

**B.      Rover Is Not Entitled to Summary Judgment That It Is Exempt from the**
***Dynamex* ABC Test Pursuant to the Referral Agency Exemption**

Rover is not entitled to summary judgment that it is exempt from the *Dynamex* ABC Test under the referral agency exemption set forth in California Labor Code § 2777. Section 2777 specifies an entity claiming to be a "referral agency" has the burden of demonstrating that numerous criteria are satisfied. *See* Labor Code § 2777(a) (stating in relevant part, "if the referral agency demonstrates that all of the following criteria are satisfied"). Rover has not carried that burden, and cannot do so, for several reasons discussed below.

**1.      Rover Has Not Shown That Sportsman Provided Pet Care Services**
**as a Sole Proprietor or as Part of a Business Entity**

To qualify for the referral agency exemption, Rover must first establish that Sportsman was operating a pet care services business as a sole proprietor or a business entity formed as a partnership, limited liability company, limited liability partnership, or corporation. *See* Cal. Labor Code § 2777(a). Rover has failed to establish this, and cannot do so, for the following reasons.

First, "[a] sole proprietorship is *not* a legal entity itself. Rather, the term refers to a natural person who *directly* owns the business . . . ." *Providence Washington Ins. Co. v. Valley Forge Ins. Co.*, 42 Cal. App. 4th 1194, 1199 (1996) (emphasis in original). Furthermore, according to the California Secretary of State, "to establish a sole proprietorship" one must: "Choose a business name, for tax purposes, even if it's your name" and "Obtain licenses, permits, and zoning clearance." *See* Supp. Tidrick Dec., Ex. 49.

Rover has not proffered any evidence that Sportsman started and operated a pet care business and/or owned a pet care business or assets associated with a pet care business. Rather, Sportsman: (1) testified that she intended to be an employee of Rover*, see* Transcript of Deposition of Melanie Sportsman, Sept. 29, 2020, at 28:6-17 (ECF No. 67-2 at ECF page 13);

3

and (2) attested that she never: (a) provided pet care services as a sole proprietor, established a sole proprietorship, chose a business name for any purpose, obtained any license, permit, or zoning clearance; and/or (b) owned a pet care business or assets associated with a pet care business. *See* Sportsman Dec. (ECF No. 66-1) ¶ 5; Supp. Dec. of Melanie Sportsman, filed herewith ("Supp. Sportsman Dec.") ¶ 3. Therefore, Sportsman never acted as a sole proprietor.

Second, Rover has not proffered any evidence that Sportsman formed and/or operated a business entity formed as a partnership, limited liability company, limited liability partnership, or corporation. Rover cannot do so because in fact Sportsman never provided pet care services as part of a business entity formed as a partnership, limited liability company, limited liability partnership, or corporation. *See* Sportsman Dec. (ECF No. 66-1) ¶ 5.

Accordingly, Rover cannot qualify for the referral agency exemption because it has not shown, and cannot show, that Sportsman provided pet care services as a sole proprietor or as a partnership, limited liability company, limited liability partnership, or corporation.

### 2. No Showing That Sportsman Delivered Services Under Her Own Name Without Being Required to Do So Under Rover's Name

Rover has not shown that Sportsman delivered services to Pet Owners under her own service provider name, without being required to deliver the services under the name of the referral agency. Such a showing is among the numerous requirements for Rover to qualify for the referral agency exemption. *See* Cal. Labor Code § 2777(a)(5) (requiring that "[t]he service provider delivers services to the client under the service provider's name, without being required to deliver the services under the name of the referral agency"). Sportsman has attested:

> In order to provide Pet Care Services, Defendant required that I "create" a "Rover profile" to be displayed on Defendant's website and mobile app. I say "create" in quotes because Defendant strictly controlled what appeared, and what could not appear, on my Rover profile; my role was simply to provide a photograph and certain required information, and then Defendant created and maintained my profile. Defendant dictated that my Rover profile would include a photograph of myself and identify me only by my first name and last initial. Defendant did not allow me to choose whether I would include my last name or list my phone number or e-mail address. I did not have my own business, but if I did, I would not have been allowed to list any business name. Defendant dictated that my Rover profile would lead with a photograph of me, followed by my first name and last initial, my location ("Hoover, Fresno, CA"), my "star" rating as calculated by Defendant (which was 5 stars), my "Response Rate" as calculated by Defendant (which was 100%), and my "Response

4

1        Time" as calculated by Defendant (which was "a few minutes"). Below that section,

2 the various categories that followed were all dictated by Defendant.

