JOHN P. LECRONE (State Bar No. 115875)
  johnlecrone@dwt.com
VANDANA KAPUR (State Bar No. 281773)
  vandanakapur@dwt.com
MARISSA FRANCO (State Bar No. 296793)
  marissafranco@dwt.com
PAUL RODRIGUEZ (State Bar No. 307139)
  paulrodriguez@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

STEPHEN M. RUMMAGE (*Admitted Pro Hac Vice*)
  steverummage@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 622-3150
Fax: (206) 757-7700

Attorneys for Defendant
A PLACE FOR ROVER, INC. dba
ROVER.COM

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MELANIE SPORTSMAN,<br><br>    Plaintiff,<br><br>vs.<br><br>A PLACE FOR ROVER, INC. d/b/a ROVER; JANICE MALONEY; and DOES 1-20,000,000,<br><br>    Defendants. | Civil Case No. 3:19-cv-03053-WHO<br><br>**DEFENDANT A PLACE FOR ROVER, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  March 31, 2021<br>Time:  2:00 p.m.<br>Place: Courtroom 2 – 17th Floor<br><br>Before the Honorable William H. Orrick<br><br>Complaint Filed: November 20, 2018 |

**TABLE OF CONTENTS**

I. BRIEF SUMMARY ................................................................................................................ 1

II. THE ISSUE BEFORE THIS COURT IS WHETHER ROVER MISCLASSIFIED PET CARE PROVIDERS GENERALLY IN CALIFORNIA ............................................. 2

III. PLAINTIFF'S DECLARATIONS SHOULD BE STRICKEN ............................................ 4

IV. PET CARE PROVIDERS ARE NOT ROVER EMPLOYEES............................................ 5

    A. Rover Satisfies The Requirements Of The Referral Agency Exemption.................. 5

        1. *The referral agency exemption applies to Rover and Pet Care Providers.* ...................................................................................................... 5

        2. *Pet Care Providers offer and deliver services under their own name, not Rover's.* ..................................................................................... 7

        3. *Pet Care Providers, like Plaintiff, are "customarily engaged, or [were] previously engaged," in a business providing pet services.* .............. 8

        4. *The evidence demonstrates Rover does not deduct from the rate set by Pet Care Providers.* ................................................................................ 11

        5. *Rover does not penalize Pet Care Providers.* ............................................ 12

    B. Rover Is Entitled To Summary Judgment Because The *Borello* Factors Weigh In Rover's Favor. ............................................................................................ 13

    C. Rover Is Entitled To Summary Judgment Because It Satisfies The ABC Test. ..... 15

V. CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**   **Page**

*Ayala v. Antelope Valley Newspapers, Inc.*,
   59 Cal. 4th 522 (2014) .................................................................................................. 13

*Chin v. Namvar*,
   166 Cal. App. 4th 994 (2008) ....................................................................................... 7, 9

*Cunningham v. Lyft, Inc.*,
   2020 WL 2616302 (D. Mass. May 22, 2020) ............................................................ 12, 13

*Dynamex Operations W. v. Superior Court*,
   4 Cal.5th 903 (2018) ......................................................................................................... 5

*Harris v. Vector Mktg. Corp.*,
   656 F. Supp. 2d 1128 (N.D. Cal. 2009) .......................................................................... 10

*Henninghan v. Insphere Ins. Sols., Inc.*,
   38 F. Supp. 3d. 1083 (N.D. Cal. 2014) ............................................................... 10, 14, 15

*Kim v. Reins International California, Inc.*,
   9 Cal .5th 73, 81 (2020) (*Kim*) ......................................................................................... 3

*Lawson v. Grubhub*,
   302 F. Supp. 3d 1071 (N.D. Cal. 2018) .................................................................... 10, 14

*Merkel v. Comm'r*,
   192 F.3d 844 (9th Cir. 1999) .......................................................................................... 11

*Narayan v. EGL, Inc.*,
   616 F. 3d 895 (9th Cir. 2010) ........................................................................................... 5

*Perez v. U-Haul Co. of California*,
   3 Cal. App. 5th 408 (2016) .............................................................................................. 3

*Providence Wash. Ins. v. Valley Forge Ins. Co.*,
   42 Cal. App. 4th 1194 (1996) .......................................................................................... 6

*Provost v. YourMechanic, Inc.*,
   55 Cal. App. 5th 982 (2020) (*Provost*) ........................................................................... 3

*Zakaryan v. The Men's Wearhouse, Inc.*,
   33 Cal. App. 5th 659 (2019) ............................................................................................ 3

*ZB, N.A. v. Superior Court*,
   8 Cal. 5th 175 (2019) ....................................................................................................... 3

**Statutes**

Cal. Lab. Code
    § 2699(a) ............................................................................................................................ 2
    § 2699(c) ............................................................................................................................ 2
    § 2777(a) ............................................................................................................................ 5
    § 2777(a)(7) ........................................................................................................................ 8

Labor Code
    § 226.8(a) ...................................................................................................................... 2, 3
    § 2775 ................................................................................................................................ 5
    § 2777 ........................................................................................................................ *passim*

PAGA ................................................................................................................... 2, 3, 4, 5

