1

THE TIDRICK LAW FIRM LLP
STEVEN G. TIDRICK, SBN 224760
2
JOEL B. YOUNG, SBN 236662
1300 Clay Street, Suite 600
3
Oakland, California 94612
Telephone: (510) 788-5100
4
Facsimile: (510) 291-3226
E-mail: sgt@tidricklaw.com
5
E-mail: jby@tidricklaw.com

6
Attorneys for Individual and Representative
Plaintiff MELANIE SPORTSMAN
7

8
UNITED STATES DISTRICT COURT

9
NORTHERN DISTRICT OF CALIFORNIA

10

11
MELANIE SPORTSMAN,

Case No. 3:19-cv-03053-WHO

12
Plaintiff,

**REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND/OR PARTIAL SUMMARY
JUDGMENT**

13
v.

14
A PLACE FOR ROVER, INC. d/b/a Rover
*et al.*,

Date: March 31, 2021
Time: 2:00 p.m.
Location: Courtroom 2 – 17th floor
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, California

15
Defendants.

16

17
Judge: The Honorable William H. Orrick

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................. 1

II.    RELEVANT PROCEDURAL HISTORY ........................................... 1

III.   SUMMARY OF UNDISPUTED FACTS AND ISSUES ................................ 1

IV.    MELANIE SPORTSMAN'S DECLARATION SHOULD NOT BE STRICKEN ............................................................................. 3

V.     ROVER IS NOT EXEMPT FROM THE *DYNAMEX* ABC TEST PURSUANT TO THE REFERRAL AGENCY EXEMPTION ......................... 3

       A. Rover Cannot Prove a Lack of "Deduction" by Rover ................................. 4

       B. Rover Cannot Prove a Lack of "Penalization" by Rover .............................. 5

       C. Rover Cannot Prove that Sportsman Was Engaged in an Independently Established Pet Care Business .......................................................... 7

VI.    ROVER CANNOT MEET ITS BURDEN UNDER THE *DYNAMEX* ABC TEST ............................................................................. 8

       A. Rover Cannot Establish That "The Worker Performs Work That Is Outside The Usual Course of [Defendant's] Business" ("Prong B") ............ 9

          1. The Evidence Does Not Reflect Genuine Disputes of Material Fact ........................................................................... 9

          2. Rover Does Not Address the Factors Set Forth in *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106 (9th Cir. 2021) .... 10

             a) "Whether the work of the employee is necessary to or merely incidental to that of the hiring entity" is relevant to Prong B ................................................... 10

             b) "Whether the work of the employee is continuously performed for the hiring entity" is relevant to Prong B ........ 12

             c) "What business the hiring entity proclaims to be in" is relevant to Prong B" ............................................. 12

          3. Rover's CEO Does Not Deny that Rover Is the "Uber for Dogs" .................................................................................. 13

       B. Rover Cannot Establish That Plaintiff "Is Customarily Engaged in an Independently Established Trade, Occupation, Or Business of The Same Nature as The Work Performed" ("Prong C") ................................... 13

VII.   ROVER'S EVIDENCE REGARDING MILLER IS IRRELEVANT ............... 14

VIII.  THE QUESTIONS WHETHER PET CARE PROVIDERS ARE "PERMITTED" TO RUN THEIR OWN SEPARATELY ESTABLISHED BUSINESSES, OR WHETHER ANY IN FACT DO SO, ARE NOT RELEVANT ......................... 14

i

IX.     THE COURT SHOULD DISREGARD ROVER'S ARGUMENT ABOUT
        AN OPINION LETTER OF THE U.S. DEPARTMENT OF LABOR...............     15

X.      CONCLUSION..................................................................................................     15

ii

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
*Sportsman v. A Place for Rover, Inc. et al.*, Case No. 3:19-cv-03053-WHO

**TABLE OF AUTHORITIES**

<u>**CASES**</u>                                                                                                    <u>**PAGE(S)**</u>

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..................................................................................    8

*Arshakyan v. X17, Inc.*,
2019 WL 10097455 (C.D. Cal. June 21, 2019) ....................................    8

*Awuah v. Coverall N. Am., Inc.*,
707 F. Supp. 2d 80 (D. Mass. 2010) ......................................................    13

*Baumann v. Chase Inv. Servs. Corp.*,
747 F.3d 1117 (9th Cir. 2014) ...............................................................    14

*BedRoc Ltd., LLC v. United States*,
541 U.S. 176 (2004) ................................................................................    6

*Canela v. Costco Wholesale Corp.*,
971 F.3d 845 (9th Cir. 2020) .................................................................    14

*Citizens For Lawful & Effective Attendance Policies v. Sequoia Union High Sch. Dist.*,
1998 WL 305513 (N.D. Cal. June 4, 1998) ...........................................    6

*Da Costa v. Vanguard Cleaning Sys., Inc.*,
2017 WL 4817349 (Mass. Super. Sept. 29, 2017) ................................    13

*Desire, LLC v. Manna Textiles, Inc.*,
986 F.3d 1253 (9th Cir. 2021) ...............................................................    6

*Dynamex Operations West Inc. v. Superior Court*,
4 Cal. 5th 903 (2018) ...................................................................... *passim*

*Garcia v. Border Transp. Grp.*, LLC,
28 Cal. App. 5th 558 (2018) ...........................................................7, 8, 14

