1  THE TIDRICK LAW FIRM LLP
   STEVEN G. TIDRICK, SBN 224760
2  JOEL B. YOUNG, SBN 236662
   1300 Clay Street, Suite 600
3  Oakland, California  94612
   Telephone:  (510) 788-5100
4  Facsimile:  (510) 291-3226
   E-mail:    sgt@tidricklaw.com
5  E-mail:    jby@tidricklaw.com

6  Attorneys for Individual and Representative
   Plaintiff MELANIE SPORTSMAN

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10  MELANIE SPORTSMAN,                    Case No. 3:19-cv-03053-WHO

11              Plaintiff,                **PLAINTIFF'S NOTICE OF MOTION
                                          AND MOTION FOR PRELIMINARY
12       v.                               APPROVAL OF CLASS SETTLEMENT;
                                          MEMORANDUM OF POINTS AND
13  A PLACE FOR ROVER, INC. d/b/a Rover *et*   AUTHORITIES**
    *al.*,
14                                        Date:      March 15, 2023
                Defendants.               Time:      2:00 p.m.
15                                        Location:  Courtroom 2 – 17th Floor
                                                     San Francisco Courthouse
16                                                   450 Golden Gate Avenue
                                                     San Francisco, California
17
                                          Judge:     The Honorable William H. Orrick
18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

NOTICE OF MOTION AND MOTION .................................................................. 1

MEMORANDUM OF POINTS & AUTHORITIES ............................................... 2

I.    INTRODUCTION AND SUMMARY ................................................... 2

II.    NATURE OF CASE AND PROCEDURAL HISTORY ................................... 3

    A.  Summary of the Action .................................................................... 3

    B.  Settlement Negotiations and Settlement ................................................ 5

    C.  Plaintiff's Counsel's Position ............................................................ 6

    D.  Defendant's Position ...................................................................... 6

III.    KEY TERMS OF PROPOSED CLASS SETTLEMENT ................................ 6

    A.  Gross Cash Payment of $18 Million ................................................... 6

    B.  Prospective Relief Conservatively Valued at $5.5 Million ......................... 7

    C.  Class Definition ........................................................................... 8

    D.  PAGA Group Definition ................................................................. 8

    E.  Distribution of the Settlement Funds .................................................. 8

    F.  Releases of Claims ...................................................................... 11

    G.  Class Notice .............................................................................. 11

    H.  Proposed Procedures for Final Approval of Settlement ........................... 12

IV.    LEGAL STANDARDS FOR CERTIFICATION OF SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT ................... 13

    A.  Class Claims Settled Under Rule 23 .................................................. 13

    B.  Standards for Class Settlement of FLSA Claims ................................... 14

V.    THE COURT SHOULD CERTIFY THE PROPOSED COLLECTIVE/CLASS FOR SETTLEMENT PURPOSES AND GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT ........................................ 14

    A.  Conditional Certification of the Class for Settlement Purposes Is Warranted ................................................................................... 14

        1.  The Class Satisfies Rule 23(a) and 23(b)(3) ..................................... 15

        2.  The FLSA Claims Warrant Certification as a Collective Action ...... 18

i

B.  The Proposed Settlement Is Fair, Reasonable, and Adequate ...................... 18

    1.  The Class and Collective Settlement Is Fair...................................... 19

    2.  The Settlement Is Reasonable and Adequate.................................... 22

    3.  The PAGA Provisions Are Reasonable  ........................................... 28

VI.     THE COURT SHOULD CONDITIONALLY APPROVE THE SETTLEMENT AGREEMENT, RELATED FORMS, AND PROPOSED PROCEDURES FOR PROVIDING NOTICE TO THE CLASS, AND SHOULD SET A FINAL "FAIRNESS" HEARING AND BRIEFING SCHEDULE ................................. 31

VII.    CONCLUSION.................................................................................................. 32

ii

**TABLE OF AUTHORITIES**

<u>**CASES**</u>                                                                                              <u>**PAGE(S)**</u>

*Acosta v. Equifax Info. Servs. LLC*,
243 F.R.D. 377 (C.D. Cal. 2007) ........................................................................................    19

*Ahmed v. Beverly Health & Rehab. Servs*.,
No. 2:16-1747 WBS KJN, 2018 U.S. Dist. LEXIS 69926 (E.D. Cal. Apr. 24, 2018) ........    28

*Alberto* v. *GMRI, Inc.,*
252 F.R.D. 652 (E.D. Cal. 2008) ……………………………………………………………....   13, 15

*Almanzar v. Home Depot U.S.A., Inc*.,
No. 2:20-cv-0699-KJN, 2022 U.S. Dist. LEXIS 127724 (E.D. Cal. July 18, 2022) ...........    32

*Amchem Prods. Inc.* v. *Windsor,*
521 U.S. 591, 117 S. Ct. 2231 (1997) ..................................................................................   13, 17

*Baas v. Dollar Tree Stores, Inc.,*
No. C 07-03108 JSW, 2007 U.S. Dist. LEXIS 65979 (N.D. Cal. Aug. 29, 2007) ..............    14

*Beltran v. Olam Spices & Vegetables, Inc.*,
No. 1:18-cv-01676, 2021 U.S. Dist. LEXIS 105685,
2021 WL 2284465 (E.D. Cal. June 4, 2021) ......................................................................   20, 21

*Cavazos v. Salas Concrete, Inc.,*
1:19-cv-00062-DAD-EPG, 2022 U.S. Dist. LEXIS 30201 (E.D. Cal. Feb. 18, 2022) ........    11

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ...............................................................................................   22, 27

*Class Plaintiffs* v. *City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) ..............................................................................................    13

*Culley v. Lincare Inc*.,
236 F. Supp. 3d 1184 (E.D. Cal. 2017) ................................................................................    28

*del Toro Lopez v. Uber Techs., Inc*.,
17-cv-06255-YGR, 2018 U.S. Dist. LEXIS 196430,
2018 WL 5982506 (N.D. Cal. Nov. 14, 2018) .....................................................................    28

*Fleming v. Covidien, Inc.*
No. ED CV10-01487 RGK (OPx), 2011 U.S. Dist. LEXIS 154590,
2011 WL 7563047 (C.D. Cal. Aug. 12, 2011) ....................................................................   24, 30

*Franco v. Ruiz Food Prods., Inc.*,
No. 1:10-cv-02354-SKO, 2012 U.S. Dist. LEXIS 169057 (E.D. Cal. Nov. 27, 2012) ........    28

*Gant v. ALDI, Inc.*,
CV19-03109 JAK, 2021 U.S. Dist. LEXIS 161384 (C.D. Cal. Aug. 25, 2021) .................    11

*Gould v. Rosetta Stone, Ltd.,*
No. C 11-01283 SBA, 2013 U.S. Dist. LEXIS 138921 (N.D. Cal. 2013) ...........................    21

iii

*Hanlon* v. *Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)............................................................................ 13, 15, 16, 17

*Holden v. Burlington N., Inc.*,
665 F. Supp. 1398 (D. Minn. 1987) ................................................................................ 3

*Hopson v. Hanesbrands Inc.*,
No. CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) ............... 29

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .......................................................................................... 22

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ..................................................................................... 19, 20

*In re M.L. Stern Overtime Litig.*,
No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650,
2009 WL 995864 (S.D. Cal. Apr. 13, 2009) ...................................................................... 29

*In re Netflix Privacy Litig.*,
No. 5:11-CV-00379 EJD, 2013 WL 1120801,
2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013) ................................................. 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
986 F. Supp. 2d 207 (E.D.N.Y. 2013) ............................................................................. 22

*In re Tableware Antitrust Litigation*
484 F. Supp. 2d 1078 (N.D. Cal. 2007)................................................................. 22, 23, 25

*In re Toys R Us-Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) .................................................................................... 22

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
571 F.3d 953 (9th Cir. 2009) .......................................................................................... 17

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
527 F. Supp. 2d 1053 (N.D. Cal. 2007) ................................................................ 15, 16, 17, 18

*Iskanian v. CLS Transp. Los Angeles, LLC*,
59 Cal. 4th 348 (Cal. 2014) ....................................................................................... 23, 30

*Jd Tamimi v. Sgs N. Am.*,
SACV 19-965 PSG, 2021 U.S. Dist. LEXIS 148319 (C.D. Cal. Mar. 2, 2021) ................. 12, 29

*Johnson v. Serenity Transp., Inc.*,
No. 15-CV-02004-JSC, 2021 WL 3081091 (N.D. Cal. July 21, 2021) ................................ 3

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......................................................................................... 20

*Lefevre v. Five Star Quality Care, Inc.*,
5:15-cv-01305-VAP-SPx, 2021 U.S. Dist. LEXIS 111320 (C.D. Cal. Jan. 7, 2021) .......... 12

*Linney* v. *Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ........................................................................................ 27

iv

*Local Joint Exec. Bd. v. Las Vegas Sands, Inc.,*
244 F.3d 1152 (9th Cir. 2001) ....................................................................................17, 18, 27

*Luz Bautista-Perez v. Juul Labs, Inc.*,
No. 20-CV-01613-HSG, 2022 WL 307942 (N.D. Cal. Feb. 2, 2022) ..................................     3

*Magadia v. Wal-Mart Assocs., Inc.*
384 F. Supp. 3d 1058 (N.D. Cal. 2019)     ...........................................................................     30

*Makabi v. Gedalia,*
2016 WL 815937 (Cal. Ct. App. Mar. 2, 2016) ....................................................................     30

*Martin v. Legacy Supply Chain Servs. II, Inc.*,
No. 3:16-cv-02471-WQH-BLM, 2018 U.S. Dist. LEXIS 27845,
2018 WL 828131 (S.D. Cal. Feb. 12, 2018) ........................................................................     28

*Millan v. Cascade Water Servs.*,
310 F.R.D. 593 (E.D. Cal. 2015) ..........................................................................................     21

*Miramontes v. United States Healthworks*,
CV 15-05689 SJO (AFMx), 2017 U.S. Dist. LEXIS 235085 (C.D. Cal. Sep. 5, 2017) .......     30

*Molski v. Gleich,*
318 F.3d 937 (9th Cir. 2003) ................................................................................................     19

*Moniz v. Adecco USA, Inc.*,
72 Cal. App. 5th 56 (2021) ...................................................................................................     12

*Moppin v. Los Robles Reg'l Med. Ctr.*,
EDCV 15-1551 JGB (DTBx), 2016 WL 7479380 (C.D. Cal. Sept. 12, 2016) ...................     30

*Nikmanesh v. Wal-Mart Stores Inc.*,
SACV 15-0202-AG(JCGx), 2016 WL 6236446 (C.D. Cal. Oct. 17, 2016) ........................     29

*Nordstrom Comm'n Cases*,
186 Cal. App. 4th 576 (2010) ..............................................................................................     29