3 *See* Sportsman Dec. (ECF No. 66-1) ¶ 10. Moreover, Rover dictated that Sportsman's Rover

4 profile literally be under the name of Rover, as shown below:



**DEREK CHANG**

**EXHIBIT 4**

12 - 18 - 2020

Rover services may be impacted in your area due to COVID–19. Go here for information on those regulations.

**Melanie S.**

Hoover, Fresno, CA

★★★★★(19)

💬 Response Rate: **100%**

🕐 Response Time: **a few minutes**

21 *See* Tidrick Decl. Ex. 4 (ECF No. 66-2 at ECF page 65 of 233). *See also* Supp. Sportsman Dec.

22 ¶ 4 (attesting that "I did not deliver pet care services under my name. Rover did not allow me to

23 be identified by my actual full name in its "Rover profile" about me on Rover's website and

24 mobile app. Rover required that the Rover profile include the Rover name and logo at the top, and

25 below that, a photo of me, and below that, my first name and last initial. When pet owners

26 purchased pet care services through the Rover website or app, Rover required that I deliver those

27 services under the name Rover, and required that the pet owners pay Rover, not me. Rover

28 charged the credit cards of the pet owners using Rover's name, not mine.").

**3.     No Showing Regarding Engagement in an Independently**

**Established Business or Trade**

**a)     Rover Has Not Shown that Sportsman Was Engaged in an**

**Independently Established Pet Care Business**

Rover has not shown, and cannot show, that Sportsman was "customarily engaged, or was previously engaged, in an independently established business or trade of the same nature as, or related to, the work performed for the client." Such a showing is among the numerous requirements for Rover to qualify for the referral agency exemption. *See* Cal. Labor Code § 2777(a)(5) (requiring that "[t]he service provider is customarily engaged, or was previously engaged, in an independently established business or trade of the same nature as, or related to, the work performed for the client"). That requirement is substantively equivalent to part C of the *Dynamex* ABC Test, *i.e.*, the requirement that the defendant prove "that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity." *Dynamex Operations W. v. Super. Ct.*, 4 Cal. 5th 903, 917 (2018) ("*Dynamex*"). The California Court of Appeal has interpreted that requirement as follows:

> Part C asks whether the worker "*independently* has made the decision to go into business for himself or herself." (*Dynamex, supra,* 4 Cal.5th at p. 962, 232 Cal.Rptr.3d 1, 416 P.3d 1.) This factor can be proven with evidence that the worker has "take[n] the usual steps to establish and promote his or her independent business—for example, through incorporation, licensure, advertisements, routine offerings to provide the services of the independent business to the public or to a number of potential customers, and the like." (*Ibid.*) Critically, as we will discuss, this part requires that the worker *is engaged* in an independent business, not that he or she could have become so engaged. (Id. at p. 962 & fn. 30.)

*Garcia v. Border Transp. Grp., LLC*, 28 Cal. App. 5th 558, 570 (2018) (quoting *Dynamex*) (emphasis in original). The Court of Appeal further stated:

> "When a worker has not independently decided to engage in an independently established business but instead is simply designated an independent contractor by the unilateral action of a hiring entity, there is a substantial risk that the hiring business is attempting to evade the demands of an applicable wage order through misclassification." (*Id.* at p. 962, 232 Cal.Rptr.3d 1, 416 P.3d 1.)

*Garcia*, 28 Cal. App. 5th at 570 (quoting *Dynamex*). The Court of Appeal further stated:

> Key for our purposes, *Dynamex* makes clear that the question in part C is *not* whether BTG *prohibited* or *prevented* Garcia from engaging in an independently established business. (*Dynamex, supra,* 4 Cal.5th at p. 962, 232 Cal.Rptr.3d 1, 416 P.3d 1 ["[t]he fact

6

that a company has not prohibited or prevented a worker from engaging in such a business is not sufficient"].) Instead, the inquiry is whether Garcia fits the common conception of an independent contractor—"an individual who *independently* has made the decision to go into business for himself or herself" and "generally takes the usual steps to establish and promote his or her independent business—for example, through incorporation, licensure, advertisements, routine offerings to provide services of the independent business to the public or to a number of potential customers, and the like."(*Ibid.*)

*Garcia*, 28 Cal. App. 5th at 572-73 (quoting *Dynamex*). The Court of Appeal further held that

"*Dynamex* makes clear that California . . . requires an ***existing, not potential***, showing of

independent business operation." *Garcia*, 28 Cal. App. 5th at 574 (emphasis added); *see also id.*

at 573 (discussing the California Supreme Court's citations to *McGuire v. Dept. of Employment*

*Security*, 768 P.2d 985, 988 (Utah Ct. App. 1989), *In re Bargain Busters, Inc.*, 287 A.2d 554, 559

(Vt. 1972), *Midwest Property Recovery, Inc. v. Job Service of North Dakota*, 475 N.W.2d 918,

924 (N.D. 1991), and *JSF Promotions, Inc. v. Administrator*, 828 A.2d 609, 613 (2003)).