Pet Care Providers Act .............................................................................................. 6

Rover under California's Private Attorneys General Act of 2004,
    Labor Code §§ 2698 *et seq*. ............................................................................................. 2

**Rules**

Federal Rule of Civil Procedure 56(c)(4) ....................................................................... 4

**Other Authorities**

Assembly Bill 5 ......................................................................................................... 11

## I. BRIEF SUMMARY

Plaintiff Melissa Sportsman ("Plaintiff") ignores the undisputed facts that dispose of her claim. Like all Pet Care Providers who choose to use Rover's on-line marketplace to market their businesses, she agreed to its Terms of Service ("TOS") and then created and posted her profile in which she controlled her services, the fees charged for each service, the geographical area in which she provided such services, and her availability, and provided a personal statement—all to attract Pet Owners to *choose her* for work. She decided the how, what, where, when, and price of pet services she advertised on Rover's platform—without direction from Rover.

Indeed, the undisputed facts show Pet Care Providers, including Plaintiff, are not Rover's employees: Rover is exempt from the ABC Test under the referral agency exemption, and the *Borello* factors weigh in Rover's favor. Plaintiff attempts to defeat the exemption by focusing on the fact that Rover's logo appears on the first page of profiles on Rover's website and that she failed to obtain a business license, arguing that she "did not take any steps" to promote a pet care business.

But the undisputed facts mandate the opposite conclusion. When Plaintiff took the time to create a profile that described and touted her pet care services, she was promoting *her* business, urging Pet Owners to select *her* over other Pet Care Providers who likewise marketed their services in the Rover marketplace. The cases involving ride-hailing services, on which Plaintiff heavily relies, do not involve similar efforts (or any ability) by drivers to promote their business. Further, Plaintiff ignores the TOS in which Pet Care Providers agree and confirm they have obtained any and all licenses required for the pet care services they offer on Rover's platform. And despite Plaintiff's argument to the contrary, the record shows she agreed to Rover's service fee for each booking when she set her service rate on her profile. Pet Care Providers decide what they will be paid for their services, and that is what they receive.

The undisputed facts show that Plaintiff, like other Pet Care Providers who advertised on Rover's marketplace, was not Rover's employee. The Court should enter judgment accordingly.

## II. THE ISSUE BEFORE THIS COURT IS WHETHER ROVER MISCLASSIFIED PET CARE PROVIDERS GENERALLY IN CALIFORNIA

Plaintiff brings a single-count representative action against Rover under California's Private Attorneys General Act of 2004, Labor Code §§ 2698 *et seq.* ("PAGA"), seeking civil penalties *on behalf of herself and others* who used Rover's platform to offer their services in California. *See* Dkt. No. 9-1, Ex. A [Am. Compl.]. Plaintiff alleges Rover willfully misclassified Pet Care Providers as independent contractors in violation of Labor Code § 226.8(a), and as a result, also violated a host of other Labor Code sections and applicable industrial wage orders. *Id.*[1] In the operative Complaint, Plaintiff held herself out as having an experience representative of the Pet Care Providers she claims are misclassified. *Id.* at ¶¶ 1, 17 (emphasis added).

Seeking to avoid summary judgment and the undisputed evidence showing Pet Care Providers are not Rover employees, Plaintiff now claims that the classification question is limited to whether she alone, as the named representative plaintiff, was a Rover employee. She tries to mislead this Court by conveniently basing her *representative* PAGA action solely on her individual assertions in her self-serving declarations, and not on Rover's business model or the facts that pertain to other Pet Care Providers. Towards that end, Plaintiff asks the Court to disregard relevant testimony and evidence from other Pet Care Providers in California who used Rover's platform, including the deposition testimony of former Plaintiff Erika Miller. *See* Dkt. No. 84, Opp. at 1:21-23; 18:10-28. But Plaintiff's position reflects a fundamental misunderstanding of her PAGA action.

*First*, the nature of this PAGA action differs from an individual claim. It places at issue the classification of all Pet Care Providers in California during the relevant period, not just Plaintiff. As the California Supreme Court recently explained, "[a] PAGA claim is legally and conceptually different from an employee's own suit for damages and statutory penalties. An employee suing under PAGA 'does so as the *proxy or agent of the state's labor law enforcement*

---

[1] Only an *aggrieved employee* has PAGA standing. Cal. Lab. Code § 2699(a). An "aggrieved employee" is defined as "any person who was *employed* by the alleged violator and against whom one or more of the alleged violations was committed." *Id.*; Cal. Lab. Code § 2699(c) (emphasis added).

*agencies.*'" *Kim v. Reins International California, Inc.*, 9 Cal .5th 73, 81 (2020) (*Kim*) (emphasis added). Likewise, a PAGA action is different from a class action:

> Although representative in nature, a PAGA claim is not simply a collection of individual claims for relief, and so is different from a class action. The latter is a procedural device for aggregating claims "when the parties are numerous, and it is impracticable to bring them all before the court." In a class action, the "representative plaintiff still possesses only a single claim for relief—the plaintiff's own." … "But a representative action under PAGA is not a class action." *There is no individual component to a PAGA action* because '*every* PAGA action ... is a representative action on behalf of the state.' Plaintiffs may bring a PAGA claim *only* as the state's designated proxy, suing on behalf of *all* affected employees.