*Haitayan v. 7-Eleven, Inc.*,
2018 WL 6264995 (C.D. Cal. Sept. 5, 2018) ........................................    15

*Lockhart v. United States*,
136 S. Ct. 958 (2016) ..............................................................................    7

*Mississippi Tank Co., Inc.*,
194 NLRB 923 (1972) .............................................................................    7

*Olsen v. Idaho State Bd. of Med.*,
363 F.3d 916 (9th Cir. 2004) .................................................................    18

*Patel v. Nike Retail Servs., Inc.*,
58 F. Supp. 3d 1032 (N.D. Cal. 2014) ...................................................    14

*United States v. Bass*,
404 U.S. 336 (1971) ................................................................................    7

*United States v. Seeger,*
380 U.S. 163 (1965) .......................................................................... 7

*United States v. TRW Rifle 7.62X51mm Caliber, One Model 14 Serial 593006,*
447 F.3d 686 (9th Cir. 2006) ........................................................... 6

*Vazquez v. Jan-Pro Franchising Int'l, Inc.,*
986 F.3d 1106 (9th Cir. 2021) .................................................. *passim*

*Weaver v. City & Cty. of San Francisco,*
2006 WL 3751425 (N.D. Cal. Dec. 19, 2006) ........................................ 15


STATUTES AND REGULATIONS

Wage Order No. 5, Cal. Code Regs., tit. 8, § 11050............................................. 1, 8

Cal. Labor Code § 2777 ......................................................................... *passim*

86 FR 1168-01, 2021 WL 51656 ...................................................... 15

86 FR 7424-01, 2021 WL 274887 ...................................................... 15

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
*Sportsman v. A Place for Rover, Inc. et al.*, Case No. 3:19-cv-03053-WHO

## I. INTRODUCTION

Plaintiff Melanie Sportsman ("Plaintiff" or "Sportsman") submits this reply in support for her motion for summary judgment and/or partial summary judgment (ECF No. 66). The opposition of Defendant A Place For Rover, Inc. d/b/a Rover ("Defendant" or "Rover") (ECF No. 79) lacks merit. For the reasons below and in Plaintiff's opposition to Defendant's motion for summary judgment, the Court should rule that Rover does not qualify for the "referral agency" exemption of Labor Code § 2777 because Rover cannot prove that all of the statutory criteria for the exemption are satisfied. The Court should also deny Rover's motion for summary judgment in its entirety and rule that under the *Dynamex* ABC Test, Rover misclassified Sportsman because Rover cannot establish prong B and/or prong C. *See Dynamex Operations W. v. Super. Ct.*, 4 Cal. 5th 903, 917 (2018) (the "*Dynamex* ABC Test").

## II. RELEVANT PROCEDURAL HISTORY

On February 24, 2021, both sides filed motions for summary judgment and/or for partial summary judgment. Plaintiff hereby incorporates by reference her opposition to Defendant's motion (ECF No. 84) and supporting evidence (ECF Nos. 84-1 and 84-2).

## III. SUMMARY OF UNDISPUTED FACTS AND ISSUES

Rover does not specifically dispute or even address significant evidence, facts, and legal arguments that are relevant to Plaintiff's motion. The following are some key examples.

First, Rover does not address Plaintiff's argument that the IWC Wage Orders apply to Plaintiff's work for Rover. *See* ECF No. 66 at ECF pages 23:27-26:4. Accordingly, Plaintiff requests that the Court find that IWC Wage Order No. 5 applies.

Second, Rover does not dispute that if a Pet Care Provider rejects a client or prospective client during a time period when the Pet Care Provider's online calendar indicates that he or she is "available," the Pet Care Provider receives a lower performance score and thus a lower search rank, and a lower search rank means that he or she is less likely to receive booking requests and thus is less likely to earn income. *See* ECF No. 66 at ECF pages 16:12-17:12 (citing evidence). Rover simply argues that this is "logical," "reasonable," and "in no way a 'penalty.'" *See* ECF No. 79 at ECF pages 20:2-16 and 26:3-17.

1

**Third**, Rover admits that it charges a "20% service fee." *See* ECF No. 79 at ECF page 24:27. Rover attempts to persuade the Court that this is not a "deduction" but does not deny the authenticity of the following evidence:

- Rover's website informs Pet Care Providers that "you keep 80% of your earnings" and "[t]he other 20%" goes to Rover. *See* ECF No. 66-2 at ECF page 223.

- Rover calls the "20% service fee" a "sitter fee" (*i.e.*, "[t]he sitter fee is 20%") and is separate from a 5-7% service fee "for pet owners" (i.e., "[t]he 5-7% service fee that you are referencing is for pet owners only"). *See* ECF No. 66-1 at ECF page 7.

- Rover's Rule 30(b)(6) witness testified as follows:

    > Q. So Rover deducts 20 percent and transmits the other 80 percent to the dog care provider; is that correct?
    > A. That's correct.

    *See* Rover Depo. (ECF No. 66-2 at ECF page 19) at 38:25-39:3.

- Rover's "terms" state that the service fee is deducted from the rate that the "Pet Owner agrees to pay you" (where "you" refers to the Pet Care Provider):

    > If you are a Service Provider, except where otherwise specified via the Rover Service, our service fee is calculated as a percentage of the fees a Pet Owner agrees to pay to ***you*** in a Booking and is ***collected*** from each Booking.