*Quintero* v. *Mulberry Thai Silks, Inc.*,
No. 08-2294, 28 I.E.R. Cas. (BNA) 607,
2008 U.S. Dist. LEXIS 84976 (N.D. Cal. Oct. 22, 2008) ....................................................     15

*O'Connor v. Uber Techs., Inc.*,
201 F. Supp. 3d 1110 (N.D. Cal. 2016) ...............................................................................     29

*O'Connor v. Uber Techs., Inc.*,
No. 13-cv-03826-EMC, 2019 U.S. Dist. LEXIS 54608 (N.D. Cal. Mar. 29, 2019) ...........     26

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (1981) ........................................................................................14, 22, 26, 27

*Ortiz v. Genco, Inc.*,
No. 4:16-cv-04601-YGR, 2019 U.S. Dist. LEXIS 70625,
2019 WL 1780577 (N.D. Cal. Apr. 23, 2019) .....................................................................     31

*Pokorny v. Quixtar, Inc.*,
No. C 07-0201 SC, 2013 WL 3790896,
2013 U.S. Dist. LEXIS 100791 (N.D. Cal. July 18, 2013) ................................................... 20

*Reed v. 1-800 Contacts, Inc.*,
No. 12-cv-02359 JM (BGS), 2014 U.S. Dist. LEXIS 255,
2014 WL 29011 (S.D. Cal. Jan. 2, 2014) .............................................................................. 22

*Robinson v. Southern Counties Oil Co.*,
53 Cal. App. 5th 476 (2020) ................................................................................................. 12

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ................................................................................................ 21

*Saucillo v. Peck*,
25 F.4th 1118 (9th Cir. 2022) ......................................................................................... 12, 31

*Sportsman v. A Place for Rover, Inc.*,
537 F. Supp. 3d 1081 (N.D. Cal. 2021) .................................................................................. 4

*Staton* v. *Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ………………………………………………………………13, 16, 20

*Stevens v. Safeway Inc.*,
CV 05-01988 MMM (SHx), 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) ...... 14

*Strube v. Am. Equity Investment Life Ins. Co.*,
226 F.R.D. 688 (M.D. Fla. 2005) ......................................................................................... 22

*Stuart v. RadioShack Corp.*,
2010 U.S. Dist. LEXIS 92067 (N.D. Cal. Aug. 9, 2010) ..................................................... 30

*Taylor v. Interstate Grp., LLC*,
No. 15-cv-05462-YGR, 2016 U.S. Dist. LEXIS 29673,
2016 WL 861020 (N.D. Cal. Mar. 7, 2016) ......................................................................... 28

*Thorpe v. Abbott Labs., Inc.*,
534 F. Supp. 2d 1120 (N.D. Cal. 2008) ................................................................................ 14

*Thurman v. Bayshore Transit Mgmt., Inc.*
203 Cal.App.4th 1112 (2012) .......................................................................................... 24, 30

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ................................................................................................ 27

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ...................................................................................... 21

*Viceral v. Mistras Group, Inc.*,
Case No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759 (N.D. Cal. Oct. 11, 2016) .. 28

*Viking River Cruises, Inc. v. Moriana*,
142 S. Ct. 1906 (2022) .................................................................................................... 23, 24

vi

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMO. OF POINTS AND AUTHORITIES – *Sportsman v. A Place for Rover, Inc. et al.*, Case No. 3:19-cv-03053-WHO

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ........................................................................... 20

*Wang v. Chinese Daily News, Inc.*,
231 F.R.D. 602 (C.D. Cal. 2005) …………………………………………………..16, 17, 18

*Weeks v. Kellogg Co.*,
No. CV 09-08102, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) .................. 20

*Weinstein v. Mortg. Contracting Servs., LLC*,
EDCV 14-02521 JGB (SPx), 2018 U.S. Dist. LEXIS 182718 (C.D. Cal. Oct. 23, 2018) ... 30, 31

*Williams v. Brinderson Constructors, Inc.*,
No. 2:15-cv-02474 MWF (AGRx), 2017 U.S. Dist. LEXIS 65911,
2017 WL 490901 (C.D. Cal. Feb. 6, 2017) ........................................................... 28

*Young v. Katz*,
447 F.2d 431 (5th Cir. 1971) ............................................................................. 26

*Yue Zhou v. Wang's Rest.*,
C 05-0279 PVT, 2007 U.S. Dist. LEXIS 60683 (N.D. Cal. Aug. 8, 2007) ....................... 14

STATUTES

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) .................................... *passim*

28 U.S.C. § 1715.............................................................................................. 2

Cal. Labor Code Private Attorneys General Act of 2004, Labor Code § 2698 *et seq.* ......... *passim*

Cal. Labor Code § 203...................................................................................... 22

Cal. Labor Code § 2699.................................................................................. 24, 30

Cal. Labor Code § 2775..................................................................................... 4

Cal. Labor Code § 2777 ("Referral Agency Exemption") …………………………4, 8, 24, 25, 26

RULES

Fed. R. Civ. P. 23............................................................................................ *passim*

OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION (Third) (1997) .............................................. 3

MANUAL FOR COMPLEX LITIGATION (Fourth) (2004) ……………………………..13, 18, 19, 27

1

NEWBERG ON CLASS ACTIONS ............................................................................. 3, 27

2

PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS (N.D. Cal. Aug. 4, 2022) ....... 31

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMO. OF POINTS AND AUTHORITIES – *Sportsman v. A Place for Rover, Inc. et al.*, Case No. 3:19-cv-03053-WHO

**NOTICE OF MOTION AND MOTION**

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on March 15, 2023, at 2:00 p.m., or as soon thereafter as the matter may be heard, with or without oral argument at the Court's discretion pursuant to L.R. 7-1(b), in Courtroom 2, 17th Floor, of the U.S. District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, via Zoom videoconference, the Honorable William H. Orrick presiding, Plaintiff Melanie Sportsman ("Plaintiff" or "Sportsman"), will and hereby does move the Court, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and Rule 23(c) and (e) of the Federal Rules of Civil Procedure ("Rule 23"), for the following Orders:

1.      Preliminary approval of the Class, Collective, and Representative Action Settlement Agreement and Release of Claims ("Settlement Agreement," "Settlement," or "Agreement"), filed herewith;

2.      Certification of the Class as defined in the Settlement Agreement for settlement purposes only pursuant to Rule 23 and 29 U.S.C. § 216(b);

3.      Appointment of Class Counsel, Steven G. Tidrick, Esq. and Joel Young, Esq. of The Tidrick Law Firm LLP as Settlement Class Counsel, and Plaintiff Melanie Sportsman as the Settlement Class Representative;

4.      Appointment of Simpluris, Inc. ("Simpluris") as the settlement administrator, and an order approving the notice to be e-mailed and the summary postcard notice to be mailed via U.S. Mail, *see* Settlement Exs. B and C, and directing the settlement administrator to distribute the class notice and summary postcard pursuant to the procedures set forth in the Settlement Agreement;

5.      An order that the deadline for objections, and likewise the deadline for opting out of the settlement, shall be sixty (60) calendar days from Simpluris's deadline to e-mail the Notice and mail the summary postcards, and that if the 60th day falls on a Sunday or court holiday, the deadline shall be the next business day that is not a Sunday or court holiday;

6.      An order that the deadline for Plaintiff to file the motion for service award and

attorneys' fees and costs shall be fifteen (15) days before the deadline for objections;

7.    An order setting the deadline for Plaintiff to file the motion for final approval of the settlement agreement for a date approximately 104 days following the preliminary approval of the settlement agreement (which would be 14 days after the deadline for objections);

8.    An order setting the date for the final approval hearing approximately 125 days following the preliminary approval of the settlement agreement (which would be 21 days after the filing of the motion for final approval); and

9.    An order that the settlement is deemed filed as of the date of preliminary approval for purposes of providing notice to the appropriate officials pursuant to 28 U.S.C. § 1715.

DATED: February 7, 2023                  THE TIDRICK LAW FIRM LLP

                                         By:    /s/ Steven G. Tidrick
                                         _____
                                         STEVEN G. TIDRICK, SBN 224760
                                         JOEL B. YOUNG, SBN 236662

                                         Attorneys for Individual and Representative
                                         Plaintiff MELANIE SPORTSMAN

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND SUMMARY

Through this motion, Plaintiff seeks (a) preliminary approval of a proposed class and California Labor Code Private Attorneys' General Act of 2004 ("PAGA") settlement conservatively valued at $23.5 million (with $18 million in direct, non-reversionary payments, as well as prospective relief valued conservatively by Plaintiff's expert at $5.5 million in benefit over five years), and (b) certification of a class and collective action for settlement purposes. The settlement provides for the automatic mailing of checks to about 103,537 people, which includes about 87,758 people who are members of the class and the PAGA Group, and an additional 15,779 people who are members of the PAGA Group only.

Plaintiff also seeks approval of the form of notice to the class, and proposed procedures and time frames regarding notice, requests for exclusion, and objections. Further, Plaintiff requests that the Court set a date for a final approval hearing, along with related deadlines.

2

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMO. OF POINTS AND AUTHORITIES – *Sportsman v. A Place for Rover, Inc. et al.*, Case No. 3:19-cv-03053-WHO

Given that this is the preliminary approval stage, Plaintiff seeks the Court's approval to notify members of the class about the proposed settlement and move on to the final approval hearing. Because the final approval hearing will provide the Court with another opportunity to review the settlement (after receiving any responses of class members), preliminary approval should be granted so long as the proposed settlement is "within the range of possible approval." A. CONTE & H.B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11.25 (3d ed. 2006) (quoting MANUAL FOR COMPLEX LITIGATION (Third) § 30.41 (1997)); *Holden v. Burlington N., Inc.,* 665 F. Supp. 1398, 1402 (D. Minn. 1987). Indeed, at the preliminary approval stage, a class "settlement need only be potentially fair." *Johnson v. Serenity Transp., Inc*., 2021 WL 3081091, at *4 (N.D. Cal. July 21, 2021). "Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval." *Luz Bautista-Perez v. Juul Labs*, *Inc*., 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022).

This Settlement easily meets that standard. The Settlement was reached through arm's-length bargaining by experienced counsel with the assistance of experienced mediators. The Settlement will result in significant financial benefit to the class members. The notice clearly apprises the class members of their rights to object to or opt out of the settlement. Plaintiff submits that the proposed Settlement warrants preliminary approval and notice to the class.

## II. NATURE OF CASE AND PROCEDURAL HISTORY

### A. Summary of the Action

On November 20, 2018, Erika Miller ("Miller") commenced a lawsuit under PAGA entitled *Erika Miller v. A Place for Rover, Inc. d/b/a Rover*, Case No. CGC-18-571480, in the Superior Court for the County of San Francisco (the "Action"). On December 12, 2018, Miller filed an amended complaint. On June 3, 2019, Defendant A Place for Rover, Inc. d/b/a Rover ("Defendant" or "Rover") removed the Action to the United States District Court for the Northern District of California (the "Court"), which assigned the Action case number 19-cv-03053-WHO.