Applying *Dynamex*, the Court of Appeal concluded that the defendants "did not meet their

burden to establish part C" and thus "summary adjudication [in favor of the defendants] is

inappropriate for Garcia's wage order claims." *Garcia*, 28 Cal. App. 5th at 575. The Court of

Appeal reasoned, *inter alia*:

> Under the more stringent part C framework adopted by the California Supreme Court in *Dynamex*, the result is obvious. *Dynamex* requires more than mere capability to engage in an independent business. Defendants presented no evidence in their moving papers that Garcia in fact provided services for other entities or otherwise established a business "independent" of his relationship with BTG.

*Garcia*, 28 Cal. App. 5th at 575.

So too here, Rover has presented no evidence that Sportsman in fact provided services for

other entities or otherwise established a business "independent" of her relationship with Rover. In

fact, Sportsman never took any steps to establish or promote an independent pet care services

business, such as: (1) incorporating a pet care services business entity; (2) obtaining any business

license for pet care services; (3) advertising to the general public regarding pet care services

generally; and/or (4) making offerings to the public or to potential customers to provide services

of an independent business. *See* Sportsman Dec. (ECF No. 66-1) ¶ 5.

Rover asserts that "Plaintiff provided dog services before joining Rover, and she marketed

herself as having 35 years of experience." *See* ECF No. 65 at ECF pages 21:28-22:1. But the

evidence that Rover cites ***does not*** show that Plaintiff was ever engaged in an "independently established business or trade" providing pet care services. Sportsman's deposition testimony shows that outside of Rover, her only experience caring for pets consisted of a "favor" to her family that included "taking care of their animals while they were gone" and experience with her own pets while growing up in her "personal life," not as a business or for money. *See* LeCrone Dec. Ex. B (Sportsman deposition transcript) (ECF No. 67-2) at 32:10-33:11, 75:12-76:11. Furthermore, Sportsman attested that she never worked in any kind of animal care capacity either before or after working for Rover. *See* Sportsman Dec. (ECF No. 66-1) ¶ 12.

Based on the foregoing, it is clear that Sportsman was not customarily engaged, or was previously engaged, in an independently established business or trade of the same nature as, or related to, the work performed for the client.

**b)      Rover's Authorities Support Plaintiff's Position that She Did Not Operate Her Own Pet Care Business**

Rover has cited *Lawson v. Grubhub, Inc.*, 302 F. Supp. 3d 1071 (N.D. Cal. 2018) in support of its position that Plaintiff was properly classified. *See* ECF No. 65 at ECF page 18:12-20. In *Lawson*, the plaintiff worked as a restaurant delivery driver and asserted that he had been misclassified as independent contractor. *See Lawson*, 302 F. Supp. 3d at 1072. The court examined whether a Grubhub delivery driver engaged in a distinct occupation or business, and found:

> This factor weighs in favor of an employment rather than independent contractor relationship. ***Mr. Lawson was not engaged in a distinct occupation or business. He did not run a delivery business of which Grubhub was simply one client.*** *See Jones*, 866 F.3d at 1107 (when a worker "ha[s] many different clients and offer[s] [the same] services to others during the same period," those facts are consistent with an independent contractor relationship) (internal quotation marks and citation omitted).

*Lawson*, 302 F. Supp. 3d at 1088-89 (emphasis added).[1] Although the court found that the

---

[1] *Lawson* was decided under California's common law test established in *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989). Although Part C of the *Dynamex* ABC test has language similar to *Borello*, the *Dynamex* ABC test is much more restrictive than *Borello* as *Dynamex* prong C requires the hiring entity to prove that the worker has taken "steps to establish and promote his or her independent business." *Garcia*, 28 Cal. App. 5th at 572.

plaintiff was not an employee under the common law test established in *S. G. Borello & Sons, Inc.*, the court later indicated that the result could have been different under the *Dynamex* ABC test. *See Lawson v. Grubhub, Inc.*, 2018 WL 6190316, at *7 (N.D. Cal. Nov. 28, 2018) ("Should the *Dynamex* ABC test apply retroactively to this case, this factor—the closeness of the new law and the old—strongly weighs in favor of vacating the judgment, at least as to the wage order claims. Given the Court's findings following trial, the verdict could be different under the ABC test.").