*Kim,* 9 Cal.5 th 73, 86-87 (citations omitted; first emphasis added). Because PAGA claims are not brought in an individual capacity at all, California courts routinely reject efforts to split representative PAGA-only actions, such as this one, into individual and representative components. *See id.* at 88; *Provost v. YourMechanic, Inc.*, 55 Cal. App. 5th 982, 995 (2020) (*Provost*); *Zakaryan v. The Men's Wearhouse, Inc.*, 33 Cal. App. 5th 659, 671-672 (2019), disapproved on another ground in *ZB, N.A. v. Superior Court*, 8 Cal. 5th 175, 196, fn. 8 (2019); *Perez v. U-Haul Co. of California*, 3 Cal. App. 5th 408, 420-421 (2016).

In line with these principles, evidence about other Pet Care Providers, including Miller, is directly relevant to the threshold issue: whether Pet Care Providers are employees of Rover. Plaintiff contends Rover willfully misclassified Plaintiff and other similarly situated "aggrieved employees" in violation of Labor Code § 226.8(a). As the California Supreme Court noted in *Kim*, and the California Court of Appeal reiterated in *Provost*, no private right of action exists for an *individual* to sue for an employer's alleged violation of Labor Code § 226.8(a). *Kim,* 9 Cal.5th at 89; *Provost*, 55 Cal. App. 5th at 997. The only recourse available to Plaintiff is through PAGA. Plaintiff's attempt to limit the issue of misclassification to herself would require the court to split the threshold issue into individual and representative components. But the case law is clear that, in a PAGA case, "individual relief has not been sought." *Kim,* 9 Cal. 5th at 88.

*Second,* Plaintiff wrongly asserts Rover agreed to limit the classification analysis for summary judgment to only Plaintiff. Dkt. No. 84, 1:14-2:5. This is untrue. When Miller moved to withdraw as the named plaintiff, Rover opposed the request and argued, in part, that Miller should be required to comply with her outstanding discovery obligations, including sitting for

deposition, because evidence about Miller is relevant to whether Rover misclassified Pet Care Providers.  Dkt. No. 46, 6:1-8:4; Dkt. No. 9-1, Ex. A ¶ 1.  The Court agreed and ordered Miller to sit for deposition as a condition of Plaintiff replacing Miller as the representative plaintiff.  *See* Dkt. No. 48, Minute Order.  Why would this Court permit Rover to depose Miller after withdrawal if Rover could not later use Miller's testimony?  Rover never agreed to limit the threshold classification question to only Plaintiff.[2]

*Third*, despite Plaintiff's assertions, the Court never issued an order limiting the classification issue for summary judgment to only Plaintiff.  *See* Dkt. No. 57, Civil Minutes ("Counsel agree to focus discovery on the dispositive classification issue … Any motion for summary judgment/adjudication will be heard by the end of March, 2021…").

Rover therefore seeks summary judgment as to Plaintiff's PAGA claim, on the basis of all undisputed evidence in the record.

### III.  PLAINTIFF'S DECLARATIONS SHOULD BE STRICKEN

In support of her opposition, Plaintiff cites to two declarations, including the declaration she submitted in connection with her own cross-motion (Dkt. No. 66-1) and a supplemental declaration submitted in the instant matter (Dkt. No 84).  Both declarations should be stricken for failure to comply with Federal Rule of Civil Procedure 56(c)(4).  For brevity, Rover incorporates by reference its opposition to Plaintiff's Motion, and in particular, its objections to Plaintiff's declaration.  *See* Dkt. No. 79, Rover's Opp. at 9:9-10:1.

Plaintiff's supplemental declaration suffers from the same issues as her previous declaration.  It is replete with self-serving assertions, legal arguments, and conclusory statements lacking any factual support to demonstrate personal knowledge or testimonial competence.  *See, e.g.,* Dkt. No. 84, ¶ 2 ("I never provided pet care services as a sole proprietor.").  For all of these reasons, the Court should strike paragraphs 2-4 and 6-11 of Plaintiff's declaration (Dkt. No. 66-1), as well as paragraphs 3-4 of Plaintiff's supplemental declaration (Dkt. No. 84).

---

[2] Plaintiff claims Rover agreed to limit the misclassification determination for summary judgment to Plaintiff by seeking to limit the scope of discovery.  In fact, Rover merely sought manageable and reasonable discovery. Dkt. No. 84, 2:28-2:2; Dkt. No. 59, Joint Letter.

## IV. PET CARE PROVIDERS ARE NOT ROVER EMPLOYEES

Plaintiff's opposition to Rover's Motion rests on two foundational flaws.