    White Dec. at Ex. Y (ECF No. 68-1) at ECF page 8, ¶ 9.4 (emphasis added).

    > If you are a Service Provider, our service fee is calculated as a percentage of the fees a Pet Owner agrees to pay to you in a Booking. We ***deduct*** this service fee from the amounts paid by the Pet Owner.

    White Dec. at Ex. Z (ECF No. 68-2) at ECF page 8, ¶ 10.3 (emphasis added).

**Fourth**, Rover does not deny that it has run advertising campaigns and does not dispute the authenticity of the advertisements that Plaintiff has proffered as evidence that Rover brands itself as a pet services provider. *Compare* ECF No. 66 at ECF pages 9:16-12:10 *with* ECF No. 79 at ECF page 16:9-18.

**Fifth**, Rover does not deny that it: (1) generates revenue exclusively from the services performed by the Pet Care Providers; (2) recognizes as revenue the payments made by Pet Owners for the services provided by Pet Care Providers; and (3) would not generate revenue without the Pet Care Providers. *See* ECF No. 66 at ECF page 9:1-15.

2

**IV.    MELANIE SPORTSMAN'S DECLARATION SHOULD NOT BE STRICKEN**

Rover's objections to the declaration of Melanie Sportsman (ECF No. 66-1) lack merit. Sportsman has personal knowledge of the statements in her declaration. Her statements are not conclusory. Nor are they opinion testimony.

Exhibit B to Sportsman's declaration (ECF No. 66-1 at ECF pages 8-13) is a printout from Rover's website. Sportsman's statements about it are based on her personal knowledge. Notably, Rover does not and cannot deny that the document is authentic, as Rover knows full well that it is a printout from its own website. Moreover, Plaintiff has asked that the Court take judicial notice of Exhibit B. *See* ECF No. 85 at ECF pages 6:22-7:2. Rover cannot reasonably oppose that request, as Rover has argued that the Court may take judicial notice of "publicly accessible webpages." ECF No. 69 at ECF pages 2:12 and 3:25-4:6.

Contrary to Rover's assertion, Sportsman did <u>not</u> testify that "Rover provided her ***only*** with suggestions and tips." ECF No. 79:22-23 (emphasis added) (citing LeCrone Dec., Ex. B at 45:18-46:11). In the cited deposition testimony, Sportsman was responding to a line of questioning in which she was asked about Rover's "suggestions and tips," but she certainly never admitted that Rover did not ***also*** give "directions and instructions."

The fact that "bathing / grooming" is identified in the Rover profile for Sportsman on Rover's website and mobile app does not contradict Sportsman's statement about services she provided. *See* ECF No. 66-1 at ECF page 2, ¶ 3. As the profile reflects, "bathing / grooming" is an "[a]dditional [s]ervice[]" that a Pet Owner can purchase in addition to the four primary services. *See* Tidrick Dec. Ex. 4, ECF No. 66-2 at ECF page 66.

**V.    ROVER IS NOT EXEMPT FROM THE *DYNAMEX* ABC TEST PURSUANT TO THE REFERRAL AGENCY EXEMPTION**

Rover is not entitled to summary judgment that it is exempt from the *Dynamex* ABC Test under the referral agency exemption set forth in California Labor Code § 2777. Section 2777 specifies that an entity claiming to be a "referral agency" has the burden of demonstrating that numerous criteria are satisfied. *See* Labor Code § 2777(a) (stating in relevant part, "if the referral agency demonstrates that all of the following criteria are satisfied"). Rover has not carried that

burden, and cannot do so, for the reasons below.

### A. Rover Cannot Prove a Lack of "Deduction" by Rover

For the reasons set forth in Plaintiff's Opposition to Defendant's Motion for Summary Judgement, *see* ECF No. 84 at ECF pages 15:1-17:18, Rover cannot show that Sportsman set her own rates "[w]ithout deduction by the referral agency." *See* Cal. Labor Code § 2777(a)(10).

In its opposition, Rover cites some of the legislative history of Labor Code § 2777 to support its position that it meets the requirements of Cal. Labor Code § 2777(a)(10). *See* ECF No. 79 at ECF page 25:12-14 (quoting LeCrone Dec. Ex. J). Rover quotes the following but notably ***omits the part that is included here with emphasis***: "Second, an existing referral agency is going to remit the negotiated rate, including any potential gratuity, *without deduction on the part of the contractor*. If, for example, a contractor billed her services at $25/hour, it would be permissible for a referral agency to charge the client $35/hour and keep the $10 difference. ***It would not be permissible, however, to place the costs of the operation of the referral agency on the shoulders of the contractor***." *See* LeCrone Dec. Ex. J (ECF No. 80-10 at ECF page 11). That legislative history supports Plaintiff's position—not Rover's—for the following reasons.