3

Plaintiff's counsel filed notice letters with the California Labor and Workforce Development Agency ("LWDA") dated June 11, 2018, and October 1, 2018, on behalf of Miller (LWDA-CM-545679-18) and dated September 19, 2019, on behalf of Sportsman, Kimberly Hedge, Shane Hanstein, and Sharona Roesgen (LWDA-CM-746823-19).

On November 6, 2019, Miller moved to substitute Sportsman as the PAGA representative plaintiff in the Action. ECF No. 45. The Court granted that motion on May 12, 2020, at which time Miller was removed as a party to the Action. ECF No. 58.

Sportsman alleges that Rover misclassified her, and other similarly situated Pet Care Providers who use Rover's platform in California to book their services, as independent contractors when allegedly they should have been classified as employees. Sportsman alleges, among other things, that Rover willfully misclassified her and failed to pay the minimum wage, pay overtime, provide meal and rest periods, reimburse business expenses, timely pay wages, secure workers' compensation, afford paid sick days, pay all wages due at the time of separation, and provide regular wage statements as required for employees under the California Labor Code. Rover denies all claims and contends it properly classified Pet Care Providers under both the ABC Test, Labor Code § 2775, and the Referral Agency Exemption, Labor Code § 2777.

On May 6, 2021, the Court granted Rover's motion for summary judgment, finding that Rover satisfies the ABC Test for independent contractor status and confirming Rover properly classified Sportsman and others. Apart from the Court's holding on the ABC Test, the Court also stated the following preliminary conclusion with respect to Rover's argument concerning the Referral Agency Exemption: "While Rover meets most of the criteria for the referral agency exemption based on the evidence of record, it does not appear to meet criterion 10 because Rover deducts a service fee (20%) from the Pet Owner's payment to Pet Care Providers. . . . Criterion 10 would have been satisfied if, instead, Rover made the Pet Owners client shoulder the 20% fee by charging them an extra $6.60 on top of the $33 set by the Pet Care Provider." *Sportsman v. A Place for Rover, Inc.*, 537 F. Supp. 3d 1081, 1090 (N.D. Cal. 2021) (ECF No. 93 at 8).

On May 28, 2021, Sportsman filed a notice of appeal of the Court's decision (the "Appeal") to the United States Court of Appeals for the Ninth Circuit. ECF No. 95. Following

briefing, a Ninth Circuit panel heard oral argument in the Appeal on August 29, 2022. After that oral argument, but before any decision on the merits, the Parties agreed to mediate.

**B. Settlement Negotiations and Settlement**

On September 27, 2022, the Parties negotiated through their counsel at a mediation with experienced and reputable mediator Michael Loeb, Esq. No settlement was reached.

On October 19, 2022, the Parties negotiated through their counsel at a second mediation with another experienced and reputable mediator, Antonio Piazza, Esq. The Parties reached the key terms of the Settlement through an arm's length negotiation assisted by Mr. Piazza.

Pursuant to a stipulation by the parties, and without ruling on the merits of the case, the Ninth Circuit remanded the case to this Court to entertain a motion to approve the Settlement.

As the Settlement reflects, the Parties desire to settle the Action on a class-wide basis under the terms set forth in the Settlement Agreement. Pursuant to the Settlement, Plaintiff filed a Second Amended Collective and Class Action Complaint on January 13, 2023. ECF No. 115.

During the litigation of the Action, mediation, and settlement communications, the parties engaged in formal discovery related to Plaintiff's claims and Rover's defenses, which included depositions of Sportsman, Miller, and Rover's Rule 30(b)(6) witness, Derek Chang, formal document productions, as well as informal exchange of significant facts, documents, and information regarding the plaintiff and other allegedly aggrieved employees and Class Members' working conditions, compensation, and data regarding numbers of Pet Care Providers and numbers of days and weeks worked, before agreeing to the terms of the settlement.

Discussions between counsel as well as the respective investigation and evaluation of the claims and defenses, as well as the substance of the parties' cross-motions for summary judgment, the Court's order on those motions, and Plaintiff's appeal to the Ninth Circuit, have permitted both sides to assess the relative merits of the claims and the defenses to those claims. The above-described investigation and evaluation are sufficient to assess the merits of both sides' positions and to reach a compromise on a fair and equitable basis.

All of the terms of this settlement are contained within the Settlement Agreement. At all times, the settlement negotiations have been non-collusive, adversarial, and at arm's length.

1    **C. Plaintiff's Counsel's Position**

2          Based on their own independent investigations and evaluations, Plaintiff's Counsel are of

3    the opinion that the Settlement with Defendant for the consideration and terms set forth herein,

4    considering the representative and class claims, and the risk of loss, is fair, reasonable, and

5    adequate in light of all known facts and circumstances, and is in the best interests of the Class.

6    Plaintiff's Counsel are also of the opinion that the total consideration set forth in the Settlement

7    Agreement is adequate in light of the uncertainties surrounding the risk of further litigation, and

8    the defenses that have been asserted or could be asserted.

9          Plaintiff's Counsel have weighed the monetary benefit under the Settlement to the

10   Settlement Class against the length of continued proceedings that would be necessary to prosecute

11   the action through the pending appeal, as well as, if the Appeal ultimately were to succeed, trial

12   and possible future appeals. Plaintiff's Counsel have also taken into account the uncertain

13   outcome and risk of any litigation, especially in complex actions such as this, as well as the

14   difficulties and delay inherent in such litigation. As a result, Plaintiff's Counsel have determined

15   that the Settlement is in the best interests of the Class.

16   **D. Defendant's Position**

17         Defendant specifically and generally denies any and all liability or wrongdoing of any sort

18   with regard to the claims alleged, makes no concessions or admissions of liability of any sort, and

19   contends that for any purpose other than Settlement, the Action is not appropriate for class action,

20   collective action, or representative action treatment; instead, Plaintiff's claims must be submitted

21   to individual arbitration or litigation. Nonetheless, Defendant has concluded that further litigation

22   would likely be protracted, distracting, and expensive. Defendant has also taken into account the

23   uncertainty and risks inherent in any litigation. Defendant has therefore determined that it is

24   desirable and beneficial to settle the Action as set forth in the Settlement Agreement.

25   **III.    KEY TERMS OF PROPOSED CLASS SETTLEMENT**

26   **A.    Gross Cash Payment of $18 Million**

27         Without admitting liability, and in full and final settlement of the Action, Defendant has

28   agreed to pay into a cash pool the amount of **Eighteen Million Dollars ($18,000,000.00)** (the

6

"Gross Settlement Fund") to be distributed by a third-party Settlement Administrator appointed by the Court. *See* Settlement § 1.08.

### B.  Prospective Relief Conservatively Valued at $5.5 Million

In addition to providing $18 million in cash, Defendant has agreed to prospective relief that Plaintiff's expert conservatively estimates will result in economic benefit to Pet Care Providers totaling at least $5.5 million over a five-year period.

Defendant has agreed that, "no later than thirty (30) days after Final Approval, [it will] modify the Rover Platform such that: (i) pet care providers having user addresses in California ("California Providers") enter into the platform the rate(s) they are setting and agree to receive for their service(s) ("California Provider Billing Rate(s)"), (ii) Rover does not make any deduction from those California Provider Billing Rates when disbursing payment to the California Providers for the associated services, and (iii) any fees or other additional charges Rover charges in connection with such services are added on top of or in addition to the California Provider Billing Rates and paid by the pet owners under the terms of service or other relevant agreements applicable to the pet owners." *See* Settlement § 2.06. In other words, Rover will no longer use the system that Plaintiff alleges resulted in a deduction of Rover's service fee (20%) from Pet Owners' payments to Pet Care Providers; instead, pursuant to this change, Pet Care Providers in California will receive exactly the rate they specify for their services, and then Rover will add a fee on top of that rate in the list price to be paid by Pet Owners—an addition that will be transparent to Pet Care Providers through the pertinent application.

Although it is difficult to assess the precise value of this prospective relief to the Class on a going forward basis, Plaintiff's expert's analysis suggests this will result in at least $5.5 million in benefit to the Pet Care Providers in California. *See* Declaration of Justin Regus ("Regus Decl."), filed herewith, ¶¶ 16, 24.[1] This change provides meaningful additional consideration because, upon implementation of this change, Rover will directly address the issue raised by

---

[1] As set forth in the Regus Declaration, valuation depends on various reasonable assumptions related to Pet Care Provider pricing decisions and their clients' tolerance for higher prices. Based on those assumptions, the analysis concludes the value will likely be at least $5.5 million to Pet Care Providers—and could be much higher. *See* Regus Decl. ¶¶ 24, 23, 25.

Plaintiff and the Court, and thereby satisfy the Referral Agency Exemption codified at Cal. Lab. Code § 2777. Thus, if the Court approves the Settlement, Rover will implement changes that will eliminate any doubt as to whether Pet Care Providers are misclassified, and it will clearly be in compliance with the requirements of the Referral Agency Exemption.

### C.    Class Definition

The "Settlement Class and Collective" consists of "all current and former pet care providers who performed at least one service in California booked through the Rover Platform at any time during the Settlement Class Period. The Settlement Class does not include: (a) anyone who has served an arbitration demand on Rover on or before October 18, 2022; and (b) anyone whose claims against Rover have been ordered compelled to arbitration on or before October 18, 2022." *See* Settlement § 1.19. The "Settlement Class Period" is the period from November 1, 2018, through the date on which the Motion for Preliminary Approval is filed. *Id*. § 1.20. There are approximately 87,758 such individuals. *Id*. This class definition is consistent with the allegations of the operative complaint, which specifies a class period that begins on November 1, 2018. *See* Second Amended Complaint, ECF No. 115, ¶¶ 13, 16, 17.

### D.    PAGA Group Definition

"PAGA Group Member(s)" means, with no exclusions, current and former Pet Care Providers who performed at least one service in California that was booked through the Rover Platform at any time during the period from June 11, 2017 through and including the date on which the Motion for Preliminary Approval is filed (the "PAGA Period"). *See* Settlement § 1.11.

The date June 11, 2017 is based on a one-year lookback from the June 11, 2018 filing of a notice letter with the LWDA. *See supra* at 4:1-4.

There are about 103,537 PAGA Group Members. The group includes all 87,758 Class Members; and an additional 15,779 people who worked only *prior* to the Settlement Class Period.