This Court's decision in *Hennighan v. Insphere Ins. Sols., Inc.*, 38 F. Supp. 3d 1083 (N.D. Cal. 2014) also supports Plaintiff's position. In that case, this Court analyzed whether the plaintiff, an insurance salesman, was misclassified as an independent contractor. The Court applied the *Borello* test and held that plaintiff was engaged in a distinct occupation or business because, *inter alia*: (1) the work performed by plaintiff required state licenses; and (2) plaintiff sold insurance for other companies. *See id.* at 1102 ("Hennighan was engaged in insurance sales, which required state licenses. This requirement suggests a distinct occupation. Furthermore, Hennighan was affiliated with and sold insurance for other companies, including a separate insurance agency, First Authority Insurance. The fact that Hennighan sold insurance on behalf of other companies supports his classification as an independent contractor.").

In contrast, here the Plaintiff did not take any steps to establish or promote an independent pet care business. *See* Sportsman Dec. (ECF No. 66-1) ¶ 5. Moreover, unlike the insurance salesman in *Hennighan* who "continued selling insurance" after he stopped working for the defendant, *see Hennighan*, 38 F. Supp. 3d at 1103, Sportsman never worked in any kind of animal care capacity other than when she worked for Rover. *See* Sportsman Dec. (ECF No. 66-1) ¶ 12. Finally, unlike the insurance salesman in *Hennighan* who while working for the defendant also "sold insurance products outside of" his work for the defendant, *see Hennighan*, 38 F. Supp. 3d at 1103, Sportsman has ***never*** provided pet care services for compensation outside of her work for Rover. *See* Sportsman Dec. (ECF No. 66-1) ¶ 5.

//

9

### 4.       Rover Cannot Prove a Lack of "Deduction" by Rover

To qualify for the referral agency exemption, Rover must show that Sportsman set her own rates "[w]ithout deduction by the referral agency." *See* Cal. Labor Code § 2777(a)(10) (requiring that "*[w]ithout deduction by the referral agency*, the service provider sets their own rates, negotiates their rates with the client through the referral agency, negotiates rates directly with the client, or is free to accept or reject rates set by the client.") (emphasis added). Rover cannot satisfy this requirement for the reasons set forth below.

<u>First</u>, Sportsman has shown that Rover maintains a practice of deducting a service fee from the rate that the Pet Owner agrees to pay to the Pet Care Provider. *See* ECF No. 66, at ECF page 9:5-12 and ECF page 18:10-19:6; Sportsman Dec. (ECF No. 66-1) ¶¶ 6-9 & Exs. A, B.

<u>Second</u>, the evidence that Rover has proffered is consistent with Plaintiff's showing. Rover implicitly acknowledges that when Rover's witness states that "the list prices that appear on the Pet Care Provider's profile includes two fees wrapped in one amount: (1) the rate that the Pet Care Provider *receives* for each booked service; and (2) the 20% service fee that the Pet Care Provider pays to Rover for his/her use of the Rover platform." *See* White Dec. (ECF No. 68) at ¶ 18 (emphasis added) (citing Ex. Y at ¶ 9.0 and Ex. Z at ¶ 10). Critical in that statement is the word "receives." In other words, the rate that the Pet Care Provider *receives* is *20% less* than the rate that the Pet Care Provider specifies on the Rover website and mobile app, and which the Pet Owner agrees to when booking through Rover's website or mobile app. Indeed, the evidence that Rover cites specifically states that the service fee is deducted from the rate that the "Pet Owner agrees to pay you" (where "you" refers to the Pet Care Provider):

> If you are a Service Provider, except where otherwise specified via the Rover Service, our service fee is calculated as a percentage of the fees a Pet Owner agrees to pay to *you* in a Booking and is *collected* from each Booking.

White Dec. at Ex. Y (ECF No. 68-1) at ECF page 8, ¶ 9.4 (emphasis added).

> If you are a Service Provider, our service fee is calculated as a percentage of the fees a Pet Owner agrees to pay to you in a Booking. We *deduct* this service fee from the amounts paid by the Pet Owner.

White Dec. at Ex. Z (ECF No. 68-2) at ECF page 8, ¶ 10.3 (emphasis added). Rover's practice of deducting a service fee from the rate that the Pet Owner agrees to pay the Pet Care Provider was

also confirmed by Rover's Rule 30(b)(6) witness, who testified as follows:

> Q. So Rover deducts 20 percent and transmits the other 80 percent to the dog care provider; is that correct?
> A. That's correct.

*See* Rover Depo. (ECF No. 66-2 at ECF page 19) at 38:25-39:3. Rover's evidence confirms that Rover deducts from the rates set by Pet Care Providers, including Sportsman. *See* Def.'s Motion for Summary Judgment (ECF No. 65), at ECF page 23:15-24:6 (citing evidence); White Dec. (ECF No. 68) ¶¶ 18-19 & Ex. FF.