*First*, Plaintiff misstates the applicable legal standard for her PAGA claim. Citing to *Narayan v. EGL, Inc.*, 616 F. 3d 895, 900 (9th Cir. 2010), and *Dynamex Operations W. v. Superior Court*, 4 Cal.5th 903, 957 (2018), Plaintiff asserts she has met her burden to establish a *prima facie* employment relationship simply by alleging she performed services for Rover and, therefore, that the burden is now on Rover to prove otherwise. Dkt. No. 84, 2:12-3:4. But *Narayan* and *Dynamex* were decided before the legislature enacted Labor Code §§ 2775 and 2777. Although § 2775 codified the ABC test set forth in *Dynamex*, Labor Code § 2777 makes clear that neither Labor Code § 2775 nor the holding in *Dynamex* applies to "referral agencies" such as Rover. *See* Cal. Lab. Code § 2777. The Court must first determine whether the referral agency exemption applies before proceeding to the *Borello* or ABC tests.

*Second*, Plaintiff attempts to create a material dispute of fact by referring to her own cross-motion for partial summary judgment. As Rover explained in its opposition to that motion, however, Plaintiff's "facts" are not only disputed, but are replete with unsubstantiated opinion and characterizations that lack any evidentiary support. Rover incorporates by reference its opposition to Plaintiff's Motion, and in particular, Section II and IV.A, to counter the "evidence" and arguments in Plaintiff's Motion. *See* Dkt. No. 79, 2:12-9:8; 10:12:2.

**A.    Rover Satisfies The Requirements Of The Referral Agency Exemption**

**1.    *The referral agency exemption applies to Rover and Pet Care Providers*.**

Rover set forth ample evidence that it is a "referral agency" within the meaning of the exemption and that there exists no reasonable dispute Rover operates as such. As discussed in Rover's Motion, Pet Owners also meet the definition of "clients," and Pet Care Providers meet the definition of "service providers" under the exemption. Plaintiff misinterprets § 2777, arguing Rover has not demonstrated that she "operat[ed] a pet care services business as a sole proprietor." Dkt. No. 84, 3:15-18. But § 2777 requires only that "an individual *acting* as a sole proprietor … provide services to clients through a referral agency." Cal. Lab. Code § 2777(a) (emphasis added); *see also* § 2777(b)(4). Plaintiff, and other Pet Care Providers like her, do act

5
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Case No. 19-cv-03053-WHO
4830-6886-4224v.7 0107222-000013

as sole proprietors, as evidenced by the profiles they create on Rover's platform to market their services and persuade Pet Owners to hire them based on their pet-sitting philosophy, availability, services offered, and rates. *See* Dkt. No. 67, LeCrone Decl. ¶¶ 5, 14, 18, Exs. O, S & HH.

Rather than engage on the question of whether a Pet Care Provider "act[s] as a sole proprietor," Plaintiff points to a webpage from the State of California's Franchise Tax Board,[3] which provides requirements for *establishing* a sole proprietorship for tax purposes, should one choose to do so. *See* Dkt. 84-2, Supp. Tidrick Dec., ¶ 3, Ex. 49. But California does not require sole proprietorships to register with the state, file any formation documents, or to otherwise take any affirmative action before becoming sole proprietors. *See* Dkt. No. 67, ¶ 5, Ex. D at p. 3 (California "formation documents [do not need to be] filed with the California Secretary of State's office"); *see also* Dkt. No. 67-2, Dkt. No. 69, RJN ¶ 1.[4] As Plaintiff herself concedes (Dkt. 84, 3:15-18), a sole proprietorship is "*not* a *legal entity*, [but] a *natural person* who directly owns the business." *Providence Wash. Ins. v. Valley Forge Ins. Co.*, 42 Cal. App. 4th 1194, 1999 (1996). Section 2777 requires only that Pet Care Providers act as sole proprietorships, nothing more. And they do.

Beyond that, Plaintiff's assertion in her declaration that *she* never owned a pet care business or provided pet care services under an established sole proprietorship is not relevant to the inquiry of whether Pet Care Providers meet the definition of a "service provider" under the exemption. Under the TOS, Pet Care Providers—like Plaintiff and Miller—expressly certify to Rover they "have obtained all business licenses, permits, and fulfilled any other necessary requirements to legally provide Pet Care Services" and that they have complied with all laws and regulations applicable to them in their jurisdiction in connection with their execution of the TOS. *See* Dkt. No. 68, White Decl. ¶ 6, Ex. Z [¶ 3]; Dkt. No. 67, ¶ 2, Ex. A, 86:19-88:21. Plaintiff is therefore equitably estopped from arguing she lacked any business licenses required to provide

---

[3] Plaintiff claims Exhibit 49 is a webpage from the California Secretary of State. In fact, it is a printout of a webpage from the Franchise Tax Board. *See* Dkt. 84-2, ¶ 3, Ex. 49.

[4] The U.S. Small Business Administrator's webpage in connection with sole proprietorships also provides that "[y]ou do not have to take any formal action to form a sole proprietorship. As long as you are the only owner, this status automatically comes from your business activities. In fact, you may already own one without knowing it. If you are a freelance writer, for example, you are a sole proprietor." https://www.sba.gov/content/sole-proprietorship.

pet care services. This is just what the Court of Appeal held in *Chin v. Namvar*, 166 Cal. App. 4th 994, 1004 (2008)—which Rover cited in its Motion, and Plaintiff fails to address.

Finally, Rover has established that other Pet Care Providers—like Maisy's Mutts— can and do operate as formal business entities, such as limited liability corporations. *See* Dkt. No. 67, ¶ 8, Exs. H-I; Dkt. No. 69, ¶ 1. Pet Care Providers meet the definition of "service provider."