First, the passage from the legislative history states: "***It would not be permissible . . . to place the costs of the operation of the referral agency on the shoulders of the contractor***." Rover has stated that it places the costs of its operations on the shoulders of the Pet Care Providers, and specifically, that Rover's "sitter fee" (*i.e.*, Rover's deduction of 20% from the earnings of Pet Care Providers) pays for Rover's operational costs. Rover has not disputed the authenticity of the following message that Rover sent to Sportsman:

> Thank you for reaching out about this! The 5-7% service fee that you are referencing is for pet owners only. ***The sitter fee is 20%.*** These fees help us to provide ongoing support, educational opportunities and help each individual grow their business. ***The fees are also important with facilitating Rover's customer support, 24/7 trust and safety coverage, and important site maintenance and product improvements. Lastly, they help cover benefits for sitters, including the costs of processing payments and ongoing promotion of sitters on Rover.***

*See* Sportsman Dec. Ex. A (ECF No. 66-1 at ECF page 7) (emphasis added). Moreover, Rover does not dispute the authenticity of its web page stating that Rover's services fees (including its "sitter fee") pays for Rover's operational costs, specifically:

4

*Service fees allow Rover to operate* and continually make improvements based on the needs of our growing community. . . . For pet sitters and dog walkers on Rover, these fees are designed to support you every step of the way, and they're standard in our industry. We use these standard service fees to do things like:

- Continually improve your experience with the Rover website and mobile apps.
- Expand our Trust & Safety team to offer best-in-class 24/7 emergency support. (That means whenever you call, we'll be there to answer.)
- Create original educational content specifically for sitters in our Sitter Resources Center and Help Center.

*In short, these fees help us build our business* so we can help you build yours.

*See* Tidrick Dec. ¶ 31 & Ex. 37 ("What are the service fees?") (ECF No. 66-2 at ECF pages 217-18) (identifying separate service fees for "Sitters" and for "Owners").

Second, the legislative history identifies the following example as permissible: "If, for example, a contractor billed her services at $25/hour, it would be permissible for a referral agency to charge the client $35/hour and keep the $10 difference." In this example, the "contractor" (here, the Pet Care Provider) *is not* charged a fee. Rather, only the "client" (here, the Pet Owner) is charged a fee (*i.e.*, an amount of $10/hour on top of what the "contractor" billed). However, Rover's practice is to charge fees not only to the Pet Care Provider but also to the Pet Owner, as stated in the message that Rover sent Sportsman (quoted above) and in Rover's terms of service.

Indeed, Rover's terms of service identify "Fees for Pet Owners" as being separate and in addition to "Fees for Service Providers." *See* White Dec. (ECF No. 68-2 at ECF page 8), Ex. Z (Terms of Service updated January 31, 2017), ¶¶ 10.1, 10.2, and 10.3; White Dec. (ECF No. 68-1 at ECF page 8), Ex. Y (Terms of Service effective Oct. 27, 2020), ¶ 9.4 ("Our service fees are described here (https://support.rover.com/hc/en-us/articles/205385304") (linking to Rover's web page entitled "What are the service fees?" (Tidrick Dec. Ex. 37) (ECF No. 66-2 at ECF pages 217-18) (identifying separate service fees for "Sitters" and for "Owners")).

Rover's practice regarding fees is clearly at odds with what the legislative history indicates would comply with the requirements of Cal. Labor Code § 2777(a)(10).

**B.      Rover Cannot Prove a Lack of "Penalization" by Rover**

For the reasons set forth in Plaintiff's Opposition to Defendant's Motion for Summary Judgement, *see* ECF No. 84, ECF pages 17:19-18:7, Rover cannot meet the criterion of Cal.

5

Labor Code § 2777(a)(11) (requiring that "[t]he service provider is free to accept or reject clients and contracts, without being penalized in any form by the referral agency.").

In addition, as discussed above, Rover does not dispute critical facts. Rover does not dispute that (1) if the Pet Care Provider rejects a client or prospective client during a time period when his or her online calendar indicates that he or she is "available," he or she receives a lower performance score and thus a lower search rank, and (2) a lower search rank means that he or she is less likely to receive booking requests and is less likely to earn income. *See* ECF No. 66 at ECF pages 16:12-17:12 (citing evidence). Rather, Rover simply argues that this is "logical," "reasonable," and "in no way a 'penalty.'" *See* ECF No. 79 at ECF pages 20:2-16 and 26:3-17.

Rover's position that its treatment of Pet Care Providers who reject clients or prospective clients does not qualify as "penalization" is wrong as a matter of law.

<u>First</u>, the plain meaning of the statute controls, and under the statute's plain meaning, the disadvantage that Rover imposes is a penalty. As with all statutory interpretation, the Court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004); *see also Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1265 (9th Cir. 2021) ("[W]hen the statutory language is unambiguous, the plain meaning controls."). Labor Code Section 2777 does not define "penalize" and thus the Court can and should consult dictionary definitions. *See United States v. TRW Rifle 7.62X51mm Caliber, One Model 14 Serial 593006*, 447 F.3d 686, 689 (9th Cir. 2006) ("Congress did not define what it meant by 'readily' or 'restored' in § 5845(b); 'thus, we follow the common practice of consulting dictionary definitions to clarify their ordinary meaning[]'"). This Court has held:

> In its ordinary and popular sense, "penalty" is defined as "disadvantage, loss, or hardship due to some action (as transgression or error)[.]" Webster's Third New International Dictionary (1986) p. 1668.

*See Citizens For Lawful & Effective Attendance Policies v. Sequoia Union High Sch. Dist.*, 1998 WL 305513, at *7 (N.D. Cal. June 4, 1998). Thus, Rover's imposition of a "disadvantage" on Pet Care Providers who reject clients falls within the meaning of "penalized" in section 2777(a)(11).