### E.    Distribution of the Settlement Funds

The following is a summary of how settlement funds will be distributed, if approved by the Court:

a.  <u>Cash Pool</u>: The non-reversionary sum of $18 million to be paid by Defendant will provide cash compensation to Settlement Class Members who do not exclude themselves from the settlement, and to pay the Attorneys' Fees and Expenses, the Service Award, the PAGA Payment, and the Administrative Costs. *See* Settlement Agreement §§ 1.08, 2.03, 2.04, 2.07, 2.08. The Cash Pool ($18 million) minus the allocation to the PAGA Settlement Fund ($2.4 million), minus any service award for the Class Representative (no more than $10,000), minus Administrative Costs (capped at $210,000), minus any payment of Plaintiff's Counsel's attorneys' fees and costs (up to a maximum of $5.94 million in fees and $90,000 in costs), is the "Net Settlement Amount" or "Net Class Settlement Fund." *See id*. Based on those amounts, the Net Settlement Amount is estimated to be $9.35 million. The division of that Net Settlement Amount among the approximately 87,758 class members yields an average estimated payment of about $106.54 per class member. In addition, each of the approximately 103,537 PAGA Group members (a group which, as stated above, includes all 87,758 Class Members plus an additional 15,779 individuals who are PAGA Group members but not Class Members) will each receive about $5.78 for PAGA penalties (totaling $600,000, as discussed more below).

b.  <u>Cash Payments to Pet Care Providers</u>: Cash Payments to Pet Care Providers shall be calculated as follows. The Net Settlement Amount shall be distributed to Settlement Class members *pro rata* based on the number of days they provided services through the Rover Platform during the Settlement Class Period (which, as stated above, is the time period from November 1, 2018, through the date of the filing of the Motion for Preliminary Approval). *See* Settlement § 2.04. The Settlement Administrator will issue payments to all Settlement Class Members who do not opt out. *See id*. §§ 2.04, 4.03. The Settlement Administrator will also issue payments to PAGA Group Members from the Provider Share of the PAGA Settlement Fund (which is $600,000, equating to 25% of the $2.4 million PAGA Settlement Fund) on a *per capita* basis, *i.e.*, in equal amounts to all PAGA Group Members. *Id*. § 2.03. Payments shall be valid for 180 calendar days from the date of original issuance. *Id*. § 4.03.

9

c.  <u>Disposition of Uncashed Payments</u>: If any settlement payment remains uncashed for more than one hundred eighty (180) calendar days from the date of issuance, including any payments that remain uncashed because the Settlement Administrator is not able to obtain sufficient information to pay a PAGA Group Member or Settlement Class Member, the amount of the uncashed payment shall be tendered by the Settlement Administrator to the California State Controller's Office in the name of the individuals to whom the payments were payable, who may request their payment from the State Controller's Office in accordance with California law. *Id.* § 4.04.

d.  <u>Service Award</u>: The Settlement authorizes the Court to award a service award of up to $10,000 to Plaintiff for her service. Plaintiff will submit an application for such an award by separate motion. It is within the Court's discretion whether to award such an award and in what amount. *Id*. § 2.08.

e.  <u>PAGA Payment to the LWDA</u>: From the Gross Settlement Fund, $2,400,000 is allocated to the PAGA Settlement Fund for payments pursuant to PAGA. The Settlement Administrator shall pay $1,800,000 (or 75%) of the PAGA Settlement Fund to the LWDA. *Id*. § 2.03.

f.  <u>Administrative Costs</u>: Funds from the Cash Pool, in an amount capped at $210,000, shall be paid to the Settlement Administrator for the administrative costs of settlement, including for preparation and e-mailing of the Class Notice and the mailing of the postcard summary via U.S. Mail, and other administrative tasks. *Id*. §§ 2.07, 3.03.[2]

g.  <u>Attorneys' Fees and Expenses</u>: The Court has the discretion to award attorneys' fees and costs to compensate Plaintiff's Counsel for their fees, costs, and expenses incurred in connection with the action. Plaintiff will file a motion for an award of no more than $5.94 million in fees and no more than $90,000 for reimbursement of expenses. *Id*. § 2.08.

---

[2] Defendant's counsel obtained bids from three reputable settlement administration companies, specifically, Rust Consulting, JND Legal Administration, and Simpluris. The most competitive bid was provided by Simpluris. Defendant selected Simpluris to be proposed to the Court to administer this Settlement. Plaintiff has no objection to that selection.

### F.   Releases of Claims

Class Members who do not exclude themselves from the Settlement release "any and all claims that exist or might exist against the Released Parties that relate to the claims asserted or that could have been asserted based on the facts, circumstances, or theories alleged in the Action or in the letters by Plaintiff's counsel to the LWDA dated June 11, 2018, October 1, 2018, and September 19, 2019, including without limitation any and all claims arising from alleged independent contractor misclassification and any and all claims regarding minimum wage, overtime, wage deductions, wage payment timing, wage statement penalties, final payment of wages, reimbursement of business expenses, willful misclassification, provision of workers' compensation, paid sick leave, meal and rest breaks, and PAGA penalties, through the date of entry of the Settlement Order and Final Judgment (the 'Released Claims')."

As discussed above, all Class Members who do not opt out will be issued payments. In other words, ***no action is required by a Class Member to receive a payment***, the goal being that all Class Members will receive payments. However, because the operative complaint alleges both a class action under Rule 23 and a collective action under the FLSA, *see* Second Amended Complaint ¶¶ 13-17, the Parties have agreed that the release of FLSA claims will not be automatic. A Class Member will release FLSA claims only if the Class Member signs, deposits, and/or cashes the payment. *See* Settlement § 4.03 and Ex. B (Class Notice), page 7 (advising class members that "[y]our negotiation of the settlement payment shall constitute your consent to participate in the collective action under the FLSA and effectuate your release of any claims under the FLSA."). Class members will be reminded of this again through a written notification on and/or included with settlement checks. *Id.* § 4.03.[3]

### G.   Class Notice

The Settlement provides that within thirty (30) days of a Court order preliminarily approving the Settlement, the Settlement Administrator will e-mail the Settlement Class Notice to

---

[3] In other words, a Class Member will become a party plaintiff pursuant to Section 216(b) of the FLSA only if he or she signs, deposits, and/or cashes the payment. *See* Settlement § 4.03. This is a typical mechanism in class settlements that include FLSA claims. *See, e.g., Gant v. ALDI, Inc.*, 2021 U.S. Dist. LEXIS 161384, at *13 (C.D. Cal. Aug. 25, 2021); *Cavazos v. Salas Concrete, Inc.*, 2022 U.S. Dist. LEXIS 30201, at *55 & n.19 (E.D. Cal. Feb. 18, 2022).

1    Class Members and will mail the summary postcard to Class Members via U.S. Mail. *Id.* § 3.03.[4]

2    The proposed Notice and postcard are exhibits to the Settlement. *See id.* Exs. B and C. The

3    Settlement provides for a sixty (60) day period for objections and exclusions. *Id.* § 3.04. The

4    proposed order specifies that Plaintiff shall file her motion for service award and attorneys' fees

5    and costs fifteen (15) days before the deadline for objections. *Id.* Ex. A, ¶ 12(c). The proposed

6    order also specifies that Plaintiff shall file her motion for final approval by a date to be specified

7    by the Court. *Id.* Ex. A, ¶ 12(f). Plaintiff proposes that this date be 104 days after the Court enters

8    an order granting preliminary approval, which would be fourteen (14) days after the deadline for

9    objections.

10    **H.    Proposed Procedures for Final Approval of Settlement**

11    The settlement agreement provides for the release of claims only after a final approval

12    hearing, also known as a fairness hearing, to allow for final review and approval of the settlement.

13    Plaintiff requests that the Court schedule this hearing for a date approximately twenty-one (21)

14    days following Plaintiff's filing of the motion for final approval. *See* Settlement, Ex. A, ¶ 12(g).

15    The class notice will advise class members about the fairness hearing and their opportunity to

16    attend the hearing and make their views known. *See id.*, Ex. B, at 1, 7, 9. At the fairness hearing,

17    the parties will address any issues raised by class members or the notice process, and the Court

18    will have a second opportunity to review the settlement in full. *See id.* §§ 3.02, 3.06.

19

20    ⁴ The Settlement provides that notice will be sent to Class Members (which, as discussed above, is about 87,758 people) but not to the approximately 15,779 additional people who are only

21    PAGA Group members. *See* Settlement §§ 1.23, 3.03. This is appropriate because "aggrieved employees" do not have a right to object to, or exclude themselves from, a PAGA settlement, *see,*

22    *e.g., Robinson v. Southern Counties Oil Co.*, 53 Cal. App. 5th 476, 482 (2020), or to appeal a district court order approving a PAGA settlement. *See Saucillo v. Peck*, 25 F.4th 1118, 1128 (9th

23    Cir. 2022). Indeed, PAGA settlements typically are approved without any prior notice to the "aggrieved employees." *See, e.g., Lefevre v. Five Star Quality Care, Inc.*, 2021 U.S. Dist. LEXIS

24    111320, at *5 (C.D. Cal. Jan. 7, 2021) (approving PAGA settlement without any notice to the aggrieved employees, and stating that "PAGA Members will be issued a check for their share of

25    the Individual PAGA Payment as provided for in the PAGA Agreement and will not have the opportunity to opt out of, or object to, the PAGA Release."); *Jd Tamimi v. Sgs N. Am.*, 2021 U.S.

26    Dist. LEXIS 148319, at *16 (C.D. Cal. Mar. 2, 2021) (similar). *See generally Moniz v. Adecco USA, Inc.*, 72 Cal. App. 5th 56, 76 (2021) ("Class actions and PAGA representative actions have

27    many differences, with one salient difference being that certain due process protections afforded to unnamed class members are not part of PAGA litigation because aggrieved employees do not

28    own personal claims for PAGA civil penalties.").

12

## IV. LEGAL STANDARDS FOR CERTIFICATION OF SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT

### A. Class Claims Settled Under Rule 23

#### 1. Criteria

Rule 23(e) of the Federal Rules of Civil Procedure provides that settlement of the claims of a certified class is subject to the court's approval. In the Ninth Circuit, settlement of class actions is generally favored as a matter of "strong judicial policy." *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)). That principle is subject to certain limitations when the parties to a class action agree to settle before a class is certified. To ensure that the proposed class is appropriate and protect the interests of absent members of the class, courts are required to pay undiluted, even heightened, attention "to class certification requirements" and consider whether the proposed settlement "taken as a whole" "is fundamentally fair, adequate, and reasonable." *Staton* v. *Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003) (citing *Amchem Prods. Inc.* v. *Windsor,* 521 U.S. 591, 620, 117 S. Ct. 2231 (1997) and quoting *Hanlon* v. *Chrysler Corp.,* 150 F.3d 1011, 1019, 1026 (9th Cir. 1998)). Thus, before it can approve the proposed settlement, the Court must determine whether the class satisfies all four criteria of Federal Rule of Civil Procedure 23(a) and one prong of Rule 23(b). *Alberto,* 252 F.R.D. at 659. The Court must also determine whether the proposed settlement terms are fair to the class as a whole, reasonable, and adequate. *Id.*

#### 2. Procedure

The reviewing court's evaluation is conducted in two stages. *Id.* at 658. At the first stage – the present stage, in this litigation – the court conditionally certifies a class for settlement purposes, preliminarily approves the settlement pending the "fairness hearing," and authorizes notice of the proposed class settlement to be given to the class. *Id.* (citations omitted). *See also* MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.632 (2004) ("MANUAL FOR COMPLEX LITIGATION") (summarizing "preliminary fairness review").