Third, Rover characterizes its evidence as showing that there is no deduction on the reasoning that Pet Care Providers can inflate their rates so that after the deduction, they will receive their desired net rate. *See* Def.'s Motion for Summary Judgment (ECF No. 65), at ECF page 23:15-24:6 (citing evidence); White Dec. (ECF No. 68) ¶¶ 18-19 & Ex. FF. However, Rover's position would render the phrase "without deduction" meaningless. *See Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991) ("Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless."); *In re Hotaling's Est.*, 74 Cal. App. 2d 898, 901 (1946) (where a will directed payment of bequests "without deduction," rejecting an interpretation that "denies to this last phrase its full operative effect"). According to Rover's construction of the statute, there can be no "covert" or "undisclosed" deductions, but disclosed deductions are permissible. If the Legislature meant for the criterion to be met as long as there are no *undisclosed* deductions, it could have said so. If nevertheless the Court considers it relevant whether Rover disclosed the discounting, it bears noting that Sportsman was in fact unaware of the discounting until she saw that she was not receiving as much money as she had anticipated. *See* Sportsman Dec. (ECF No. 66-1), ¶ 7 & Ex. A.

Fourth, Rover's position would render meaningless the following phrase in the statute: "Without deduction by the referral agency, the service provider . . . is *free to accept* or reject *rates set by the client*." *See* Cal. Labor Code § 2777(a)(10) (emphasis added). According to Rover's construction of the statute, if a Pet Care Provider were to "accept" a rate proposed by a

pet owner, the Pet Care Provider would not receive that rate "without deduction"; rather, in order to receive the pet owner's proposed rate, the Pet Care Provider would need to counter-offer to inflate the rate by 20%. Thus, Rover's construction would render meaningless the terminology about the provider being "free to accept . . . rates set by the client" "without deduction."

Fifth, if there is any ambiguity in the meaning of "without deduction," the Court should favor an interpretation that protects workers. *See Flowers v. Los Angeles Cty. Metro. Transp. Auth.*, 243 Cal. App. 4th 66, 82 (2015) ("In light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.") (citing *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1026-27 (2012); *Liday v. Sim*, 40 Cal. App. 5th 359, 370 (2019) ("We liberally construe state wage and hour laws in favor of the legislative policy to protect workers."); *Lazaro v. Lomarey Inc.*, 2012 WL 566340, at *10 (N.D. Cal. Feb. 21, 2012) ("the statute should be interpreted liberally to promote the statutory purpose of protecting workers"); Labor Code § 90.5 (a) (declaring state policy to protect workers); *LePage v. City of Oakland*, 13 Cal. App. 3d 689, 695 (1970) (resolving any ambiguity in the phrase "without deduction" in favor of workers). Thus, the Court should favor an interpretation of the statute that would give Pet Care Providers the numerous rights and protections afforded to employees under California law.

### 5. Rover Cannot Prove a Lack of Penalty for Rejecting Clients

Rover asserts that Sportsman was free to accept or reject clients and contracts, without being penalized in any form by Rover and that therefore the criterion of Cal. Labor Code § 2777(a)(11) is satisfied (requiring that "[t]he service provider is free to accept or reject clients and contracts, without being penalized in any form by the referral agency."). *See* Def. Motion at ECF pages 14:1-10, 24:12-18. Rover's position lacks merit for the following reasons.

First, Sportsman has shown that if a Pet Care Provider rejects a client or prospective client during a time period when the Pet Care Provider's online calendar indicates that he or she is "available," Rover penalizes the Pet Care Provider with a lower performance score and thus a lower search rank, the consequence being a lower likelihood of earning money. *See* Plaintiff's

12

Motion (ECF No. 66) at ECF pages 16:24-17:4 (citing Rover Depo. at 169:24-170:15 & Ex. 13, Rover Depo. at 155:10-24, and Rover Depo. at 157:16-163:2; Tidrick Dec. Ex. 34 (ECF No. 66-2 at ECF pages 200-204); Sportsman Dec. (ECF No. 66-1) ¶ 11).

Second, Rover fails to proffer evidence showing a lack of penalization. Rover asserts that a Pet Care Provider can "decline" or "ignore" a booking request "without fear of discipline or termination." ECF No. 65 at ECF page 14:3-4. But Rover's evidence is silent on the impact on performance scores and search rankings.