For the reasons discussed in Rover's Motion, Rover has also satisfied each of the eleven criteria required under Section 2777. Although Plaintiff attempts to argue otherwise with regards to the specific criteria[5] addressed below, Plaintiff's arguments fail.

### 2.  *Pet Care Providers offer and deliver services under their own name, not Rover's.*

The exemption's legislative history shows lawmakers found it particularly important that the "contractor … market themselves as an individual …. someone using a referral agency is hiring a specific person for a specific task at a negotiated rate. They would not, for example, request a service from an agency and find out who would provide the service at a later date." Dkt. No. 67, ¶ 9, Ex. J at p. 10; *see* Dkt. No. 69, ¶ 3. Here, the undisputed evidence presented by Rover demonstrates that Pet Care Providers like Plaintiff market and deliver their services under their own name, not Rover's. Indeed, Rover has established that when Pet Care Providers join Rover, they create a profile—under their name or business name—and include *whatever* information they believe will attract Pet Owners' attention, such as their pet-sitting philosophy and photographs. *See* Dkt. No. 66, Rover's Motion*,* Sections III.B.1.[6] Any resulting booking between a Pet Owner and a Pet Care Provider is an exclusive arrangement between that Pet Owner and the specific Pet Care Provider contracted for that service. Rover does not involve itself in the negotiations or decision-making of Pet Owners or Pet Care Providers, nor in the services provided by the Pet Care Provider. *See* Dkt. No. 66, Sections III.B-C.

---

[5] Because Plaintiff's opposition challenges Rover's ability to meet only the select criteria discussed in this Reply, Plaintiff has therefore conceded the other criteria, including factors 2777(a)(1)-(4), (6), and (8)-(9).

[6] Rover does not "strictly control" what a Pet Care Provider puts in their profile, despite what Plaintiff claims. Dkt. No. 84, 4:22-5:1; *see* Dkt. No. 67, ¶ 2, Ex. A at 30:4-14; *id.* ¶ 3, Ex. B at 57:17-60:5, 63:1-65:6. Rover's platform offers a template that integrates with Rover's software to facilitate online searching and the processing of agreed-upon bookings; it does not dictate or control the content that Pet Care Providers put in their profiles. *See* Dkt. No. 79, 3:12-4:7.

The evidence does not support Plaintiff's argument that she did not deliver services under her own name. Plaintiff points to a small portion of her profile to assert that "Rover dictated that Sportsman's Rover profile literally be under the name of Rover." Dkt. No. 84, 5:3-20. While Rover's logo appears in a small font on the left-hand corner of the first page of Plaintiff's profile—merely showing to the viewer that they are on Rover's marketplace—Plaintiff's own photograph, name, and location feature more prominently. *Id.* at 5:5-20. Further, the image Plaintiff cherry-picks in her Opposition offers an incomplete picture of Plaintiff's profile, which, as printed, totals eight pages. The rest of Plaintiff's profile details the many choices Plaintiff made in operating her business. *See* Suppl. White Dec. ¶2, Ex. HH. Similarly, the unique details of Miller and the Pet Care Providers associated with Maisy's Mutts are also the focal point of their profiles; Rover is identified only as the operator of the platform. *See* Dkt. No. 67, ¶ 17, Ex. R; Dkt. No. 68, ¶ 22, Ex. GG; Dkt. No. 81, ¶ 26, Ex. HH.

### 3.  *Pet Care Providers, like Plaintiff, are "customarily engaged, or [were] previously engaged," in a business providing pet services.*

Plaintiff argues Rover has not shown that Plaintiff was customarily engaged in an independently established business or trade. As an initial matter, Plaintiff erroneously attempts to convince the Court to apply the same standard and case law to the seventh exemption factor that is used for the stricter Prong C of the ABC Test. *See* Dkt. No. 84, 6:11-7:18. Although the language in § 2777(a)(7) resembles Prong C in § 2775(b)(1)(C), the seventh factor in § 2777(a)(7) can be satisfied if the service provider "is customarily engaged, ***or was previously engaged***, in an independent established business or trade of the same nature as, or related to, the work performed for the client." Cal. Lab. Code § 2777(a)(7) (emphasis added). The phrase "or was previously engaged" means that—contrary to Plaintiff's misinterpretation of the seventh exemption factor—no showing of an *existing* independent business operation is required. Thus, when analyzing the seventh exemption factor, this Court should disregard Plaintiff's case law relating to Prong C of the ABC test, which is irrelevant, from out-of-state, and predates the enactment of § 2777 (i.e., the referral agency exemption).

Focusing on the correct standard: Plaintiff and other Pet Care Providers, like Miller and

8
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Case No. 19-cv-03053-WHO
4830-6886-4224v.7 0107222-000013

1  Maisy's Mutts, were customarily, and previously, engaged in an independent business providing
2  pet services.  *See* Dkt. No. 65, 15:22-16:22; *see also* Dkt. No. 79, 17:23-18:22, 22:11-22.