<u>Second</u>, in the context of a statute regulating private employers that cannot impose "criminal penalties" or "civil penalties" as governments do, Section 2777's use of the word

"penalized" clearly does not narrowly refer to civil or criminal penalties. *Cf. Mississippi Tank Co., Inc.*, 194 NLRB 923, 924 (1972) (holding that "the Company may not penalize employees because of their union membership or activity and that "depriv[ing an employee] of work" constituted an impermissible penalty).

Third, because the statute says "without being penalized *in any form*," the phrase "in any form" means that "penalized" should be broadly construed. *See United States v. Seeger*, 380 U.S. 163, 165 (1965) (broadly construing a statute that included the phrase "in any form"). The phrase "in any form" clearly modifies "penalized." *See United States v. Bass*, 404 U.S. 336, 339-40 (1971) (a modifying phrase in a statute "undeniably applies to at least one antecedent"); *cf. Lockhart v. United States,* 136 S. Ct. 958, 962 (2016) (the "rule of the last antecedent.").

### C. Rover Cannot Prove that Sportsman Was Engaged in an Independently Established Pet Care Business

In its opposition, Rover cites *Garcia v. Border Transp. Grp., LLC*, 28 Cal. App. 5th 558 (2018) but does not specifically address or deny *Garcia*'s holding that "Dynamex makes clear that the question in part C is not whether [the hiring entity] *prohibited* or *prevented* [the worker] from engaging in an independently established business" but rather whether the worker "independently has made the decision to go into business for himself or herself" and has taken "the usual steps to establish and promote his or her independent business—for example, through incorporation, licensure, advertisements, routine offerings to provide services of the independent business to the public or to a number of potential customers, and the like." *Id*. at 572-73 (emphasis in original). *Compare* ECF No. 66 at ECF page 29:2-23 *with* ECF No. 79 at ECF page 27 n.13. Given Rover's admission that Prong C of *Dynamex* "closely resembles the seventh factor of the referral agency exemption," *see* ECF No. 79 at ECF page 27:11-14, *Garcia*'s holding clearly governs the analysis of whether Rover can meet the requirements of Labor Code § 2777(a)(7).

Rather than address *Garcia*, Rover asserts that Sportsman was engaged in an independent business because "Plaintiff provided dog services before joining Rover, and she marketed herself as having 35 years of experience." *See* ECF No. 65 at ECF pages 21:28-

7

22:1. Rover's position lacks merit for the following reasons.

First, for the reasons set forth in Plaintiff's Opposition, the evidence that Rover cites ***does not*** show that Sportsman was ever engaged in an "independently established business or trade" providing pet care services. *See* ECF No. 84 at ECF pages 12:27-13:11.

Second, Rover's evidence does not show that Sportsman made a decision to go into business for herself or took any steps to establish and promote an independent business. *See Garcia*, 28 Cal. App. 5th at 570 (quoting *Dynamex*) ("Part C asks whether the worker "*independently* has made the decision to go into business for himself or herself." This factor can be proven with evidence that the worker has "take[n] the usual steps to establish and promote his or her independent business—for example, through incorporation, licensure, advertisements, routine offerings to provide the services of the independent business to the public or to a number of potential customers, and the like.") (emphasis in original). There is no genuine dispute that Sportsman never independently made a decision to go into business for herself or took any steps to establish and promote an independent pet care business. *See* ECF No. 66-1 ¶¶ 5, 12; Transcript of Depo. of Melanie Sportsman (ECF No. 67-2, at ECF page 13), at 28:6-17 (testifying that she "wanted to work as an employee").

## VI.     ROVER CANNOT MEET ITS BURDEN UNDER THE *DYNAMEX* ABC TEST

Rover does not contest Plaintiff's legal analysis of Rover's burden under *Dynamex*: once Plaintiff has established that a wage order applies to her work, the burden shifts to Rover to prove that Plaintiff was properly classified. *See Dynamex*, 4 Cal. 5th at 957; *Garcia*, 28 Cal. App. 5th at 572-73; *Arshakyan v. X17, Inc.*, 2019 WL 10097455, at *2 (C.D. Cal. June 21, 2019). *Compare* ECF No. 66 at ECF pages 26:5-25 and 30:2-11 with ECF No. 79 at ECF page 15:3-9.

As discussed above, Rover does not deny that a wage order applies to Plaintiff's work. *See supra* at page 1:18-20. Thus, the burden shifts to Rover to prove that Plaintiff was properly classified by proving all prongs of the *Dynamex* ABC Test. For the reasons below, no reasonable trier of fact could find in favor of Rover on prongs B or C of *Dynamex*. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a factual dispute is "genuine" when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party.").

8

**A.      Rover Cannot Establish That "The Worker Performs Work That Is Outside The Usual Course of [Defendant's] Business" ("Prong B")**

**1.      The Evidence Does Not Reflect Genuine Disputes of Material Fact**

Rover asserts that the work performed by Pet Care Providers is outside the scope of its business because it does not offer and sell pet care services, brand itself as a pet care provider, or control the work of the Pet Care Providers. *See* ECF 79 at ECF page 28:7-12. Rover's position lacks merit for the following reasons.

<u>First</u>, the usual course of Rover's business as a pet care service provider cannot reasonably be disputed in light of the evidence that Rover: (1) was founded to compete with kennels; (2) has described itself as "the largest network of dog sitters in the U.S."; (3) could not operate without its Pet Care Providers; and (4) depends on the work of Pet Care Providers to generate revenue. *See* Plaintiff's Motion (ECF No. 66) at ECF page 28:7-18 (citing evidence). Rover does not dispute the authenticity of this evidence or attempt to explain why the evidence fails to prove that Rover's usual course of business is providing pet care services.