Stage two is the fairness hearing, set for a time after notice has been provided to the class and class members have had an opportunity to submit claims or objections to the proposed settlement or to opt out of it. *Alberto,* 252 F.R.D. at 659 (citations omitted). At or after the

13

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMO. OF POINTS AND AUTHORITIES – *Sportsman v. A Place for Rover, Inc. et al.*, Case No. 3:19-cv-03053-WHO

1    fairness hearing, taking into account the responses of class members and any additional

2    information gained about the appropriateness of certifying the settlement class and/or the terms of

3    the settlement, the court reaches a final determination about whether the proposed settlement

4    should be approved. *Id.* (citations omitted).

5    **B.    Standards for Class Settlement of FLSA Claims**

6    The procedures for settling an FLSA claim are similar.  A court must determine whether

7    the settlement is a fair and reasonable resolution of a *bona fide* dispute. "If a settlement in an

8    employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or

9    computation of back wages, that are actually in dispute[,] . . . the district court [may] approve the

10   settlement in order to promote the policy of encouraging settlement of litigation." *Yue Zhou v.*

11   *Wang's Rest.,* 2007 U.S. Dist. LEXIS 60683, at *2-4 (N.D. Cal. Aug. 8, 2007) (citations omitted,

12   brackets in original); *accord Stevens v. Safeway Inc.,* 2008 U.S. Dist. LEXIS 17119, at *12-13

13   (C.D. Cal. Feb. 25, 2008). The standard for approving a proposed settlement of FLSA claims "is

14   similar to that used in evaluating settlements under Rule 23(e)": "the district court's role . . .

15   [']must be limited to the extent necessary to reach a reasoned judgment that the agreement is not

16   the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

17   settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Stevens,* 2008

18   U.S. Dist. LEXIS 17119 at *13-14 (quoting *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d

19   615, 625 (9th Cir. 1982)).

20   **V.    THE COURT SHOULD CERTIFY THE PROPOSED COLLECTIVE/CLASS FOR**
     **SETTLEMENT PURPOSES AND GRANT PRELIMINARY APPROVAL OF THE**
21   **PROPOSED SETTLEMENT**

22   **A.    Conditional Certification of the Class for Settlement Purposes Is Warranted**

23   Plaintiff seeks certification of the Settlement Class as a class action pursuant to Rule 23

24   and a collective action under the FLSA. *See, e.g., Baas v. Dollar Tree Stores, Inc.,* 2007 U.S.

25   Dist. LEXIS 65979, at *13 (N.D. Cal. Aug. 29, 2007) (FLSA collective action and Rule 23 class

26   may be maintained in the same action) (citing cases); *accord Thorpe v. Abbott Labs., Inc.,* 534 F.

27   Supp. 2d 1120, 1123-25 (N.D. Cal. 2008) (citing cases).

28

14

1

### 1.    The Class Satisfies Rule 23(a) and 23(b)(3)

To facilitate the proposed settlement, Plaintiff requests that the Court conditionally certify a class pursuant to Rule 23 for settlement purposes.[5]  For this purpose, the Court must determine whether the proposed class satisfies all four criteria of Rule 23(a) and one prong of Rule 23(b), as discussed above. *See Alberto,* 252 F.R.D. at 659. Here, all these criteria are met.

### a.    All four criteria of Rule 23(a) are met

### (1) The numerosity requirement is met

"As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Quintero* v. *Mulberry Thai Silks, Inc.,* 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). The numerosity criterion is satisfied where, as here, there are about 87,758 class members.

### (2) The commonality requirement is met

The commonality requirement is construed liberally in the Ninth Circuit. *Alberto,* 252 F.R.D. at 660 (citation omitted); *Hanlon,* 150 F.3d at 1019 (Rule 23(a)(2) construed "permissively"). The class members' claims must share some substantial issues of law or fact, but need not be identical. *Quintero,* 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" satisfies this criterion. *Hanlon,* 150 F.3d at 1019.

Here, all class members have provided services in California through Defendant's platform as Pet Care Providers. This situation presents a host of common factual and legal questions (under federal and California law) that numerous other wage and hour decisions recognize as satisfying the commonality criterion. These questions include, for example and most importantly, whether the class members should have been classified as employees. *See generally In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 527 F. Supp. 2d 1053, 1062-63 (N.D. Cal.

---

[5] Rover has reserved the right to contest class certification and/or representative status on any grounds, including without limitation manageability grounds or on the basis of arbitration agreements. Should the settlement not be approved, Rover will be able to assert those arguments, and Plaintiff will be free to dispute them. Rover also has reserved the right to enforce its arbitration agreements against Pet Care Providers in any other proceedings, as well as in this case if the settlement is not approved, and Rover's agreement to submit this settlement for approval does not waive this right. *See* Settlement § 6.01.

2007); *Wang v. Chinese Daily News, Inc.,* 231 F.R.D. 602, 607 (C.D. Cal. 2005). Thus, the commonality criterion is met.

### (3) The typicality requirement is met

Like commonality, the typicality standard is applied "permissive[ly]." *See Staton,* 327 F.3d at 957 (quoting *Hanlon,* 150 F.3d at 1020). It is satisfied if the representative's claims are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.* Here, the proposed representative of the Settlement Class has provided services in California through Defendant's platform as a Pet Care Provider during the class period and seeks to represent a settlement class where all members allege wage and hour violations based on a common nucleus of facts and a common core of wage and hour claims. Thus, the typicality requirement is met.

### (4) The adequacy requirement is met

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Courts have interpreted this requirement as posing two questions: (1) whether either the named plaintiffs or their counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. *See id.* (citing *Hanlon* and other cases). Here, neither the proposed settlement class representative nor her counsel have interests antagonistic to those of other class members. To the contrary, the proposed settlement class representative shares with absent class members an interest in recovering compensation for alleged violations of law. In addition, the proposed settlement class representative retained counsel with extensive experience in wage and hour class actions, as well as class action litigation more generally, who have expended considerable time and energy investigating facts, both before and after the complaint was filed, prosecuting the action, and pursuing the appeal. The proposed settlement was reached through arm's-length negotiations. Thus, the adequacy requirement is met.

### b.    The criteria of Rule 23(b)(3) are met

To certify a class under Rule 23(b)(3), a court must find that common questions of fact or law predominate over questions affecting only individual members of the proposed class, and that

a class action is the superior method for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Both criteria are met here.

### (1) The predominance requirement is met

The predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2000), *cert. denied,* 534 U.S. 973, 122 S. Ct. 395 (2001) (quoting *Hanlon,* 150 F.3d at 1022).

As in numerous other wage and hour class actions, the fact that this litigation arises from uniform policies and practices relating to the alleged failure to classify Pet Care Providers as employees strongly supports a finding that the predominance requirement is satisfied. *See, e.g., In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 527 F. Supp. 2d at 1068 ("it is manifestly disingenuous for a company to treat a class of employees as a homogeneous group for the purposes of internal policies and compensation, and then assert that the same group is too diverse for class treatment in overtime litigation."); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (uniform corporate policies detailing duties and responsibilities of a job position will often bear heavily on questions of predominance and superiority and may carry great weight).

### (2) The superiority requirement is met

Because the parties are seeking certification for settlement purposes, the Court need not address manageability or superiority issues. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Should the Court nevertheless choose to analyze superiority, Plaintiff has satisfied it for settlement certification purposes. Determining whether a class action is the superior method of adjudicating a controversy involves "comparing alternative mechanisms of dispute resolution" as applied to the facts and claims. *Wang,* 231 F.R.D. at 614. This case involves multiple claims, generally for relatively small individual sums. If the putative class members could not proceed as a class, some—perhaps most—would be unable to pursue the claims individually because of the

17

1   disparity between their litigation costs and what they hope to achieve. *Local Joint Exec. Bd.,* 244

2   F.3d at 1163. In such a situation, the Ninth Circuit held, the superiority requirement was "easily

3   satisfied." *Id.* The same is true here.

### 2.     The FLSA Claims Warrant Certification as a Collective Action

5          To facilitate the proposed settlement, Plaintiff also requests that the Court conditionally

6   certify a collective of California Pet Care Providers under the FLSA pursuant to 29 U.S.C.

7   § 216(b). For this purpose, the Court must determine whether members of the proposed collective

8   are "similarly situated" within the meaning of 29 U.S.C. § 216(b). All members of the proposed

9   collective have provided services in California through Defendant's platform as Pet Care

10  Providers during the class period. This situation presents a host of common factual and legal

11  questions (under federal and California law) that numerous other wage and hour decisions

12  recognize as satisfying the commonality criterion. These questions include, for example, whether

13  Defendant's policy and practice of failing to classify Pet Care Providers as employees violates the

14  FLSA. *See generally In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d at

15  1062-63; *Wang*, 231 F.R.D. at 607. Thus, the proposed collective action members are similarly

16  situated.

### B.     The Proposed Settlement Is Fair, Reasonable, and Adequate

18         The MANUAL FOR COMPLEX LITIGATION § 21.62 identifies several factors that courts may

19  weigh in determining whether a settlement is fair, reasonable, and adequate (Fed. R. Civ. P.

20  23(e)(2)), and summarizes the inquiry as follows:

21              Fairness calls for a comparative analysis of the treatment of class members vis-
                à-vis each other and vis-à-vis similar individuals with similar claims who are
22              not in the class. Reasonableness depends on an analysis of the class allegations
                and claims and the responsiveness of the settlement to those claims. Adequacy
23              of the settlement involves a comparison of the relief granted relative to what
                class members might have obtained without using the class action process.
24

25  *Id.* § 21.62 at 315.

26         At the preliminary approval stage, courts do not make a final determination of fairness,

27  reasonableness, and adequacy. Instead, the key question at this point is only whether the

28  settlement is "potentially fair, as the Court will make a final determination of [the settlement's]

18

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMO. OF POINTS AND AUTHORITIES – *Sportsman v. A Place for Rover, Inc. et al.*, Case No. 3:19-cv-03053-WHO

1   adequacy at the hearing on Final Approval, after such time as any party has had a chance to object

2   and/or opt out." *Acosta v. Equifax Info. Servs. LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). Thus,

3   the inquiry should focus on whether the proposed settlement falls within the "range of possible

4   approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing

5   notice to class members informing them about the proposed settlement and their options for

6   responding and participating. *Molski v. Gleich*, 318 F.3d 937, 944 (9th Cir. 2003). *See also*

7   Manual for Complex Litigation § 21.632. "Once the judge is satisfied as to the . . . results of

8   the initial inquiry into the fairness, reasonableness and adequacy of the settlement," the court

9   should direct notice to issue and schedule a final approval hearing. *Id.* § 21.633 at 321.