### 6. Senator Jerry Hill's Comment Does Not Help Rover's Position

Former Senator Jerry Hill's comment about Rover does not help Rover's position. Rover has proffered a video of a California State Senate committee hearing on July 10, 2019 in which then-Senator Hill expressed the following personal opinion: "For companies like Taskrabbit and Rover, however, who do allow for true rate setting, I think they should be covered by AB5." *See* ECF No. 67-14 (Defendant's CD identified as Exhibit N) at 2:16:58-2:17:04. For several reasons, the Court should give that comment no weight.

First, Rover has identified no ambiguity in the statutory text to justify resort to the legislative history. *See United States v. Gonzales*, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history."); *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (internal quotations omitted); *People v. Hubbard*, 63 Cal. 4th 378, 386 (2016) ("Where the statutory text admits of more than one reasonable interpretation, we may consider various extrinsic aids— including the legislative history—to the extent they are helpful in illuminating that purpose.").

Second, even if the Court were to find that there is ambiguity in the statutory text, the Court should still give no weight to the quoted statement by then-Senator Hill, because the statement itself is vague, conclusory, and ambiguous. *See Siskiyou Cty. Farm Bureau v. Dep't of Fish & Wildlife*, 237 Cal. App. 4th 411, 439-40 (2015) ("Even assuming statutory ambiguity has been identified, we rely on the legislative history of an ambiguous statute as dispositive only when that history is itself unambiguous.") (internal quotations and brackets omitted). Assuming

13

that then-Senator Hill meant that Rover should be **exempted** from A.B. 5 (*i.e.*, "covered" by the § 2777 referral agency exemption), there is no indication that he was aware of any of the critical facts set forth herein relating to the numerous criteria of § 2777, or that he was aware of any of the evidence that Plaintiff has proffered relating to those criteria, or that he had analyzed whether Rover would be able to demonstrate that each criterion is satisfied.

<u>Third</u>, the lack of information about what exactly Senator Hill knew about Rover is especially significant because Rover paid significant amounts of money to lobby the Legislature not only regarding A.B. 5, but also regarding A.B. 2257, which was the legislation codified at Section 2777. *See* Supp. Tidrick Dec. ¶¶ 5-7 & Exs. 51-53. In discovery, Rover refused to produce documents relating to Rover's lobbying efforts. *See* Joint Letter, ECF No. 59, at ECF page 5 (Rover's statement that "documents relating to lobbying efforts . . . are not helpful tools for resolving the dispositive classification issue"). Such documents may shed light on what facts and/or materials Rover presented or withheld from then-Senator Jerry Hill. Accordingly, if the Court were inclined to grant summary judgment in favor of Rover on the basis of Senator Hill's comment, the Court should first allow time for Plaintiff to obtain discovery relating to Rover's lobbying efforts. *See* F.R.C.P. 56(d); Supp. Tidrick Dec. ¶ 8.

<u>Fourth</u>, the influence of Rover's lobbying efforts seriously compromises any value that Senator Hill's comment might otherwise have had. *See J.A. Jones Constr. Co. v. Superior Ct.*, 27 Cal. App. 4th 1568, 1577 (1994) (citing Note, *Why Learned Hand Would Never Consult Legislative History Today*, 105 HARV. L. REV. 1005, 1016-1017 (1992) and its argument that "lobbyists and legislators have gotten wise to the judiciary's use of legislative history and now try to shape it for results that could not have won majority support and therefore any use of legislative history is illegitimate") (internal quotations omitted); *see also id.* at 1578 ("courts can get it wrong when what they have before them is a motley collection of authors statements, committee reports, internal memoranda and lobbyist letters. . . . In light of these factors, the wisest course is to rely on legislative history only when that history itself is unambiguous.").

<u>Fifth</u>, the comment was made by only one legislator, and there is no indication that all of the members of the Legislature who ultimately voted to pass the legislation would have agreed

14

with that comment. *See J.A. Jones Constr. Co.*, 27 Cal. App. 4th at 1577 ("the idea that the diverse membership of a democratically elected legislature can ever have one collective "intent" on anything is a myth; if there is ambiguity it is because the legislature either could not agree on clearer language or because it made the deliberate choice to be ambiguous-in effect, the only "intent" is to pass the matter on to the courts").

Finally, if Rover attempts to argue on reply that its lobbying efforts show that the legislative purpose was to exempt it, the Court should reject any such argument. Lobbying efforts are not direct evidence of legislative purpose. *See Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 945 F.3d 206, 216 (5th Cir. 2019) ("The motivations and lobbying efforts of the TPSA are not direct evidence of legislative purpose."). Moreover, acceptance of such an argument would suggest a presumption that legislators intend to protect whatever corporate interests spent money on lobbying, and would perversely incentive lobbying. If Rover's lobbyists played any role in crafting the legislation, and if there is any ambiguity in the statute, then the Court should construe any ambiguity against Rover. *Cf. Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019) (discussing California's rule that ambiguity in a contract should be construed against the drafter, a doctrine known as *contra proferentem*).