3  Plaintiff's assertions in her declaration that *she* never worked in animal care, incorporated
4  a business entity, obtained a business license, or made offerings to the general public, contradicts
5  her deposition testimony and the undisputed facts.  Dkt. No. 84, 7:20-26.  Plaintiff testified she
6  provided dog services before joining Rover, and marketed herself as having "35 years of
7  experience" and "extensive experience other than just home pet care," including having prior
8  experience volunteering at a veterinary hospital.  Suppl. White Dec. ¶2, Ex. HH.

9  Plaintiff also took steps to promote or market her own independent pet care business, as
10 evidenced by her profile.  Indeed, Plaintiff's profile defines her business offerings and
11 demonstrates the choices she alone made as part of marketing her pet care business, including
12 what services she would offer, which types of pets she would provide services to, how much to
13 charge for each service, and what additional skills she possessed (such as being able to provide
14 CPR/First Aid or injecting medication to sick pets).  *See* Dkt. No. 67, ¶ 14, Ex. O; Suppl. White
15 Dec. ¶2, Ex. HH at 5-6.  Plaintiff also cannot dispute that as part of her business offerings she
16 (and all Pet Care Providers) could offer additional, add-on services in response to a request by a
17 Pet Owner.  *See* Dkt. No. 79, 5:26-6:8; Suppl. White Dec. ¶2, Ex. HH at 2.  These aspects of her
18 profile, taken together, demonstrate that Plaintiff established and promoted an independent pet
19 care business.

20 As for Plaintiff's argument that she failed to obtain a business license, as discussed
21 above, she is now estopped from using her failure to comply with the applicable laws as a sword.
22 *See Chin*, 166 Cal. App. 4th at 1004 ("one who misrepresents himself as a licensed contractor is
23 estopped from asserting that his unlicensed status makes him an employee under the statute").
24 Plaintiff's own failures do not transform her into Rover's employee.

25 Similarly, Rover has established that other Pet Care Providers, like Miller and Maisy's
26 Mutts, were or are engaged in independent businesses.  Miller held herself out as having 15 years
27 of experience providing pet services using word of mouth, and held herself as having a pet
28 service business: her LinkedIn page refers to Miller as a "Professional Nanny & Dog Walker"

and says she did business for years under the fictitious business name "Fog City Dog Walking and Pet Sitting Services." Dkt. No. 65, 16:2-10; *see* Dkt. No. 67, ¶ 21, Ex. V; *see also* Dkt. No. 67, ¶ 22, Ex. W (Miller also advertised her services on Sittercity.com). Other Pet Care Providers—like Maisy's Mutts—can and do create and operate as formal business entities and market their businesses using methods outside Rover (like their own website, Yelp, and Facebook). *See* Dkt. No. 67, ¶¶ 6-8, Exs. E-I; Dkt. No. 69, ¶¶ 1-2.

Finally, despite Plaintiff's assertions to the contrary, *Lawson v. Grubhub* and *Henninghan v. Insphere Ins. Sols., Inc.* both support Rover's position that Pet Care Providers are not Rover's employees. In fact, both cases held that the worker was not the company's employee. The analysis in each case relating to the "distinct occupation or business" factor of the *Borello* test also support a finding here that Plaintiff and Pet Care Providers are engaged in an independently established business. In *Lawson*, the court found the "distinct occupation or business" factor weighed in favor of the worker, but only because the facts showed the worker: (1) did not decide "how much [the company's] customers paid for his delivery services," and (2) did not have "many different clients" to whom it offered the same services. *See Lawson v. Grubhub*, 302 F. Supp. 3d 1071, 1088-1089 (N.D. Cal. 2018). And in *Henninghan* the court held that the factor weighed in the company's favor because the worker sold insurance for other companies, even though the worker testified the company prohibited workers from working for other insurance companies. *Henninghan v. Insphere Ins. Sols., Inc.*, 38 F. Supp. 3d. 1083, 1102 (N.D. Cal. 2014)

Here, Plaintiff does not dispute that she and other Pet Care Providers could set their own rates, nor that that she and other Pet Care Providers were free to, and did, use other methods and platforms to offer pet services. *Harris v. Vector Mktg. Corp.,* 656 F. Supp. 2d 1128, 1138 (N.D. Cal. 2009) (that the plaintiff's relationship "was nonexclusive, and she in fact solicited for other insurance companies during her appointment" supported non-employee status). And, the fact the referral exemption recognizes both "animal care" and "dog walking" as exempt occupations makes explicit they represent a "distinct occupation."

### 4. *The evidence demonstrates Rover does not deduct from the rate set by Pet Care Providers.*

Section 2777(a)(10) requires that (1) the "service provider sets their own rates," and (2) the referral agency not deduct from the rate set by the service provider.  Plaintiff does not dispute that Pet Care Providers set their own rates, but asserts that Rover fails this test because it deducts a "service fee from the rate that the Pet Owner agrees to pay to the Pet Care Provider."  Dkt. No. 84, 10:8-10.  This mischaracterizes the requirement of Section 2777(a)(10).  The key inquiry is whether Rover deducts from the rate set by the Pet Care Provider, *not* whether Rover retains an agreed fee from the amount paid by the Pet Owner.  The undisputed evidence shows Rover does not *deduct* anything from the amount the Pet Care Provider sets as their rate charged for a booking; it simply retains an agreed amount as its fee for running the platform.