<u>Second</u>, Rover proffers its Terms of Service as evidence that it does not "offer and sell" services. *See* ECF No. 79 at ECF page 15:19-27. But Rover does not dispute the authenticity of the images showing how Rover's mobile app and website display the services, *see* ECF No. 66 at ECF pages 8:2-14 ("Rover.com Services"), 15:7-18 ("our full list of services"), or deny that it calls itself "the largest dog walking service in the country." *See* ECF No. 66 at ECF page 8:16-18.

<u>Third</u>, Rover asserts that the marketing materials proffered by Sportsman indicate that Rover is a "marketplace where Pet Owners can find pet care providers to provide those services." *See* ECF No. 79 at ECF page 16:9-18 & n.6. However, Rover never uses the word "marketplace" in the marketing materials. Moreover, Rover identifies only three of the seven commercials as containing material that it believes supports its position, but those three commercials each include statements indicating that Rover provides pet care services. *See, e.g.,* Ex. 44 at 0:01-0:10 ("When there's thunder, we've got cuddles. At Rover.com we're the dog people, ready to be there for your dog, rain or shine."); Ex. 47 at 0:27-0:30 ("Rover.com THE DOG PEOPLE"); Ex. 42 at 0:55 ("Rover THE DOG PEOPLE"). Grasping at straws, Rover seems to suggest that the people in the

9

commercials wearing Rover T-shirts caring for dogs may be pet owners or members of the "shopping public" who have nothing to do with Rover, but no reasonable person would interpret those images as depicting anyone other than the workers whose services Rover is selling.

Similarly, with respect to the six examples of Rover's recruitment pieces that Sportsman proffered, Rover identifies only two (*i.e.*, Exs. 19 and 24) as containing material that it believes supports its position, but those two recruitment pieces each state that the Pet Care Provider position is a "job" with Rover, thus indicating that Rover is in the pet care services business.[1]

Fourth, Rover's assertion regarding its purported lack of control over the Pet Care Providers (which Plaintiff disputes, *see* ECF No. 66 at ECF pages 15-22) is not relevant to the determination of the scope of its business under Prong B. *See Dynamex*, 4 Cal. 5th at 959 (stating that Prong B is "independent of the question of control").

### 2. Rover Does Not Address the Factors Set Forth in *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106 (9th Cir. 2021)

Despite Rover having the burden of proving all prongs of the *Dynamex* ABC Test, Rover does not address the factors set forth in the leading Ninth Circuit case, *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106 (9th Cir. 2021), in which the Ninth Circuit held:

> Analytically, courts have framed the Prong B inquiry in several ways. They have considered ***whether the work of the employee is necessary to or merely incidental to that of the hiring entity***, ***whether the work of the employee is continuously performed for the hiring entity***, and ***what business the hiring entity proclaims to be in***. . . . ***All of these formulations should be considered*** in determining whether Jan-Pro was Plaintiffs' employer . . . .

*Id*. at 1125 (emphasis added).

#### a) "Whether the work of the employee is necessary to or merely incidental to that of the hiring entity" is relevant to Prong B

In *Vazquez*, the Ninth Circuit endorsed a "common test for comparing the businesses of a hiring entity and a putative employee" under Prong B, specifically, to analyze "whether

---

[1] *See* Ex. 24 ("Whether you're looking for a ***summer job*** or a side gig during the school year, ***Rover is an excellent choice for a part-time job for college students***.") (emphasis added); Ex. 19 ("***Become a Rover sitter*** – Make up to $1,000/month watching dogs in your home. . . . If you work from home or you're a student, recent grad, seasonal worker, contract worker, stay at home mom, stay at home dad--or you're just looking for flexible work, gig work, part-time work, seasonal work, ***a summer job*** or work to earn additional money on the side--***Rover could be a great fit for you***.") (emphasis added).

10

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
*Sportsman v. A Place for Rover, Inc. et al.*, Case No. 3:19-cv-03053-WHO

the putative employees were 'necessary' or 'incidental' to the hiring entity's business. In some cases, this inquiry can be conducted through a common-sense observation of the nature of the businesses. . . . In other cases, courts view the 'necessary' versus 'incidental' distinction in more economic terms." *Id.* at 1125-26 (citing cases). The Ninth Circuit applied this test to the defendant in *Vazquez*, Jan-Pro, and reasoned as follows:

> First, Jan-Pro's business ultimately depends on someone performing the cleaning. That work is performed solely by the unit franchisees. Thus, Jan-Pro fundamentally depends on a supply of unit franchisees for its business (and, accordingly, requires its regional master franchisees to sell a minimum number of unit franchises). Second, Jan-Pro earns a percentage of the payments that customers pay for cleaning services. Thus, unlike the medallion owners in *Parks Cab*, Jan-Pro is not indifferent to how much work unit franchisees do or how well they perform that work. It is not simply renting out its trademark and goodwill to independent entities that could use it to perform cleaning services. Rather, Jan-Pro is actively and continuously profiting from the performance of those cleaning services as they are being performed.

*Id.* at 1126.