10      The settlement proposed here meets all three criteria.

11          **1.      The Class and Collective Settlement Is Fair**

12              **a.    Fairness of distribution among Class Members**

13      The proposed settlement is fair in that Class Members' cash payments correlate with the

14   number of days they provided services through the Rover Platform during the Settlement Class

15   Period. *See* Settlement § 2.04.

16              **b.    Fairness of Settlement Class definition**

17      The principle of fairness is also well served by the Settlement Class definition. The

18   Settlement Class consists of individuals who provided services as Pet Care Providers during the

19   time period covered by the complaint, and excludes individuals pursuing claims in arbitration. *See*

20   *supra* at 8:5-15. That is consistent with the class alleged in the operative complaint. *Id.*

21              **c.    Fairness of attorneys' fees**

22      Plaintiff's attorneys' fees will be requested by separate, formal motion, to be heard in

23   conjunction with the motion for final approval. *See* Settlement § 2.08. At this stage, for purposes

24   of finding that preliminary approval of the Settlement is warranted, the following factors militate

25   in favor of a finding that the Settlement's attorneys' fees provisions are fair.

26      First, the proposed timing of the filing of the motion for attorneys' fees is fair. According

27   to the Ninth Circuit, attorneys' fee requests must be filed prior to the deadline to object to the

28   settlement in order to protect the due-process rights of unnamed class members. *In re Mercury*

19

*Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010) ("*In re Mercury*"). *See also Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 155472, at *80 (C.D. Cal. Nov. 23, 2011) (applying *In re Mercury* and holding that the filing of a fee petition one week before the objection deadline comported with due process). Here, the proposed order provides that the motion will be filed "fifteen (15) days before the deadline for class members to file objections to the settlement." *See* Settlement, Ex. A, ¶ 12(c). That complies with *In re Mercury* and means the Court will have the opportunity to consider any objections before ruling upon the request for attorneys' fees.

Second, there is no "clear sailing" arrangement, *i.e.*, Defendant has not agreed to refrain from objecting to Plaintiff's attorneys' fees request. Nor is there an agreement to pay a specified amount for attorneys' fees separate from the common fund. *See Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (holding that courts should scrutinize clear sailing provisions); *Beltran v. Olam Spices & Vegetables, Inc.*, 2021 U.S. Dist. LEXIS 105685, 2021 WL 2284465, at *14 (E.D. Cal. June 4, 2021).

Third, any amount of attorneys' fees and costs that Plaintiff requests but that the Court declines to award would not revert to the Defendant, but rather would "remain in the Net Class Settlement Fund for pro rata distribution to the Settlement Class." *See* Settlement § 2.08.

Fourth, the provision that Plaintiff will apply for attorneys' fees of no more than $5.94 million is also fair. *See* Settlement § 2.08. For purposes of determining an appropriate attorneys' fee award, the Court can and should consider not only the $18 million Gross Settlement Fund but also the value of the prospective relief. *See, e.g., Staton*, 327 F.3d at 972-74; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) (approving fee award that exceeded 25% of cash pool because of settlement's "incidental" and "nonmonetary" benefits); *Pokorny v. Quixtar, Inc.*, 2013 WL 3790896, at *1, 2013 U.S. Dist. LEXIS 100791, at *5 (N.D. Cal. July 18, 2013) ("The court may properly consider the value of injunctive relief obtained as a result of settlement in determining the appropriate fee."); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *7, 2013 U.S. Dist. LEXIS 37286, at *20 (N.D. Cal. Mar. 18, 2013) (settlement value "includes the size of the cash distribution, the *cy pres* method of distribution, and the injunctive relief") Because Plaintiff's expert values the prospective relief at no less than $5.5 million (*see supra* at 7, note 1),

20

the real gross value of the settlement is at least $23.5 million, and a fee award of $5.94 million would equate to 25.3% of that value. *See supra* at 10:21-24.

The above factors militate in favor of granting preliminary approval. *See Beltran*, 2021 U.S. Dist. LEXIS 105685, at *57-58 ("given the [attorneys' fee] award can be determined at the final approval hearing, there is no longer any express clear sailing agreement, and given any reduction in the award will revert back to the funds available for the class members, the Court finds this aspect of the agreement is fair, reasonable, and adequate for purposes of preliminary approval."); *Millan v. Cascade Water Servs.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015) ("the Court need not resolve [the appropriate amount of attorneys' fees] at the preliminary approval stage, since the propriety of the fee request is an issue that can be determined at the Final Fairness Hearing.").

### d. Fairness of service award

The principle of fairness is also well served by the service award for Plaintiff that will be proposed by separate motion in conjunction with the request for attorneys' fees.

The Court has discretion to award incentive or service awards to compensate named plaintiffs and class representatives for work on behalf of the class and in consideration of the risk undertaken in bringing the action. *See, e.g., Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Courts often assess the reasonableness of the award by taking into consideration: "(1) the risk to the class representative in commencing a suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (approving incentive award of fifty thousand dollars ($50,000)). In this district, a service award of five thousand dollars ($5,000) is "presumptively" reasonable. *See Gould v. Rosetta Stone, Ltd.*, 2013 U.S. Dist. LEXIS 138921, at *20 (N.D. Cal. 2013) (citations omitted).

Plaintiff will argue that a service award in the amount of $10,000.00 is justified by

21

1  Plaintiff's service in this case. *See* Declaration of Melanie Sportsman, filed herewith, ¶ 13.

2  The application for the service award will describe in detail why that amount is justified.

3  ### 2. The Settlement Is Reasonable and Adequate

4       In deciding whether a settlement falls within the range of possible approval, "courts

5  primarily consider plaintiffs' expected recovery balanced against the value of the settlement

6  offer," taking into account the risks of continuing litigation. *In re Tableware Antitrust Litig*.,

7  484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). A "settlement amounting to only a fraction of

8  the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego*

9  *Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Officers for Justice,* 688

10  F.2d at 628) (internal quotation marks omitted). Indeed, as the cases in the footnote show,

11  courts often approve settlements for less than five percent of a reasonably possible recovery.[6]

12       Here, Plaintiff estimates that, if she were to succeed on the claims in the operative

13  complaint and prevail on any appeal, the reasonable maximum recovery would be about $99

14  million for the class claims and $149 million for the PAGA claims, which totals about $250

15  million.[7] The Settlement, conservatively valued at $23.5 million, equates to nearly 10% of that

16  [6] *See, e.g., Strube v. Am. Equity Investment Life Ins. Co*., 226 F.R.D. 688, 698 (M.D. Fla. 2005) (approving settlement equal to 2% of estimated potential recovery); *In re Toys R Us-Del., Inc.—*

17  *Fair & Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) (granting final approval of a settlement providing for consideration reflecting 3% of

18  possible recovery); *Reed v. 1-800 Contacts, Inc.*, 2014 U.S. Dist. LEXIS 255, 2014 WL 29011, at *6 (S.D. Cal. Jan. 2, 2014) (granting final approval where settlement represented 1.7% of possible

19  recovery (net settlement fund of $8,288,719.16, resolving claims worth potentially $499,420,000)); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 986 F.

20  Supp. 2d 207, 229 (E.D.N.Y. 2013) (granting final approval to antitrust class action settlement representing approximately 2.5% of the highest damages estimate as "within the range of

21  reasonableness in light of the best possible recovery and in light of all the attendant risks of litigation"); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("there is no

22  reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery").

23  [7] The maximum theoretical possible recovery is far higher, based on a mechanical exercise of multiplying the relevant variable (such as the number of pay periods or alleged employees at

24  issue) times the maximum allowable recovery. *See* Regus Decl. ¶¶ 7, 10. The estimated recovery in the text differs from this maximum theoretical recovery because the estimate (a) excludes the

25  recovery of damages for unpaid time, as there is no evidence adduced to date to suggest Pet Care Providers worked insufficiently compensated time; (b) excludes recovery of Labor Code section

26  203 penalties because (given the Court's earlier ruling) the Court seems likely to find a good faith dispute as to the classification of Pet Care Providers; and (c) assumes that, as allowed by PAGA,

27  the Court would substantially reduce penalties (given the Court's summary judgment ruling, a 90% reduction is assumed) or otherwise disallow penalty stacking because of the good faith

28  defense presented by Rover and the company's financial resources. In any event, even if Plaintiff

1    maximum reasonably possible recovery.

2         The agreed settlement amount appropriately takes into account the status and risk of

3    continuing litigation (instead of settling), which presents significant hurdles to the Plaintiff's

4    recovery—particularly on a class or collective basis. *See In re Tableware Antitrust Litig.*, 484

5    F. Supp. 2d at 1080. First and foremost, Rover prevailed on all claims in this Court. The Court

6    ruled as a matter of law that Rover did not misclassify Pet Care Providers, and that ruling

7    defeats not only the PAGA claims asserted in the initial complaint but also the class and

8    collective claims in the operative complaint. Although Plaintiff was optimistic that the Ninth

9    Circuit would reverse the Court's ruling, at this point, no ruling has issued. These

10   circumstances standing alone suggest that a settlement of $18 million in cash with no

11   reversion, together with valuable prospective relief, represents an extraordinary achievement.

12        Further, even if Plaintiff were to prevail in her Ninth Circuit appeal, she would still

13   face meaningful barriers to recovery on remand. For one thing, the Court on remand could

14   compel all of Plaintiff's claims to individual arbitration, including the PAGA claims. Rover

15   did not previously move to compel arbitration in this case. However, after the Court entered

16   judgment in this case, the U.S. Supreme Court issued a ruling that Rover could cite in moving

17   to enforce its arbitration clause, which calls for arbitration on an individual (not on a class or

18   representative) basis. *See Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1924 (2022)

19   (holding that "the FAA preempts the rule of [*Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th

20   348 (2014)] insofar as it precludes division of PAGA actions into individual and non-

21   individual claims through an agreement to arbitrate"). Rover would argue that after *Viking

22   River*, class and representative action waivers in arbitration agreements preclude not only

23

24

25   were able to secure a judgment in the maximum theoretical amount, there is no scenario in which
     Plaintiff (or anyone) could recover it from Rover: When the settlement was agreed upon, Rover's
26   total assets were about $419 million, and of that amount, Rover had cash or cash equivalents of
     only about $264 million. *See* Declaration of Steven G. Tidrick, ¶ 2, Ex. 1 (Rover's 10-Q). Thus,
27   the estimated reasonable maximum recovery amount is nearly equal to the company's total cash
     assets, making any higher estimate implausible. Nevertheless, Plaintiff reserves the right to seek
28   all available remedies without reduction if the Court does not approve the Settlement.