## C. Rover Is Not Entitled to Summary Judgment That It Satisfies the *Dynamex* ABC Test

Plaintiff's motion for summary judgment demonstrates in detail that Rover is not entitled to summary judgment that it satisfies the *Dynamex* ABC Test. *See* ECF Nos. 66, 66-1 and 66-2.

## D. Rover Is Not Entitled to Summary Judgment That Plaintiff Was an Independent Contractor Under the *Borello* Test

If the Court finds that the *Borello* test applies, Rover would still not be entitled to summary judgment.

Under *Borello*, the "'most significant consideration' is the putative employer's 'right to control work details'" which "need not extend to every possible detail of the work." *O'Connor*, 82 F. Supp. 3d at 1138 (quoting *Borello*, 48 Cal. 3d at 350); *see also Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067, 1075 (N.D. Cal. 2015). In addition to the right of control, the *Borello* test also

15

considers "a number of 'secondary' indicia," including:

> (a) whether or not the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Borello*, 48 Cal. 3d at 350. These secondary indicia "cannot be applied mechanically as separate tests; they are intertwined and their weight depends on particular combinations." *Id*. at 351. No one *Borello* factor "is dispositive when analyzing employee/independent contractor status." *O'Connor*, 82 F. Supp. 3d at 1140.

If the *Borello* test applies, the record here clearly demonstrates that there are myriad issues of fact to be considered and weighed that preclude summary judgment here, especially where the facts and all inferences must be viewed in the light most favorable to Plaintiff. *See* ECF No. 66 at ECF pages 15-22 (section entitled "Defendant Exerts Significant Control Over the Pet Care Providers' Work") and evidence cited therein.

The California Supreme Court has held that, under the *Borello* common law test, "the strongest evidence of the right to control is whether the hirer can discharge the worker without cause, because the power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities." *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 532 (2014); *see also Alexander*, 765 F.3d at 988 ("The right to terminate at will, without cause, is strong evidence in support of an employment relationship."); *Lawson*, 302 F. Supp. 3d at 1087 (stating that "[t]he Court is . . . not persuaded that *Beaumont–Jacques v. Farmers Group, Inc*. . . . dictates that a mutual at-will termination provision weighs against an employer/employee relationship" and noting that "*Beaumont–Jacques* was decided before the California Supreme Court's decision in *Ayala*.") (discussing *Beaumont–Jacques v. Farmers Group, Inc.*, 217 Cal. App. 4th 1138 (2013)). Here, evidence in the record shows that Rover reserves the right to, and in fact does, terminate Pet Care Providers for "any" reason "or no reason at all." *See* ECF No. 66 at ECF page 16:2-4.

Moreover, flexibility in choosing when to work is not dispositive of employee status. Many employees have flexibility in their work hours, and it is not uncommon in the service industry for workers to have the opportunity to sign up for available shifts that work for their schedule (such as servers at hotels and restaurants). As the court in *O'Connor* pointed out, "freedom to choose one's days and hours of work . . . does not in itself preclude a finding of an employment relationship," because "[t]he more relevant inquiry is how much control Uber has over its drivers *while they are on duty* for Uber." *O'Connor*, 82 F. Supp. at 1152 (emphasis in original) (citing *Air Couriers Int'l v. Employment Dev. Dep't.*, 150 Cal. App. 4th 923, 926 (2007); *JKH Enterprises, Inc. v. Dep. of Indus. Relations*, 142 Cal. App. 4th 1046, 1051 (2006).

Several of the "secondary" *Borello* factors also favor a finding of an employer-employee relationship.

First, Plaintiff has proffered evidence that she was not engaged in a distinct occupation or business, so that factor favors a finding of an employment relationship. *See supra* Section IV.B.3 (pages 6-9); Plaintiff's Motion for Summary Judgment (ECF No. 66) at ECF pages 22-23; Sportsman Dec. (ECF No. 66-1) ¶¶ 5, 12; Supp. Sportsman Dec. ¶¶ 2-4.

Second, the lack of skill required also favors a finding of an employment relationship. "Where no special skill is required of a worker, that fact supports a conclusion that the worker is an employee instead of an independent contractor." *Hennighan*, 38 F. Supp. 3d at 1103 (citing *Harris v. Vector Marketing Corp.*, 656 F. Supp. 2d 1128, 1139 (N.D. Cal. 2009). Plaintiff has proffered evidence that the Pet Care Provider position does not require special skill. *See* ECF No. 66 at ECF page 22:6-13 (citing evidence). Rover asserts without evidence that it is a "widely recognized fact" that "years of experience" is "require[d]." ECF No. 65 at ECF page 26:8-9. Rover's assertion that Sportsman claimed "35 years" of experience does not mean that such experience was "required" or that any "special skill" was in fact required. Indeed, one can have many years of experience with something that does not require special skill.