As shown below, when Pet Care Providers set their list prices (i.e., the price paid by the Pet Owner for each service), they are aware of the service fee and clearly see the net rate they will receive at their list price:



Dkt. No. 68-8, Ex. FF.  The image shows the Pet Care Provider sets their personal rate at $26.40, and sets their listing rate (which includes Rover's service fee, and which is the price Pet Owners pay) at $33.  In other words, Pet Care Providers set their own rates without deduction from Rover.  The legislative history of Assembly Bill 5 ("AB5")[7] provides an example of a permissible service fee, which is identical to Rover's: "If, for example, a contractor billed her

---

[7] Despite Plaintiff's contradictory positions regarding legislative history, case law is clear that legislative history is appropriate when statutory language is ambiguous.  *Merkel v. Comm'r*, 192 F.3d 844, 848 (9th Cir. 1999) ("If the statute is ambiguous, we consult the legislative history, to the extent it is of value, to aid in our interpretation.").  Use of legislative history in this case is appropriate because § 2777 is a recent statute that no court has interpreted.  Indeed, Plaintiff admits ambiguities in the meaning of the phrase "without deduction."  Dkt. No. 66, 12:5-6.

services at $25/hour, it would be permissible for a referral agency to charge the client $35/hour and keep the $10 difference." Dkt. No. 67, ¶ 9, Ex. J.

Plaintiff also mischaracterizes key documents to support her argument. For example, Rover's TOS provides that Rover retains a service fee "from the amounts paid by the Pet Owner," but nowhere does it state that Rover deducts from the rate set by the Pet Care Provider. *See* Dkt. No. 68, ¶ 6, Ex. Z [¶ 10.3.] Plaintiff also omits testimony from Rover's 30(b)(6) deponent clarifying that Rover makes no deduction from Pet Care Provider's rates: "so the sitter charges the owner a fee, whatever they decide it to be. And then Rover charges a 20 percent fee on top that they see. It's – actually, I think I might have even said deduction before. It's not. It's a fee that is applied on top, and they can see what that is…." *See* Dkt. No. 67, ¶ 4, Ex. C, 83:18-25.

The Court should reject Plaintiff's reading of this factor, which would render the referral agency exemption virtually useless as most referral agencies charge service fees in a similar manner.

**5.**     ***Rover does not penalize Pet Care Providers.***

Plaintiff argues Rover can't meet Section 2777(a)(11) because it allegedly "penalizes the Pet Care Provider[8] with a lower performance score and thus a lower search rank…." Dkt. No. 84, 12:25-28. Plaintiff is grasping at straws.

Plaintiff does not dispute that she (as well as Miller) declined numerous booking requests for various reasons, including incompatibility, requests outside their limitations, or unavailability. She has not presented any facts showing Rover penalized her after declining these requests—for example, through a warning, a fee, or termination. *See Cunningham v. Lyft, Inc.,* 2020 WL 2616302, at *6 (D. Mass. May 22, 2020) (finding "Lyft retains the right to deactivate drivers … who fall below Lyft's 'star rating or cancellation threshold.'").

The everyday operation of the platform's search function also does not constitute a "penalization" of Pet Care Providers. As explained more fully in Rover's Opposition to

---

[8] Notably, although Plaintiff wants this Court to focus only on her individual assertions, Plaintiff also generalizes—when convenient—as to other Pet Care Providers.

Plaintiff's Motion (*see* Dkt. No. 79, 15:2-16, 20:19-21:18), when a Pet Owner browses the Rover platform based on their preferences and criteria, the search results for Pet Care Providers must be displayed and returned in some order.  Dkt. No. 81, ¶ 13.  The search algorithm considers, among other factors, the availability, preferences, and responsiveness of a Pet Care Provider, so Pet Care Providers who accept more requests (within their stated availability and preferences), get higher ratings, and have more repeat clients, might appear higher in a specific search's results than other Pet Care Providers who accept bookings less frequently, have lower ratings, or have fewer returning clients.  *Id.*  The algorithm takes into account instances when a Pet Care Provider rejects a booking, but only when their calendar indicates they are available and the booking request falls within their own stated preferences.  *Id.*  It is a logical and reasonable feature of most online marketplaces —and in no way a "penalty"— to, all other factors being equal, list higher in search results those Pet Care Providers who are more likely to respond and make a booking.

**B.    Rover Is Entitled To Summary Judgment Because The *Borello* Factors Weigh In Rover's Favor.**

Because Rover satisfies the criteria of the service referral agency exemption, all that remains is application of the *Borello* test.  As Plaintiff acknowledges, "the most significant consideration" under *Borello* is the putative employer's "right to control" the manner and means by which the worker accomplishes the work.  Dkt. No. 84, 15:25:26; *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531 (2014).  Plaintiff does not dispute—and therefore concedes—numerous facts demonstrating Rover's lack of control over Pet Care Providers' work, including that Pet Care Providers alone determine *what* types of services to provide, *if and when* they will provide those services, *where* they will provide those services, *to whom* they will provide those services, *how* they will provide those services, and at *what price* they will provide their chosen services.  *See* Dkt. No. 65, 12:7-14:4.  Instead, as addressed in Rover's Opposition to Plaintiff's Motion, Plaintiff attempts to defeat summary judgment by citing to "facts" asserted in its Motion that do not show any control by Rover over the "manner and means" by which Pet Care Providers provide services.  *See* Dkt. No. 79, 14:11-16:10.  Given the undisputed evidence showing Rover's lack of control, the primary control factor heavily weighs in Rover's favor.