Here, there can be no reasonable dispute that the Pet Care Providers are "necessary" to Rover's business. <u>First</u>, Rover has stated that Pet Care Providers are essential to its business:

> Pet sitters and dog walkers are ***the cornerstone of our business***. Without their passion, hard work, and devotion to providing amazing pet care, ***we wouldn't be here***.

*See* Tidrick Dec. Ex. 37 ("What are the service fees?") (ECF No. 66-2 at ECF page 218) (emphasis added); Stipulation Regarding Authenticity of Documents (ECF No. 61), ¶ 46.

<u>Second</u>, like Jan-Pro, Rover's "business ultimately depends" on people performing the pet care services. Rover does not deny that it: (1) generates revenue exclusively from the services performed by the Pet Care Providers; and (2) recognizes as revenue the payments made by Pet Owners for the services provided by the Pet Care Providers. *See* ECF No. 66 at ECF page 9:1-15.

<u>Third</u>, like Jan-Pro, Rover is "not indifferent to how much work" is performed or "how well" the work is performed. As discussed above, Rover generates its revenue from the work performed by the Pet Care Providers. Moreover, Rover is so concerned about how well the work is performed that it: (1) provides Pet Owners with the "Rover Guarantee" to ensure that when a Pet Care Provider is "unable or unwilling to pay for costs arising from damage or

11

injury attributable to his or her negligence," Rover will make up the difference, *see* ECF No. 66 at ECF page 14:14-21 (citing evidence); (2) has a performance scoring system that purports to provide the Pet Care Provider with a "sense of how [he or she is] performing compared to other" Pet Care Providers, *see* ECF No. 66 at ECF page 16:13-23 (citing evidence); (3) has a detailed reporting system so that Pet Care Providers can inform Rover and the Pet Owners about the work that they are performing *see* ECF No. 66 at ECF pages 20:26-22:5 (citing evidence); and (4) promises that if a Pet Care Provider has failed to provide services in accordance with Rover's guidelines and policies, Rover will issue a full or partial refund to the Pet Owner. *See* ECF No. 66 at ECF page 14:24–27.

### b) "Whether the work of the employee is continuously performed for the hiring entity" is relevant to Prong B

The Ninth Circuit also held: "In analyzing Prong B, some courts have also looked to whether the services of the putative employee are continuously used by the hiring entity. This approach also helps capture the distinction between independent contractor arrangements designed to evade requirements placed on employers and traditional contractors like electricians and plumbers, who perform incidental services for otherwise unrelated businesses." *Vazquez*, 986 F.3d at 1126. There is no reasonable dispute that the Pet Care Providers' services are "continuously" used by Rover. The Pet Care Providers are not like electricians or plumbers who perform incidental services for otherwise unrelated businesses.

### c) "What business the hiring entity proclaims to be in" is relevant to Prong B

The Ninth Circuit also held that "how the business describes itself" is relevant in determining the usual course of a hiring entity's business. *Id*. at 1127.

In light of Rover's own statements about its business, as well as Rover's marketing efforts, *see supra* at page 9, there can be no reasonable dispute that Rover has proclaimed itself to be in the pet care business.

Rover's assertion that it is not in the pet care business but is merely a "platform" is similar to Jan-Pro's assertion "that it is in the business of 'franchising' rather than cleaning." *Vazquez*, 986 F.3d at 1127, which the Ninth Circuit viewed skeptically:

12

Various courts and arbitrators, however, have been skeptical of such characterizations, especially in the cleaning franchise industry. This skepticism was pointedly expressed by a district court in Massachusetts:

> [F]ranchising is not in itself a business, rather a company is in business of selling goods or services and uses the franchise model as a means of distributing the goods or services to the final end user without acquiring significant distribution costs. Describing franchising as a business in itself, as Coverall seeks to do, sounds vaguely like a description of a modified Ponzi scheme—a company that does not earn money from the sale of goods and services, but from taking in more money from unwitting franchisees to make payments to previous franchisees.

*Awuah*, 707 F. Supp.2d at 84; *see also Da Costa*, 2017 WL 4817349, at *6 ("Vanguard cannot reasonably maintain that commercial cleaning is not part of its ordinary course of business to avoid classifying its workers as employees while simultaneously touting that it is 'a leader in the commercial cleaning industry.'"); *Riberio*, AAA No. 01 15 0003 8637, at *29 (Aug. 23, 2016).

*Id.* at 1127. So too here, being a "platform" is not in itself a business; rather, Rover is in the business of pet care, and its "platform" is a model for delivering the services. Rover cannot reasonably maintain that it is not in the pet care business, particularly when it declares that "[p]et sitters and dog walkers are ***the cornerstone of our business***" and touts itself as "the largest dog walking service in the country." *See supra* at pages 9 and 11.

### 3. Rover's CEO Does Not Deny that Rover Is the "Uber for Dogs"

Rover attempts to distinguish its business model from Uber's business model. *See* ECF No. 79 at ECF pages 28:23–30:19. However, when Rover's CEO was asked what he thinks of Rover being compared to Uber, Rover's CEO responded: "I mean, I think it's fine. I mean, we've been called the AirBNB for dogs, the Uber for dogs, you know, I think it's a decent connotation although most people, once they use it, they realize there's a very different experience, it's a richer experience with the service providers." *See* Tidrick Dec. (ECF No. 66-2) ¶ 12 & Ex. 17 (video of interview of Rover's CEO, Aaron Easterly), at 02:08-02:30.