1    class actions but also representative actions under PAGA.[8] If Rover were to succeed in

2    compelling arbitration, other Class members would have to file their own individual

3    arbitrations to obtain relief on the theories Plaintiff has advanced. Even if Plaintiff were to

4    surmount that hurdle and remain in court, the Court could still deny class certification, and a

5    finder of fact on remand could conclude that Rover did not misclassify the Pet Care

6    Providers—in which case the Class recovery would be zero. The risk of that outcome is real

7    because (a) that is what this Court concluded when it entered summary judgment in favor of

8    Rover on the ABC Test, and (b) Rover has presented a well-grounded alternative defense

9    under the Referral Agency Exemption.

10          Plaintiff and her counsel remain optimistic that she can overcome those risks and

11   prevail on liability.[9] But even in that event, the amount of damages or penalties awarded could

12   fall within a wide range, based on a large number of factors—and no experienced practitioner

13   in this area of the law would expect a recovery against Rover at the high end of that range. For

14   example, if the Court were to find that Rover did not "willfully" misclassify the Pet Care

15   Providers, the recovery would be orders of magnitude less, both for the class claims and for

16   the PAGA claims. And because the Court concluded that Rover *did not* misclassify Pet Care

17   Providers at all, it seems highly unlikely that Plaintiff could convince the Court that Rover

18   *willfully* misclassified them—even if Plaintiff were to win in the Ninth Circuit.[10]

19          Because the variables in a wage-and-hour damage analysis can cause the numbers to

20   _____

21   [8] The ultimate effect of *Viking River* remains in flux due to ongoing litigation, including resolution of a case pending before the California Supreme Court. Nevertheless, Rover succeeded

22   in compelling arbitration both class claims and PAGA claims that another plaintiff filed against Rover during the pendency of Sportsman's appeal. *See* Tidrick Decl. ¶ 4.

23   [9] There is another very real risk that favors settlement now and that Plaintiff may have no ability to overcome. A California ballot measure to repeal PAGA, which has qualified for the 2024

24   ballot, could pass, in which case the Court presumably would dismiss the PAGA claims.

25   [10] *Cf. Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1136 (2012) (finding that it would be unjust to award the maximum penalty amount when "defendants took their obligations under Wage Order No. 9 seriously and attempted to comply with the law"); *Fleming

26   v. Covidien, Inc.*, 2011 WL 7563047, at *4, 2011 U.S. Dist. LEXIS 154590, at *8-9 (C.D. Cal. Aug. 12, 2011) ("Defendants were not aware that the wage statements violated the law and took

27   prompt steps to correct all violations once notified. Given these circumstances, the Court finds a $2.8 million penalty unjust according to § 2699(e)(2). Accordingly, in its discretion, the Court

28   reduces the [PAGA] penalty to $500,000.").

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT;
MEMO. OF POINTS AND AUTHORITIES – *Sportsman v. A Place for Rover, Inc. et al.*, Case No. 3:19-cv-03053-WHO

vary so widely, it is often difficult to pinpoint a realistic "expected recovery" in a wage-and-hour case such as this. *See In re Tableware*, 484 F. Supp. 2d at 1080 (referring to "expected recovery" as appropriate yardstick). By any measure, however, the proposed settlement is substantial. Class Members will recover significant financial benefit, and Rover will be in compliance with the Referral Agency Exemption going forward. As discussed above, the approximately 87,758 Class Members will receive an average estimated payment of about $106.54 for their Class claims and an additional $5.78 apiece for PAGA penalties. The average number of days worked by a Class Member is 56.8 days, so this recovery equates to about $2 per day performing services ($1.97).[11] That is a significant sum, especially because here a "day" worked does not mean eight hours worked; rather, it refers to a 24-hour period in which Pet Care Provider completed at least one booking, which could mean only one 30-minute dog walk on a given date. In light of the expected recovery on Plaintiff's claims, the Settlement amount falls within the range of reasonableness, warranting preliminary approval.

The Settlement structure also maximizes the monetary value delivered to Pet Care Providers. The Settlement requires Rover to pay out $18 million immediately. Although that is a significant amount of the company's cash-on-hand, *see supra* at 22-23, note 7, it allows Rover to remain in business in the years ahead, continuing to provide opportunities to Pet Care Providers who use its platform. Absent approval of this Settlement, on the other hand, it is entirely possible that Rover would choose to exit the market in this state. The outcome here is a "win-win" for the company and for Pet Care Providers—who have a direct interest in keeping Rover financially healthy, so they can continue marketing their services in California using Rover's two-sided market. Regus Decl. ¶ 3. And that will allow Pet Care Providers to benefit from the Settlement's prospective relief: going forward, Pet Care Providers will set their rates separately, and Rover will add a service fee on top to be paid by Pet Owners. That change is estimated to provide at least $5.5 million in value to Pet Care Providers over a 5-year period, and it will continue to provide value to Pet Care Providers into the future.

Finally, despite Rover's modest size, the Settlement is one of the largest gig economy

---

[11] This estimate is based on data provided by Rover. *See* Regus Decl. ¶ 8.

"misclassification" class action settlements ever in California. The largest such settlements include: *Marko v. Doordash*, Los Angeles Super. Ct. No. BC659841 ($100 million settlement covering over 900,000 Doordash drivers and resolving reimbursement, minimum wage, and overtime claims); *Rimler v. Postmates*, San Francisco Super. Ct. No. CGC-18-567868 ($32 million settlement covering 380,000 Postmates couriers); *O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 U.S. Dist. LEXIS 54608, at *1 (N.D. Cal. Mar. 29, 2019) ($20 million settlement covering 13,600 Uber drivers); and *People v. Maplebear, Inc*., San Diego Super. Ct. No. 37-2019-00048731 ($46.5 million settlement covering 300,000 Instacart shoppers). This Settlement falls comfortably in the same ballpark as these others, taking into account class sizes and the defendants' relative sizes. Moreover, unlike the rest of these other "gig economy" settlements, Rover's settlement requires a change in policy that will cement Rover's presently disputed compliance with the Referral Agency Exemption.

While Plaintiff's counsel believe that Plaintiff's claims are meritorious, they are experienced class action litigators, and they understand that the outcome of the pending appeal, Defendant's anticipated motion to compel arbitration, Plaintiff's anticipated motion to certify the class, Defendant's anticipated motion to decertify the class, trial, and any further appeals would be inherently complex and uncertain, and present real risk. Even if Plaintiff were to prevail at each step, the process could take several years. *See Officers for Justice*, 688 F.2d at 625 (court should consider complexity, expense, and likely duration of litigation being settled); *Young v. Katz,* 447 F .2d 431, 433-34 (5th Cir. 1971) (court should weigh benefits of the proposed settlement against the expense and delay required to achieve an equivalent result at trial). Having extensively investigated the facts and researched the pivotal legal and factual issues, counsel for the parties, experienced class action litigators well versed in wage and hour law, arrived at a reasonable resolution through a protracted and arm's-length negotiation.

The policy that favors settlement of class actions and other complex cases applies with particular force here. Employment cases, and specifically large wage and hour cases, are expensive and time-consuming. The settlement, on the other hand, provides to all class members substantial relief, promptly and efficiently. The settlement in this case is therefore consistent with

26

1   the "overriding public interest in settling and quieting litigation" that is "particularly true in class

2   action suits." *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote

3   omitted); *see also* 4 NEWBERG ON CLASS ACTIONS § 11.41 (citing cases). In an analogous class

4   action, the Ninth Circuit aptly observed that it would have been irrational for most, and probably

5   all, class members to pursue their claims on an individual basis "because of the disparity between

6   their litigation costs and what they hope to recover." *Local Joint Exec. Bd.,* 244 F.3d at 1163.

7   Approval of this class settlement would therefore achieve economies of time, effort, and expense,

8   along with an outcome that class members could not realistically obtain individually.

9       The recovery provided through the Settlement is substantial, especially as its adequacy

10  must be judged as "a yielding of absolutes and an abandoning of highest hopes. . . . Naturally, the

11  agreement reached normally embodies a compromise; in exchange for the saving of cost and

12  elimination of risk, the parties each give up something they might have won had they proceeded

13  with litigation. . . ." *Officers for Justice,* 688 F.2d at 634 (citation omitted). Accordingly, the

14  Settlement is not to be judged against a speculative measure of what might have been achieved.

15  *Linney* v. *Cellular Alaska P'ship,* 151 F .3d 1234, 1242 (9th Cir. 1998). In contrast to the

16  alternative of protracted litigation fraught with risk, the Settlement provides for payment to the

17  class now, rather than many years down the road, if ever. *See City of Detroit,* 495 F.2d at 463.

18      This case presents a risk to Plaintiff of not prevailing on appeal or on remand, the risk of

19  being compelled to arbitration, and the probability of lengthy litigation in the absence of a

20  settlement, with the prospect that, absent a classwide settlement, most individual Class members

21  would obtain relief of only a few dollars apiece. In these circumstances, the certain recovery

22  provided by the settlement satisfies the criterion of adequacy. *See* MANUAL FOR COMPLEX

23  LITIGATION § 21.62 ("Adequacy of the settlement involves a comparison of the relief granted

24  relative to what class members might have obtained without using the class action process."). The

25  settlement is, in light of all applicable factors, reasonable and adequate and "within the range of

26  possible approval," and warrants notification of its terms to members of the proposed class for

27  their consideration and response.

28

### 3. The PAGA Provisions Are Reasonable

The definition of the PAGA Group Members is reasonable because it is based on a one-year lookback from the June 11, 2018 filing of a notice letter with the LWDA, *see supra* at 4:1-4, 8:21-22, which is consistent with the one-year statute of limitations applicable to PAGA claims. *See Culley v. Lincare Inc*., 236 F. Supp. 3d 1184, 1192 (E.D. Cal. 2017) ("the statute of limitations bars all of Plaintiff's PAGA claims prior to December 15, 2013, one year prior to the date Plaintiff provided notice to the LWDA."); *Taylor v. Interstate Grp., LLC*, 2016 WL 861020, at *3 (N.D. Cal. Mar. 7, 2016) ("The one-year limitations period for PAGA civil penalties begins to toll upon filing notice to the LWDA for a PAGA investigation.").