Third, Plaintiff has proffered evidence that pet care services is part of the regular business of the principal (Rover), so this factor also favor a finding that Plaintiff was an employee. *See* ECF No. 66 at ECF pages 9-12 and 13-15 (sections entitled "Defendant Brands Itself as a Pet

17

Service Provider" and "Defendant Offers and Sells Pet Care Services and Related Products to Pet Owners") (citing evidence).

Fourth, Plaintiff has testified that she intended to be an employee, which also favors a finding that Plaintiff was an employee. *See* Transcript of Deposition of Melanie Sportsman, Sept. 29, 2020 (ECF No. 67-2, at ECF page 13), at 28:6-17.

Given Plaintiff's evidence of Rover's control, and most notably Rover's retention of the right to terminate Pet Care Providers in its discretion, the record certainly contains enough evidence of Rover's control over Pet Care Providers including Plaintiff to preclude an award of summary judgment to Rover on the question of employee status under *Borello*.

## V. ROVER'S EVIDENCE REGARDING FORMER PLAINTIFF ERIKA MILLER IS IRRELEVANT

Rover's evidence about the former named Plaintiff, Erika Miller, is not relevant. Miller was removed from this action as a plaintiff, and the issue for summary judgment is whether Melanie Sportsman was misclassified. *See supra* Section II. The Court cannot enter summary judgment against Miller because she is no longer a party. *See Johnson v. Dunnahoe*, 2012 WL 1424171, at *4 (E.D. Cal. Apr. 24, 2012) (holding that "[t]he Court cannot grant summary judgment against a non-party").

Notwithstanding the foregoing, Miller testified that she: (1) never incorporated a pet sitting or dog walking business entity; (2) never paid for any business license for pet sitting or dog walking; (3) never advertised to the general public regarding a pet sitting or dog walking business; and (4) never made any offerings to the public to provide services as an independent pet sitting or dog walking business. *See* Transcript of Erika Miller deposition, April 28, 2020 (ECF No. 67-1) at pages 89:17-90:11. Outside of her work for Rover, the only people for whom she ever provided any pet care services were her friends and neighbors as a "favor" and only sometimes for money. *Id*. at 25:6-26:4.

Based on the foregoing, it is clear that Miller was not customarily engaged, or previously engaged, in an independently established business or trade of the same nature as, or related to, the work performed for the client. *See Garcia*, 28 Cal. App. 5th at 572-73

18

**VI. THE COURT SHOULD DISREGARD THE DECISION OF WASHINGTON STATE'S BOARD OF INDUSTRIAL INSURANCE APPEALS**

In a footnote, Rover cites a split decision of the Board of Industrial Insurance Appeals of Washington State ("the Board"). *See* ECF No. 65 at ECF page 8 n.1. Rover's reliance on the Board's decision is misplaced. The Board's decision is not binding on this court. Even in the courts of Washington State, the Board's decision has zero value as precedent. "Decisions of the Board of Industrial Insurance Appeals are not precedential." *Romo v. Dep't of Lab. & Indus.*, 92 Wash. App. 348, 356 (1998) (citing *Walmer v. Dep't of Lab. & Indus.*, 78 Wash. App. 162, 167, *review denied*, 128 Wash. 2d 1003 (1995). Moreover, the Office of the Attorney General of the State of Washington has filed a notice of appeal. *See* Supp. Tidrick Dec. ¶ 9 & Ex. 54. The appeal will be heard and decided by the Washington State Superior Court, after which either side has the right to appeal its decision to the Washington State Court of Appeals, after which either side may petition the Supreme Court of Washington for review. *See, e.g., Clark Cty. v. McManus*, 185 Wash. 2d 466, 467-70 (2016) (setting forth the process for appealing a decision of the Board). Moreover, the Court may exercise its discretion to disregard an argument made exclusively in a footnote. *See Cheever v. Huawei Device USA, Inc.*, 2019 WL 8883942, at *3 (N.D. Cal. Dec. 4, 2019) ("Because Defendants relegate the argument to a footnote, the Court will decline to consider it.") (citing *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014)) (internal citation omitted).

**VII. CONCLUSION**

Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment.

DATED: March 10, 2021

Respectfully submitted,

THE TIDRICK LAW FIRM LLP

By:     /s/ Steven G. Tidrick

_____
STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662

Counsel for Plaintiff Melanie Sportsman