Plaintiff also asserts that Rover's "termination" clause shows that Rover exerts control over Pet Care Providers.[9] Plaintiff is mistaken. Rover's TOS does not include a "termination" clause; instead, Rover reserves the right to end the customer relationship with any of its users—whether Pet Owners or Pet Care Providers. Likewise, Pet Care Providers and Pet Owners can deactivate their account if they are dissatisfied with Rover's platform. Indeed, both Plaintiff and Miller stopped using the platform without notice to Rover, evidencing the mutuality of the so-called termination right. "A mutual termination clause is evidence of an independent-contractor relationship." *Henninghan*, 38 F. Supp. 3d at 1105. Further, the *Lawson* court made clear that a "termination" clause suggests the company's control over a worker only when the worker has made a significant time and financial commitment to the company, such as by buying approved cars and scanners, working full-time, and working exclusively for the company. 302 F. Supp. 3d 1086-1088. As Rover's motion (at 21:20-22:12) explains, Pet Care Provides have complete autonomy over their services, and neither Plaintiff nor Miller invested significant time or finances in providing pet services through Rover.

Finally, none of the *Borello* "secondary indicia" tips the scales away from Rover:

*First*, Plaintiff's testimony that she "intended to be an employee"—years after using Rover—is not persuasive. Indeed, all Pet Care Providers (including Plaintiff) agreed to the TOS, which state that Rover "does not employ" Pet Care Providers. Dkt. No. 68, ¶ 6, Ex. Z [2.2]. And evidence from Miller contemporaneous with her use of Rover's platform shows she believed she was an independent contractor. *See* Dkt. No. 67, ¶ 2, Ex. A at 99:11-100:19; *see id.* ¶19, Ex. T at p. 9 ("I don't work [full-time] because I'm an independent contractor.").

*Second*, Plaintiff's argument that providing pet services does not require special skill falls flat. As the California legislature recognized in AB5's referral agency exemption, both "animal care" and "dog walking" are distinct occupations that require experience with pets of various sizes, breeds, temperaments, and dealing with certain situations that could occur. In addition to claiming she had "35 years of experience" providing pet services to dog breeds of all sizes

---

[9] Plaintiff makes the baseless allegation that Rover "in fact does" terminate Pet Care Providers for any reason, but fails to provide any evidence to support that claim. Dkt. No. 84, 16:26:28.

("from Chihuahuas to Great Danes"), Plaintiff claimed to have "extensive experience other than just home pet care," that she previously volunteered at a veterinary hospital, and that she had additional, specialized skills in providing pet services (including that she could provide first aid/CPR to animals, had experience with senior dogs, and could inject medications to pets).  *See* Suppl. White Dec. ¶2, Ex. HH at 5-6; Dkt. No. 67, ¶ 14, Ex. 0 at ROVER_000005; Dkt. No. 67, ¶ 18, Ex. S at 4 (Miller claimed 15 years of experience and an "animal science degree."); *see* Dkt. No. 81-9, Ex. HH (Maisy's Mutts claims to be a member of the Association of Professional Dog Trainers).

*Third*, as shown in Rover's Motion (*see* Dkt. No. 65, 20:26-21:3; 23:12-25:24) and its Opposition to Plaintiff's Motion (*See* Dkt. No. 79, 22:23-25:20), Pet Care Providers perform work (i.e., pet care services) distinct from Rover's business of providing a marketplace that allows Pet Owners to find and connect with Pet Care Providers.  At minimum, this factor is neutral.  *See Henninghan*, 38 F. Supp. at 1104.  Similarly, as argued above (*see, supra* Section IV.A.3) and in Rover's Motion (Dkt. No. 65, 15:22-16:22; 19:6-16) and Opposition (Dkt. No. 79, 17:23-18:22; 22:11-22), both Plaintiff and Miller engaged in a distinct business before, during, and after the period in which they performed pet services using Rover.

**C.  Rover Is Entitled To Summary Judgment Because It Satisfies The ABC Test.**

In her Opposition, Plaintiff makes no attempt to respond to Rover's arguments that it satisfies each prong of the ABC test.  Instead, Plaintiff simply directs this Court to her own Motion.  Dkt. No. 84, 15:17-20.  Rover's Motion and its Opposition to Plaintiff's Motion demonstrate Rover satisfied each prong of the ABC test, and thus Rover is entitled to summary judgment.  *See* Dkt. No. 65, 22:13-25:22; Dkt. No. 79, 22:2-25:20.

## V.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion and enter summary judgment in Rover's favor.

DATED: March 17, 2021                           DAVIS WRIGHT TREMAINE LLP

By: */s/John P. LeCrone*
John P. LeCrone
Attorneys for Defendant
A PLACE FOR ROVER, INC. dba ROVER.COM

15