### B. Rover Cannot Establish That Plaintiff "Is Customarily Engaged in an Independently Established Trade, Occupation, Or Business of The Same Nature as The Work Performed" ("Prong C")

For the reasons set forth above and in Plaintiff's motion, Rover cannot establish that Sportsman "is customarily engaged in an independently established trade, occupation or business of the same nature as the work performed." *See supra* at pages 7-8; ECF Nos. 66, 66-1 and 66-2.

13

## VII.   ROVER'S EVIDENCE REGARDING MILLER IS IRRELEVANT

For the reasons set forth in Plaintiff's Opposition, Rover's evidence about the former named Plaintiff, Erika Miller, is not relevant. *See* ECF No. 84 at ECF page 23:10-28.

## VIII.   THE QUESTIONS WHETHER PET CARE PROVIDERS ARE "PERMITTED" TO RUN THEIR OWN SEPARATELY ESTABLISHED BUSINESSES, OR WHETHER ANY IN FACT DO SO, ARE NOT RELEVANT

Rover argues: "It is undisputed that Pet Care Providers are permitted to, and do, run their own businesses." ECF No. 29 at ECF page 27:21-22. This is a red herring.

First, the question whether any Pet Care Provider other than plaintiff Melanie Sportsman has their own separately established business is not relevant for either side's motion for summary judgment because the question at this stage is whether Rover misclassified Melanie Sportsman specifically. *See* ECF No. 84 at ECF pages 6:14-7:2 (section entitled "Relevant Procedural History); *see also* ECF No. 49 at ECF page 7:10-17 (Rover's position that at this stage of the case, the focus should be on the named plaintiff).

Second, the question whether a Pet Care Provider is "permitted" to run their own business is not relevant to prong C of *Dynamex*. *See Garcia*, 28 Cal. App. 5th at 572-73 (citing *Dynamex*, 4 Cal. 5th at 962). *See also* ECF No. 66 at ECF pages 29:2-30:1.

Third, Rover's assertion that Sportsman must prove that she is "similarly situated" to other Pet Care Providers is wrong. Rover relies exclusively on a couple phrases in *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032 (N.D. Cal. 2014). That case does not stand for the proposition that a plaintiff prosecuting a PAGA action must prove that she is "similarly situated" to other workers. At most, the quoted language is dicta. Moreover, the phrase "similarly situated" means different things in different contexts. In a case such as this—a law enforcement action brought pursuant PAGA—there is no requirement that the plaintiff be "typical." "[U]nlike Rule 23(a), PAGA contains no requirements of numerosity, commonality, or typicality." *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 851 (9th Cir. 2020) (quoting *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014)). This is because, *inter alia*, "[i]n contrast [to class actions], PAGA suits 'primarily seek to vindicate the public interest in enforcement of California's labor law.'" *Canela*, 971 F.3d at 852. Notwithstanding

14

the foregoing, Plaintiff submits that she is in fact similarly situated to the workers covered by this PAGA action because she worked as a Pet Care Provider for Rover, and she is in fact typical of the people who work in that position.

## IX. THE COURT SHOULD DISREGARD ROVER'S ARGUMENT ABOUT AN OPINION LETTER OF THE U.S. DEPARTMENT OF LABOR

In a footnote, Rover cites an opinion letter of the U.S. Department of Labor issued during the Trump Administration. *See* ECF No. 79 at ECF page 17 n.8. The letter is irrelevant and non-binding, and the Court should disregard Rover's argument about it.

First, the analysis of whether a worker has been misclassified is different under the FLSA (and more lenient toward employers) than under *Dynamex*. *See Haitayan v. 7-Eleven, Inc.*, 2018 WL 6264995, at *2 (C.D. Cal. Sept. 5, 2018); *Dynamex*, 4 Cal. 5th at 958 n.25.

Second, the letter is non-binding. *See Weaver v. City & Cty. of San Francisco*, 2006 WL 3751425, at *1 (N.D. Cal. Dec. 19, 2006).

Third, while Rover may favor the Trump Administration's opinion regarding worker misclassification, the Biden Administration has already reversed course. On January 20, 2021, the Biden Administration issued a "Memorandum for the Heads of Executive Departments and Agencies" entitled "Regulatory Freeze Pending Review" published in the Federal Register at 86 FR 7424-01, 2021 WL 274887. That froze the Trump Administration's new independent contractor rule that had been scheduled to take effect March 8, 2021. *See* 86 FR 1168-01, 2021 WL 51656. That action was the first step in the Biden Administration's commitment to establishing a federal standard regarding worker classification modeled on California's ABC test. *See* Second Supp. Dec. of Steven Tidrick, filed herewith, Ex. 55.

Fourth, this Court can disregard Rover's argument as it is exclusively in a footnote. *See Cheever v. Huawei Device USA, Inc*., 2019 WL 8883942, at *3 (N.D. Cal. Dec. 4, 2019).

## X. CONCLUSION

Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Summary Judgment and/or Partial Summary Judgment (ECF No. 66) and deny Defendant's Motion for Summary Judgment (ECF No. 65).

15

DATED: March 17, 2021

Respectfully submitted,

THE TIDRICK LAW FIRM LLP

By:     /s/ Steven G. Tidrick

STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662

Counsel for Plaintiff Melanie Sportsman

16

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
*Sportsman v. A Place for Rover, Inc. et al.*, Case No. 3:19-cv-03053-WHO