The dollar amount allocated to resolution of the PAGA claims is also reasonable. The settlement provides that a total of $2.4 million is allocated to the PAGA Settlement Fund from the Gross Settlement Fund of $18 million. *See supra* at 10:13-16; Settlement § 2.03. That equates to 13.33% of the Gross Settlement Fund allocated to resolving PAGA claims. Courts have routinely approved far smaller allocations for PAGA penalties in class action settlements. *See, e.g., del Toro Lopez v. Uber Techs., Inc*., 2018 U.S. Dist. LEXIS 196430, 2018 WL 5982506, at *8 (N.D. Cal. Nov. 14, 2018) (approving $10 million settlement that allocated $50,000, *i.e.*, about 0.5 percent, to PAGA claims); *Ahmed v. Beverly Health & Rehab. Servs*., 2018 U.S. Dist. LEXIS 69926, at *10 (E.D. Cal. Apr. 24, 2018) (granting final approval of $450,000 settlement that allocated $4,500, *i.e.*, 1%, to PAGA claims); *Martin v. Legacy Supply Chain Servs. II, Inc.*, 2018 WL 828131, *2 (S.D. Cal. Feb. 12, 2018) (granting preliminary approval of $625,000 settlement that allocated $10,000, *i.e.*, 1.6%, to PAGA claims); *Viceral v. Mistras Group, Inc.*, 2016 U.S. Dist. LEXIS 140759, at *25-*31 (N.D. Cal. Oct. 11, 2016) (finding that, in the context of a $6 million settlement, a PAGA payment of $20,000, *i.e.*, about 0.3 percent, was reasonable); *Williams v. Brinderson Constructors, Inc.*, 2017 WL 490901, at *13-*14 (C.D. Cal. Feb. 6, 2017) (finding that, in the context of a $300,000 settlement, a PAGA payment of $10,000, *i.e.*, about 3.3%, was reasonable); *Franco v. Ruiz Food Prods., Inc.*, 2012 U.S. Dist. LEXIS 169057, at *41-*42 (E.D. Cal. Nov. 27, 2012) (finding that, in the context of a $2.5 million settlement, a PAGA payment of $10,000, *i.e.*, about 0.4 percent, was reasonable and in line with settlement approval

of PAGA awards in other cases) (citing cases); *Nikmanesh v. Wal-Mart Stores Inc.*, 2016 WL 6236446, at *4 (C.D. Cal. Oct. 17, 2016) (granting preliminary approval of $800,000 settlement that included PAGA payment of $5,000, *i.e.*, about 0.6 percent); *In re M.L. Stern Overtime Litig.*, 2009 U.S. Dist. LEXIS 31650, 2009 WL 995864, at *1 (S.D. Cal. Apr. 13, 2009) (preliminarily approving $945,960 settlement that allocated $20,000, *i.e.*, about 2%, to be paid to the LWDA); *Hopson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900, at *3, *24 (N.D. Cal. Apr. 3, 2009) (granting final approval of $408,420.32 settlement that allocated $1,500, *i.e.*, about 0.3 percent, to be paid to the LWDA); *Nordstrom Comm'n Cases*, 186 Cal. App. 4th 576, 589 (2010) (approving settlement of wage and hour class action claims and PAGA claims that allocated no money to the PAGA claims); *Frlekin v. Apple Inc*., Case No. 13-cv-3451 (N.D. Cal. Aug. 13, 2022), Dkt. 474 (granting final approval of $30,478,508.99 class and PAGA settlement that allocated $457,049.39, *i.e.*, about 1.5%, to resolving PAGA claims).

The fact that Plaintiff has negotiated a class action settlement that allocates a *higher* percentage to PAGA penalties than is typical in class action settlements is a positive aspect of the settlement that weighs in favor of approval. As another court observed, "the fact that [the percentage of the gross settlement allocated to PAGA] is higher than two percent does not raise concerns that Plaintiff is skirting the 'special responsibility to [his] fellow aggrieved workers' or using the PAGA claim 'merely as a bargaining chip, wherein the rights of individuals . . . may be waived for little additional consideration in order to induce the employer to agree to a settlement,' and, in fact, suggests the opposite. Accordingly, the Court finds that the settlement of the claims for penalties under PAGA is reasonable." *Jd Tamimi v. Sgs. N. Am.*, 2021 U.S. Dist. LEXIS 148319, at *24-25 (C.D. Cal. Mar. 2, 2021) (approving class action settlement that allocated 10% of an $850,000 gross settlement fund, *i.e.*, $85,000, to PAGA penalties) (quoting *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016)).

Nor is the amount of the Gross Settlement Fund allocated to resolving the PAGA claims too low. Rather, the allocation is fair and reasonable amount given the wide discretion the Court has to reduce an onerous penalty award. As a mathematical matter, PAGA on its face authorizes PAGA penalties that substantially exceed Rover's net worth or market capital. But no one would

expect Rover to pay anything close to that maximum theoretical recovery in the circumstance here, largely because the Court has broad discretion to reduce a PAGA penalty on grounds that it is "unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2). *See Magadia v. Wal-Mart Assocs., Inc*., 384 F. Supp. 3d 1058, 1099-100 (N.D. Cal. 2019) (reducing PAGA penalty award); *Fleming v. Covidien Inc*., 2011 WL 7563047, at *3-4 (C.D. Cal. Aug. 12, 2011); *Makabi v. Gedalia*, 2016 WL 815937, at *2 & n.3 (Cal. Ct. App. Mar. 2, 2016); *Stuart v. RadioShack Corp.*, 2010 U.S. Dist. LEXIS 92067, at *10 (N.D. Cal. Aug. 9, 2010) (granting final approval of $4.5 million class and PAGA settlement that allocated $50,000, *i.e*., about 1.1%, to be paid to the LWDA, and finding that amount reasonable because of the court's discretion to reduce a PAGA award). Although Plaintiff believes that there is substantial basis for her position that Rover misclassified Pet Care Providers, this remains a disputed issue, and Plaintiff recognizes that even if she were to win on the merits of her claims, the penalty amounts likely would be deeply reduced, especially given the Court's ruling on summary judgment that Rover did not misclassify Pet Care Providers at all. In these circumstances, the proposed amount allocated to PAGA penalties is warranted and fair and is in line with substantial case law.

Finally, the Settlement's 75/25 allocation of the $2.4 million PAGA Settlement Fund between the LWDA and the PAGA Group members simply mirrors the PAGA statute's allocation of penalties. *See Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 380 (2014) ("Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.'") (quoting Cal. Lab. Code § 2699(i)). This 75/25 allocation is typical in settlements of PAGA claims. *See generally Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1148 (2012) (discussing the "general rule" regarding the 75/25 split).

Distributing the payment to the PAGA Group Members on a *per capita* basis (*i.e*., an equal share to each PAGA Group member) is also reasonable and fair. Courts routinely approve this allocation method. *See, e.g., Moppin v. Los Robles Reg'l Med. Ctr.*, 2016 WL 7479380, at *2 (C.D. Cal. Sept. 12, 2016); *Miramontes v. United States Healthworks*, 2017 U.S. Dist. LEXIS 235085, at *8 (C.D. Cal. Sep. 5, 2017); *Weinstein v. Mortg. Contracting Servs., LLC*, 2018 U.S.

Dist. LEXIS 182718, at *6 (C.D. Cal. Oct. 23, 2018); *Ortiz v. Genco, Inc.*, 2019 WL 1780577, at *14 (N.D. Cal. Apr. 23, 2019). And there is no requirement that PAGA penalty payments be correlated to days worked or any other metric. As the Ninth Circuit has explained, an "aggrieved employee" covered by a PAGA settlement "does not receive a portion of the PAGA settlement because of any injury, but instead because the California legislature made a policy choice that the bounty that normally serves as the incentive for the plaintiff to bring the suit should instead be shared with all aggrieved employees." *Saucillo v. Peck*, 25 F.4th 1118, 1128 (9th Cir. 2022). Further, an allocation of $600,000 to a group of over 100,000 "aggrieved" individuals based on the number of days on which services were performed (the metric for class distribution) would result in minuscule PAGA payments. (About 75% of the PAGA Group members had ten (10) or fewer bookings on the Rover platform.) That would be unfair, as these individuals likely incurred similar startup costs as those who ended up with more bookings. The parties reasonably agreed that all PAGA Group Members would share equally in the PAGA penalties.

**VI.    THE COURT SHOULD CONDITIONALLY APPROVE THE SETTLEMENT AGREEMENT, RELATED FORMS, AND PROPOSED PROCEDURES FOR PROVIDING NOTICE TO THE CLASS, AND SHOULD SET A FINAL "FAIRNESS" HEARING AND BRIEFING SCHEDULE**

Based on the above information and authorities, Plaintiff proposes that the Court grant preliminary approval of the proposed Settlement for purposes of notifying members of the proposed class about its terms and about their options for opting out or objecting. Preliminary approval of the proposed Settlement also encompasses approving the form of class notice, and specifically approving the timeline and related procedures for administration of the class notice and preparation for the final approval hearing.

The notice, which follows this District's guidance for class notice, *see* PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS (N.D. Cal. Aug. 4, 2022), is designed to advise class members both clearly and accurately about the key terms of the proposed settlement. The notice explains how to object or opt out; and the consequences of the action the class member takes or does not take, in terms of both financial benefit and release of claims. The notice advises class members about the final approval hearing, their rights with respect to that hearing, and how to get

31

1    more information. It appropriately notifies class members that if they exclude themselves, they

2    will still be bound by the PAGA release and will still receive a PAGA payment. *See* Settlement

3    Ex. B at pages 3, 6; *Almanzar v. Home Depot U.S.A., Inc*., 2022 U.S. Dist. LEXIS 127724, at

4    *58-59 (E.D. Cal. July 18, 2022).

5        The proposed time frame of sixty (60) days after the mailing of notice for objections and

6    exclusion is reasonable. It allows class members sufficient time to digest the information in the

7    notice and obtain answers to questions before deciding on the action they want to take.

8        Accordingly, Plaintiff respectfully asks that the Court approve the Settlement and the

9    proposed notice and postcard (Exhibits B and C to the Settlement); authorize the administrator to

10    distribute these documents to the class members; and adopt the proposed timeline for distribution

11    of notice, exclusions, and objections, the schedule for the final approval hearing, and the briefing

12    schedule ahead of that hearing. To facilitate settlement, Plaintiff further requests that the Court

13    preliminarily designate her attorneys as Settlement Class Counsel, and appoint Plaintiff as the

14    Settlement Class Representative, as specified in the proposed order, filed herewith.

15    **VII.    CONCLUSION**

16        Plaintiff respectfully requests that the Court enter the proposed order filed herewith.

17    DATED: February 7, 2023                     Respectfully submitted,

18                                                THE TIDRICK LAW FIRM LLP

19                                                By:    /s/ Steven G. Tidrick

20                                                _____
                                                 STEVEN G. TIDRICK, SBN 224760
                                                 JOEL B. YOUNG, SBN 236662

21
                                                 Attorneys for Individual and Representative
22                                               Plaintiff MELANIE SPORTSMAN

23

24

25

26

27

28